**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| US FOODS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:13-cv-03640 |
| | ) | |
| MICHAEL J. NOBLE et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR EXPEDITED**
**DISCOVERY**

Plaintiff US Foods, Inc. ("US Foods" or the "Company") seeks leave of this Court to serve, prior to the commencement of the discovery period, certain limited, expedited discovery on Defendants Michael J. Noble ("Noble") and Phillip G. Roszak ("Roszak") (collectively "Defendants") regarding US Foods property and data in their possession, custody or control. US Foods also seeks an order from this Court that Defendants not spoliate evidence relevant to this case and that forensic images of their computers and communications and storage devices and databases be made. Plaintiff has good cause for the relief sought through this Motion because Defendants already have spoliated relevant evidence and because US Foods has an immediate need for the preservation and return of its property and data.

## I.    INTRODUCTION

This case arises out of a conspiracy between Defendants to threaten the economic status of US Foods, misappropriate confidential Company information, and engage in acts to attempt to intimidate, embarrass and threaten John Lederer ("Lederer"), the Chief Executive Officer ("CEO") of US Foods. Defendants misappropriated confidential business information of the

Company, which was used to identify and track the residence, travel and whereabouts of the CEO. Defendants then used that confidential information to conduct secret surveillance on the CEO. They then threatened the CEO and the Company by acts that included sending anonymous, threatening letters to owners and executives of the Company.

When the Company discovered Defendants' misconduct, their employment was terminated. US Foods informed Defendants of the potential for litigation and demanded the return of its property and data and the preservation of relevant evidence. Defendant Roszak initially refused to return US Foods' computer and then purposefully destroyed relevant evidence on it by, among other things, using data wiping software. In an interview taken as part of a proposed settlement agreement, Defendant Noble admitted intentionally destroying documents and data of the Company and receiving and transmitting Company data using personal email beyond the reach of US Foods. Plaintiff brought suit in this Court seeking the return of its property and data in the Defendants' possession and control, as well as the enforcement of Defendants' contractual and common law obligations to return US Foods' property and data. In a separate arbitration proceeding against Defendants, US Foods is seeking monetary damages for Defendants' violations of their contractual, statutory and common law duties to the Company.

It is undisputed that both Noble and Roszak have spoliated evidence and are, despite the Company's repeated demands, in the possession of Company property and data. Consequently, Defendants should be ordered (1) to respond to the attached discovery requests seeking the identification and production of property and data of the Company in their possession, custody and control (attached as Ex. 1); (2) to preserve all documents and data in their possession, custody or control relevant to the claims asserted in this case; and (3) to image their computers and storage and communications devices.

- 2 -

## II.   FACTUAL BACKGROUND

### A.   Noble

Noble worked for US Foods from 2005 until December 2012, when he was terminated for cause by the Company.  Most recently, he served as US Foods' Senior Vice President of Shared Services.  As a Senior Vice President, Noble supervised various back office functions at the Company's Shared Service Center.  In performing his duties, Noble had access to highly sensitive, confidential and proprietary business and financial information of US Foods.

On November 16, 2007 Defendant Noble entered into a Management Stockholder's Agreement ("Noble Management Stockholder's Agreement").  Declaration of Connie N. Bertram ("Bertram Dec.") (attached as Ex. 2), Ex. A.  Also, on November 16, 2007, Defendant Noble signed a Non-Solicitation and Non-Disclosure Agreement ("Noble Restrictive Covenant Agreement").  Id.  The Noble Restrictive Covenant Agreement was explicitly incorporated into the Noble Management Stockholder's Agreement.  Paragraph 4 of the Noble Restrictive Covenant Agreement states:

> At no time, either during or after the termination of employment, shall Employee directly or indirectly obtain, disclose, reveal or use for Employee or any Person, or aid others in obtaining, disclosing, revealing or using any Confidential Information of the Company, other than as may be required in the performance of duties for and as authorized by the Company.  All Confidential Information is and shall remain the sole property of the Company.

Paragraph 5 of that Agreement requires Noble to return all US Foods' property upon his termination:

> All records, files, customer order guides, pricelists, photo/videographic materials, software, keys, equipment, credit cards or other tangible material, and all other documents, including but not limited to Confidential Information, relating to the Business of the Company (collectively "Property") that Employee receives, acquires, produces or has access to during employment (irrespective, in all cases, of the medium in which any information is stored), are the exclusive property of the Company.  Upon the termination of Employee's employment, Employee shall

return to the Company all Property of the Company and all copies thereof in Employee's possession or control (regardless of how such Property or Confidential Information is obtained or maintained).

It is undisputed that, despite these contractual obligations and US Foods' repeated demands, Noble has retained documents and data of US Foods in his possession, custody and control. During the time that Noble was an employee of US Foods, he emailed confidential US Foods' communications and other information from his US Foods email account to his personal email account and home computer. Roszak, Noble, and other US Foods' employees also shared US Foods' confidential information, including information concerning the travel plans and itineraries of US Foods' executives, through their personal email accounts. Interview of Michael Noble (Feb. 14, 2013) (Bertram Dec., Ex. B) ("Noble Interview") at 115:6-116:17; see also id. at 135:1-15 & 139:1-5.

As described in more detail in the Complaint, Noble and Roszak used their access to confidential Company databases and other Company resources to obtain information about US Foods' CEO. They provided that information to, among others, a private investigator, who used the information to conduct surveillance of the CEO. Defendants then used that information and information obtained through the unauthorized surveillance to prepare and send anonymous and threatening letters to US Foods. See Compl. ¶¶ 29-44.

US Foods terminated Noble's employment for cause on December 11, 2013. US Foods sent a preservation letter to Noble on December 12, 2012, notifying him of his obligation to preserve relevant documents and to return Company property. Bertram Dec., Ex. C. In large part to secure the return of its documents and data, Noble and US Foods signed a settlement agreement in February 2013. Bertram Dec., Ex. D. Paragraph 9 of the agreement stated that:

You certify that you have returned to the Company all property, documents and data of the Company or relating to your work for the Company ("Company

Data") in your possession, custody or control, including without limitation, all keys and access cards, badges, credit and telephone cards, telephones, pagers, all computers and computer related equipment (i.e. hardware, software, diskettes, electronic storage devices, etc),…and all books files, documents and electronic data and media. Electronic data should be returned in native format, with all associated metadata intact. You agree, upon the Company's request, to permit a third-party IT technician retained by the Company to inspect all of your personal computers and electronic communications and storage devices to identify and recover any additional Company Data and to undertake the permanent deletion of any Company Data. Said technicians will not transmit or disclose to the company any data on your personal computers and devices that is not Company Data.

The settlement agreement stated that it would not be effective until Noble complied with his contractual obligations, including Paragraph 9.

US Foods informed Noble's counsel on February 14, 2013 that a third-party IT technician would be inspecting Noble's personal computers and electronic communications and storage devices pursuant to Paragraph 9. Noble Interview at 155:24-156:4. Counsel for Noble and US Foods engaged in negotiations over a period of two months in an attempt to reach agreement on the terms of an IT protocol that would satisfy this condition precedent of the settlement agreement. At an interview conducted pursuant to the settlement agreement, US Foods learned that instead of returning Company property to US Foods as required by his obligations to the Company, Noble intentionally destroyed potentially relevant documents in violation of his contractual and common law obligations. Noble Interview at 51:17-52:9; 117:6-15; 143:1-11. On May 9, 2013, US Foods notified Noble that he was in breach of numerous terms of the settlement agreement, including the provisions requiring him to return Company property and to permit an IT inspection. Bertram Dec., Ex. E. US Foods filed this lawsuit and a demand for arbitration on May 15, 2013.

**B.** __Roszak__

Prior to his termination in December 2012, Roszak was Vice President of Financial and Support Office Systems for US Foods in Phoenix, Arizona. In this position, he managed various back office IT systems and applications for US Foods. Roszak had access to extensive confidential and proprietary business and financial data of US Foods and to its email and other communications systems. During the time that they worked together in Phoenix, Roszak and Noble were close personal friends.

On October 19, 2007, Defendant Roszak entered into a Management Stockholder's Agreement ("Roszak Management Stockholder's Agreement"). Bertram Dec., Ex. F. He also signed a Non-Solicitation and Non-Disclosure Agreement that same day ("Roszak 2007 Restrictive Covenant Agreement"). Id. The Roszak 2007 Restrictive Covenant Agreement was explicitly incorporated into the Roszak Management Stockholder's Agreement. On May 26, 2011, Defendant Roszak signed a Non-Solicitation and Non-Disclosure Agreement ("Roszak 2011 Restrictive Covenant Agreement"). Id.

These agreements imposed restrictions on Roszak's use and disclosure of confidential information of the Company and required him to return all Company property and information upon termination. Paragraph 4 of the Roszak 2007 Restrictive Covenant Agreement states:

> At no time, either during or after the termination of employment, shall Employee directly or indirectly obtain, disclose, reveal or use for Employee or any Person, or aid others in obtaining, disclosing, revealing or using any Confidential Information of the Company, other than as may be required in the performance of duties for and as authorized by the Company. All Confidential Information is and shall remain the sole property of the Company.

Paragraph 5 of that Agreement requires Roszak to return all US Foods' property upon his termination:

> All records, files, customer order guides, pricelists, photo/videographic materials, software, keys, equipment, credit cards or other tangible material, and all other documents, including but not limited to Confidential Information, relating to the Business of the Company (collectively "Property") that Employee receives, acquires, produces or has access to during employment (irrespective, in all cases, of the medium in which any information is stored), are the exclusive property of the Company. Upon the termination of Employee's employment, Employee shall return to the Company all Property of the Company and all copies thereof in Employee's possession or control (regardless of how such Property or Confidential Information is obtained or maintained).

The Roszak 2011 Restrictive Covenant contains almost identical restrictions.

While he was employed by US Foods, Roszak used his access to confidential US Foods databases, including a database of executives' cell phone records, to collect information concerning the CEO and other US Foods executives. He emailed confidential information of US Foods to his personal email account and home computer. Noble, Roszak and another US Foods employee also shared confidential US Foods' information using their personal email accounts. Noble Interview at 115:6-116:17; see also id. at 135:1-15 & 139:1-5. Roszak participated with Noble in the scheme to send anonymous, threatening letters to US Foods. See Compl. ¶¶ 29-44.

Roszak was scheduled to appear in Rosemont, Illinois for an interview on December 11, 2012. Instead of attending the interview, he informed US Foods that he was resigning from his employment. That same day, Roszak received a letter demanding that he cease using his US Foods computer and that he preserve all relevant evidence:

> You are no longer authorized to use your US Foods computer. You should turn it off (if it is turned on) immediately upon receipt of this letter and not use or alter it in any fashion. Because US Foods anticipates litigation concerning your employment with and your actions while employed by the Company, you have an obligation to preserve and not to destroy or spoil relevant evidence…Your preservation obligations are described in more detail in the enclosure to this letter. You should physically return all US Foods property, documents and data, including your laptop computer and all US Foods documents forwarded to your personal email address to [person and location identified] no later than ***9:00 am tomorrow morning***.

Bertram Dec., Ex. G (emphasis in original).  Roszak returned his computer the next day.

A forensics review of that laptop revealed that on December 11, 2012, the same day he was scheduled for an interview and received the preservation notice from US Foods, Roszak used a program called CCleaner on his US Foods-issued computer to erase approximately 20,000 files.  Declaration of Gregory Caouette ¶ 12 (attached as Ex. 3).  During the time the computer was assigned to Roszak, it was used to upload US Foods documents and data to a file hosting service called Dropbox.  Id. ¶ 14.  Data saved in Dropbox can be accessed by the user from any computer or device.  Id.  Furthermore, during this period, devices that can be used to transfer files, including an iPad, were attached multiple times to Roszak's computer.  Id. ¶ 15.

US Foods attempted over the next several months to secure the return of its property and data from Roszak.  The General Counsel of US Foods sent Roszak a letter on January 17, 2013 asking him to contact her to schedule a time to meet to, among other things, coordinate the return of its property.  Roszak did not respond to the letter.  He also did not respond to follow-up calls from the General Counsel.  On April 8, 2013, outside counsel for US Foods sent a letter to Roszak, again requesting a meeting to coordinate the return of US Foods' data and to interview him in connection with the Company's investigation.  Roszak exchanged emails with US Foods' counsel, claiming that he would be in contact after he returned from vacation.  Rather than meet with US Foods, Roszak filed suit against US Foods in Arizona state court on May 3, 2013 in violation of the mandatory arbitration clause in the Roszak Management Stockholder's Agreement.  To date, other than the laptop described above, he has not returned any US Foods documents or data in his possession.

US Foods has initiated arbitration proceedings raising claims of breach of contract, breach of fiduciary duty, civil conspiracy and breach of the Computer Fraud and Abuse Act.  It

has filed this action to effect the return of the US Foods files and data in Defendants' possession. In light of the evidence of Defendants' spoliation, US Foods filed this Motion to obtain limited discovery on an expedited basis and to preserve the electronic evidence in Defendants' possession, custody and control.

### III.   ARGUMENT

### A.   Legal Standard

Federal Rule of Civil Procedure 26 vests a district court with broad discretion to manage the discovery process, including the authority to order expedited discovery.  See Fed. R. Civ. P. 26(d); see also Ibarra v. City of Chicago, 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011) ("[a] court has wide discretion in managing the discovery process").  Courts in the Seventh Circuit apply a "good cause" or "reasonableness" standard in evaluating requests for expedited discovery.  See, e.g., Ibarra, 816 F. Supp. 2d at 554; Tory Burch LLC v. Partnerships & Unincorp. Ass'ns, 2013 WL 1283824, at *10 (N.D. Ill. 2013).  In applying this "reasonableness" standard, courts consider:  (1) the breadth of the discovery requests; (2) the purpose for requesting the expedited discovery; (3) the burden on the defendants to comply with the requests; (4) how far in advance of the typical discovery process the request was made; and (5) whether a preliminary injunction is pending.  Ibarra, 816 F. Supp. 2d at 554.  Courts in this district have explicitly rejected the preliminary injunction standard as the standard for obtaining expedited discovery.  Id.[1]

---

[1] A number of district courts have also adopted this "good cause" standard.  See, e.g., Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002) (concluding that requiring a movant to establish irreparable injury in order to engage in expedited discovery would be "inconsistent not only with Rule 26(d)" but also Rule 1's "overarching mandate…that the Rules 'shall be construed and administered to secure the just, speedy, and inexpensive determination of every action'"); Kone Corp. v. ThyssenKrupp USA, Inc., 2011 WL 4478477, at **4-5 (D. Del. 2011) (finding "good cause" where the suit was between sophisticated parties and where the defendants had fully reviewed the allegations against them).

This Court should exercise its discretion to expedite discovery concerning the property and data of US Foods in Defendants' possession, custody and control. Noble and Roszak have already willfully spoliated potentially relevant evidence. An order to preserve along with a forensic imaging and review of their electronic devices will insure the preservation of critical evidence. Furthermore, Noble and Roszak should respond on an expedited basis to the attached discovery requests seeking the production of all US Foods property and data in their possession, custody or control. Denying US Foods the limited discovery and relief requested through this Motion would cause US Foods significant prejudice, including exposing it to the risk of additional misuse of its confidential information and spoliation of evidence and preventing it from securing the return of its confidential and proprietary documents and data.

**B.** **Good Cause Exists For US Foods' Request For Expedited Discovery**

**1.** **US Foods Has Established Good Cause For The Entry Of A Preservation Order And For An Order Compelling A Forensic Inspection Of Defendants' Electronic Devices**

Parties anticipating litigation have a duty to preserve potentially relevant evidence, including electronic data. Bryant v. Gardner, 587 F. Supp. 2d 951, 967-68 (N.D. Ill. 2008); Wiginton v. CB Richard Ellis, Inc., 229 F.R.D. 568, 574 (N.D. Ill. 2004). In this case, Defendants have willfully flouted their preservation obligations. Among other things, Roszak wiped almost 20,000 files off of his company-issued computer using software called CCleaner the day he resigned and received a preservation notice and the day before he returned the computer to US Foods. Noble has admitted to deleting a number of potentially relevant electronic documents, even after receiving US Foods' litigation hold notice and agreeing to return all Company property. See supra at 4-5, 7-8.

Given their undisputed spoliation activity, US Foods and this Court can have no confidence that relevant evidence will be preserved by them as the litigation proceeds. Absent an immediate forensic inspection and imaging of Defendants' computers and storage devices and an order compelling them to preserve relevant evidence, additional relevant evidence may be irretrievably lost. Thus, a strong and compelling purpose – i.e., the preservation of evidence so the Court can fulfill its functions – supports entry of a preservation order and an order requiring imaging of Defendants' electronic devices.

The limited relief that US Foods seeks would impose a minimal burden on Defendants. Because, even absent an order, a party has a duty to preserve relevant evidence, courts regularly order parties not to spoliate or tamper with potentially relevant evidence. See, e.g., Mintel Int'l Group, Ltd. v. Neergheen, 2008 WL 2782818, at *7 (N.D. Ill. 2008) (entering order prohibiting defendant from deleting files from personal computers related to or removed from former employer). In addition, courts routinely invoke Rule 34 to require the creation of a mirror image and inspection of former employees' personal computers and electronic devices. See Robert Half Int'l, Inc. v. Stout, 2011 WL 4435592 (C.D. Ill. 2011) (ordering former employee to make personal computer hard drives available for inspection and copying because former employee improperly retained the plaintiff's property); Mintel Int'l Group, 2008 WL 2782818, at *7 (ordering defendant former employee to provide plaintiff with "forensic copies of all personal desktop and/or laptop computers").[2]

---

[2] See also Cenveo Corp. v. Slater, 2007 WL 442387, at **2-3 (E.D. Pa. Jan. 31, 2007) (permitting employer to use an expert to create a mirror image of former employee's personal computer to review and retrieve confidential and trade secret information of employer's stored on the employee's personal computer); Frees, Inc. v. McMillian, 2007 WL 184889, at *3 (W.D. La. Jan. 22, 2007) (permitting employer to mirror image former employee's personal computer to review and retrieve the employer's confidential and proprietary information); Balboa Threadworks, Inc. v. Stucky, 2006 WL 763668, at **4-5 (D. Kan. Mar. 24, 2006) (permitting the

Creating a mirror image of a computer or other electronic device is usually the first step in preparing electronic data for review for discovery.  See John B. v. Goetz, 531 F.3d 448, 460 (6th Cir. 2008) (recognizing that forensic imaging is common in the course of civil discovery); White v. Graceland College Ctr. for Prof'l Dev. & Lifelong Learning, Inc., 2009 U.S. Dist. LEXIS 22068, at **22-24 (D. Kan. Mar. 18, 2009) (requests for inspection or requests for forensic or mirror imaging of computers are not extraordinary).  US Food is simply seeking to require Defendants to undertake those actions they should have already undertaken to comply with their preservation and discovery obligations.  Because that request is justified and reasonable, is something that Defendants should already have done or be doing, and serves the compelling purpose of preserving evidence as this litigation proceeds, good cause exists for ordering the imaging of Defendants' electronic devices and the preservation of relevant evidence.

> **2.** **US Foods Has Shown Good Cause For A Discovery Request Seeking The Production Of Its Property**

There is also good cause for the entry of an order requiring Defendants to respond to the attached discovery requests.  The discovery sought by US Foods is undoubtedly within the proper bounds of discovery.  This case concerns the theft of US Foods' property and data by Defendants and their use of that property for improper purposes.  Through this Motion, US Foods seeks, on an expedited basis, the production of that precise information:  all property and data of US Foods in Defendants' possession, custody or control.  Because of its central importance to the resolution of this litigation, that discovery request undoubtedly "appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

---

defendant to mirror image the plaintiff's personal computer to inspect whether there was any of the plaintiff's copyrighted materials on their computer).

Defendants cannot challenge US Foods' right to the property and data they seek through this discovery request. US Foods entered into agreements with Noble and Roszak explicitly requiring the return of US Foods' property upon the termination of their employment. Moreover, Noble and Roszak, as part of their common law duties to the Company, must return company property upon the termination of their employment. Thus, each document produced by Defendants in response to Plaintiff's discovery request is evidence that those obligations have been breached. Courts have routinely ordered the production of company documents and data retained by former employees in these circumstances. See, e.g., In re IBP Confidential Bus. Documents Litig., 754 F.2d 787, 789 (8th Cir. 1985) (reversing order denying employer's request for order compelling former employee to return confidential company documents); Glynn v. Impact Science & Tech., Inc., 807 F. Supp. 2d 391, 424, 431 (D. Md. 2011) (because former employee breached contractual obligations by retaining confidential company data post-termination, employer entitled to damages, including expenses of court-ordered computer forensics protocol).[3]

US Foods will be severely prejudiced if the production of this discovery is delayed. Defendants had access to, and frequently used and disclosed, sensitive and confidential information belonging to US Foods. See supra at 3-8. While employed by US Foods, they used their access to confidential information to threaten US Foods executives, which has caused substantial expense and damage to US Foods. Noble admits to deleting US Foods emails and

[3] See also Appel v. Fischbach Corp., Inc., 1998 WL 470497, at *7 (E.D.N.Y. Aug. 10, 1998) ("Where an employee has taken company documents for the purpose of preparing for anticipated litigation, the remedy has been dismissal of the employee's complaint or an order that the employee return those documents."), aff'd, 189 F.3d 460 (2d Cir. 1999); see also JDS Uniphase Corp. v. Jennings, 473 F. Supp. 2d 697, 702-05 (E.D. Va. 2007) ("By no means can [public] policy fairly be said to authorize disgruntled employees to pilfer a wheelbarrow full of an employer's proprietary documents in violation of their contract merely because it might help them blow the whistle on an employer's violations of law, real or imagined.").

was not willing to submit to a routine inspection of his personal devices for Company property. From his communications with Noble and the deletion and uploading activity revealed by the forensic review of his work computer, it is evident that Roszak also has Company documents and data in his possession.

The risk that Defendants could disclose or spoliate further Company information still in their possession more than justifies an order expediting discovery. IDS Fin. Servs., Inc. v. Smithson, 843 F. Supp. 415, 418 (N.D. Ill. 1994) (risk of disclosure of confidential information justified injunctive relief). Moreover, US Foods needs access to these documents in order to complete its investigation of the anonymous letters and to pursue its claims against Defendants. Defendants should not be permitted to hold hostage US Foods own documents and data, particularly given their significance to this case, the arbitration, and to US Foods' pending investigation.

Defendants cannot claim that they will be unduly burdened by this discovery request. The Court would merely be ordering them to do what they have a contractual and common law duty to do – i.e., return US Foods' documents and data. This minimal burden is substantially outweighed by the critical relevance of these documents, both to this litigation and to US Foods' pending investigation. Consequently, Defendants should be ordered to return to US Foods all documents and data within their possession, custody and control. See Mintel Int'l Group, 2008 WL 2782818, at *7 (ordering former employee to return informational documents and data of former employer and to provide forensic images of all personal computers); CUNA Mut. Life Ins. Co. v. Kuperman, 1998 WL 409880, at **5, 10 (N.D. Ill. 1998) (ordering former employee to return all property of former employer).

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, US Foods requests that the Court grant its Motion for

Expedited Discovery.


June 3, 2013                       Respectfully submitted,


                                    /s/ Linda K. Stevens

Patricia Brown Holmes

Linda K. Stevens

**SCHIFF HARDIN LLP**

233 South Wacker Drive, Suite 6600

Chicago, IL 60606

Telephone: (312) 258-5500

Facsimile: (312) 258-5600

pholmes@schiffhardin.com


Connie N. Bertram

Daniel J. Davis

**PROSKAUER ROSE LLP**

*Admitted Pro Hac Vice*

1001 Pennsylvania Ave., N.W. Suite 400S

Washington, D.C. 20004

Telephone: (202) 416-6800

Facsimile: (202) 416-6899

cbertram@proskauer.com

ddavis@proskauer.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on June 3, 2013, she caused a true and correct copy of Plaintiff's Memorandum in Support of Motion for Expedited Discovery to be served by electronic mail and hand delivery on the following:

Kraig Marton
Jaburg & Wilk P.C.
3200 N. Central Ave., 20th Floor
Phoenix, AZ 85012
kjm@jaburgwilk.com

*Counsel for Defendant Michael J. Noble*

Philip J. Nathanson
The Nathanson Law Firm
8326 E. Hartford Dr., Suite 101
Scottsdale, AZ 85255

and

The Nathanson Law Firm
120 N. LaSalle St. #1040
Chicago, IL 60602
philipj@nathansonlawfirm.com

*Counsel for Defendant Phillip G. Roszak*

/s/ Linda K. Stevens

- 16 -