2. <u>Pledge; Grant of Security Interest</u>. The Employee hereby delivers to the Company all the Pledged Stock and hereby grants to the Company a first priority security interest in the Collateral, as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of the Obligations.

3. <u>Stock Powers</u>. Concurrently with the delivery to the Company of each certificate representing one or more shares of Pledged Stock to the Company, the Employee shall deliver an undated stock power covering such certificate, duly executed in blank by the Employee with, if the Company so requests, signature guaranteed.

4. <u>Covenants</u>. The Employee covenants and agrees with the Company that, from and after the date of this Agreement until this Agreement is terminated and the security interests created hereby are released:

(a) If the Employee shall (i) as a result of the Employee's ownership of the Pledged Stock, become entitled to receive or shall receive any stock certificate (including, without limitation, any certificate representing a stock dividend or a distribution in connection with any reclassification, increase or reduction of capital or any certificate issued in connection with any reorganization), option, warrant or other right, whether in addition to, in substitution of, as a conversion of, or in exchange for any shares of the Pledged Stock, or otherwise in respect thereof or (ii) acquire ownership of one or more shares of Common Stock upon the exercise of any option, warrant or other right, the Employee shall accept the same as the agent of the Company, hold the same in trust for the Company, and deliver the same forthwith to the Company in the exact form received, duly indorsed by the Employee to the Company, if required, together (in the case of any such certificate) with an undated stock power covering such certificate duly executed in blank by the Employee and with, if the Company so requests, signature guaranteed, to be held by the Company, subject to the terms hereof, as additional collateral security for the Obligations.

(b) Without the prior written consent of the Company, the Employee will not (1) sell, assign, transfer, exchange, or otherwise dispose of, or grant any option, warrant or other right with respect to all or any part of the Collateral; <u>provided</u>, <u>however</u>, that a transfer made in compliance with the United States federal and other applicable securities laws to a trust or custodianship, the beneficiaries of which may include only the Employee, the Employee's spouse or the Employee's lineal descendants, will be permitted so long as such transfer is made expressly subject to this Pledge Agreement and that the transferee agrees in writing to be bound by the terms and conditions hereof; <u>provided</u>, <u>further</u>, that this Section 4(b)(1) shall not restrict the sale of the Collateral if (i) such sale is made pursuant to the terms of the Management Stockholder's Agreement and (ii) the proceeds from such sale are used solely to pay accrued interest on and repay the principal of the Note; <u>provided</u>, <u>further</u>, that such proceeds need not be used solely to pay accrued interest on and repay the principal of the Note if such proceeds exceed the sum of any accrued interest on and the principal of the Note and such accrued interest on and the principal of the Note are paid in full from the proceeds of such sale, or (2) create, incur or permit or suffer to exist any Lien, option, warrant or other right in favor of, or any claim of, any Person with respect to any of the Collateral, or any interest therein, except for the security

interest created by this Agreement, or enter into any agreement or undertaking restricting the right or ability of the Employee or the Company to sell, assign or transfer any of the Collateral.

(c) The Employee shall maintain the security interest created by this Agreement as a first priority, perfected security interest and shall defend such security interest against claims and demands of all Persons whomsoever. At any time and from time to time, upon the written request of the Company, and at the sole expense of the Employee, the Employee will promptly and duly execute and deliver such further instruments and documents and take such further actions as the Company may reasonably request for the purposes of obtaining or preserving the full benefits of this Agreement and of the rights and powers herein granted. If any amount payable under or in connection with any of the Collateral shall be or become evidenced by any promissory note, other instrument or chattel paper, such note, instrument or chattel paper shall be immediately delivered to the Company, duly endorsed in a manner satisfactory to the Company, to be held as Collateral pursuant to this Agreement.

(d) The Employee shall pay, and save the Company harmless from, any and all liabilities with respect to, or resulting from any delay in paying, any and all stamp, excise, sales or other taxes which may be payable or determined to be payable with respect to any of the Collateral or in connection with any of the transactions contemplated by this Agreement.

5. Cash Dividends; Voting Rights. Unless an Event of Default shall have occurred and be continuing and the Company shall have given notice to the Employee of the Company's intent to exercise its corresponding rights pursuant to Section 6 below, the Employee shall be permitted to receive all cash dividends paid in respect of the Pledged Stock and to exercise all voting and corporate rights with respect to the Pledged Stock.

6. Rights of the Company. If an Event of Default shall occur and be continuing and the Company shall give notice of its intent to exercise such rights to the Employee, the Company shall have the right to receive any and all cash dividends paid in respect of the Pledged Stock and make application thereof to the Obligations in such order as the Company may determine.

7. Remedies. (a) If an Event of Default shall have occurred and be continuing, at any time at the Company's election, the Company may apply all or any part of Proceeds held in any Collateral Account in payment of the Obligations in such order as the Company may elect.

(b) If an Event of Default shall have occurred and be continuing, the Company may exercise, in addition to all other rights and remedies granted in this Agreement and in any other instrument or agreement securing, evidencing or relating to the Obligations, all rights and remedies of a secured party under the Code. Without limiting the generality of the foregoing, the Company, without demand of performance or other demand, presentment, protest, advertisement or notice of any kind (except any notice required by law referred to below) to or upon the Employee or any other Person (all and each of which demands, defenses, advertisements and notices are hereby waived), may in such circumstances forthwith collect, receive, appropriate and realize upon the Collateral, or any part thereof, and/or may forthwith sell, assign, give option or options to purchase or otherwise dispose of and deliver the Collateral or any part thereof (or contract to do any of the foregoing), in one or more parcels at public or private sale or sales, in

the over-the-counter market, at any exchange, broker's board or office of Company or elsewhere upon such terms and conditions as it may deem advisable and at such prices as it may deem best, for cash or on credit or for future delivery without assumption of any credit risk. The Company shall have the right upon any such public sale or sales, and, to the extent permitted by law, upon any such private sale or sales, to purchase the whole or any part of the Collateral so sold, free of any right or equity of redemption in the Employee, which right or equity is hereby waived or released. The Company shall apply any Proceeds from time to time held by it and the net proceeds of any such collection, recovery, receipt, appropriation, realization or sale, after deducting all reasonable costs and expenses of every kind incurred in respect thereof or incidental to the care or safekeeping of any of the Collateral or in any way relating to the Collateral or the rights of the Company hereunder, including, without limitation, reasonable attorneys' fees and disbursements of counsel to the Company, to the payment in whole or in part of the Obligations, in such order as the Company may elect, and only after such application and after the payment by the Company of any other amount required by any provision of law, including, without limitation, Section 9-504(1)(c) of the Code, need the Company account for the surplus, if any, to the Employee. To the extent permitted by applicable law, the Employee waives all claims, damages and demands it may acquire against the Company arising out of the exercise by them of any rights hereunder. If any notice of a proposed sale or other disposition of Collateral shall be required by law, such notice shall be deemed reasonable and proper if given at least 10 days before such sale or other disposition. The Employee shall remain liable for any deficiency if the proceeds of any sale or other disposition of Collateral are insufficient to pay the Obligations and the reasonable fees and disbursements of any attorneys employed by the Company to collect such deficiency.

        8.     Execution of Financing Statements. Pursuant to Section 9-402 of the Code, the Employee authorizes the Company to file financing statements with respect to the Collateral without the signature of the Employee in such form and in such filing offices as the Company reasonably determines appropriate to perfect the security interests of the Company under this Agreement. A carbon, photographic or other reproduction of this Agreement shall be sufficient as a financing statement for filing in any jurisdiction.

        9.     Notices. All notices, requests and demands to or upon the Company or the Employee to be effective shall be in writing (or by telex, facsimile or similar electronic transfer confirmed in writing) and shall be deemed to have been duly given or made when delivered by hand or if given by mail, when deposited in the mails by certified mail, return receipt requested, or if by telex, facsimile or similar electronic transfer, when sent and receipt has been confirmed, addressed to the Company or the Employee at its address or transmission number for notices provided in the Management Stockholder's Agreement. The Company and the Employee may change their addresses and transmission numbers for notices by notice in the manner provided in this Section.

        10.    Severability. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

11. <u>Amendments in Writing; No Waiver; Cumulative Remedies</u>. (a) None of the terms or provisions of this Agreement may be waived, amended, supplemented or otherwise modified except by a written instrument executed by the Employee and the Company, <u>provided</u> that any provision of this Agreement may be waived by the Company in a letter or agreement executed by the Company or by telex or facsimile transmission from the Company.

(b) The Company shall not by any act (except by a written instrument pursuant to Section 11(a) hereof), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any Default or Event of Default or in any breach of any of the terms and conditions hereof. No failure to exercise, nor any delay in exercising, on the part of the Company, any right, power or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege. A waiver by the Company of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which the Company would otherwise have on any future occasion.

(c) The rights and remedies herein provided are cumulative, may be exercised singly or concurrently and are not exclusive of any other rights or remedies provided by law.

12. <u>Section Headings</u>. The section headings used in this Agreement are for convenience of reference only and are not to affect the construction hereof or be taken into consideration in the interpretation hereof.

13. <u>Successors and Assigns</u>. This Agreement shall be binding upon the successors and assigns of the Employee and shall inure to the benefit of the Company and their successors and assigns.

14. **<u>GOVERNING LAW</u>. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK.**

[Pledge Agreement Signature Page]

IN WITNESS WHEREOF, the undersigned has caused this Agreement to be duly executed and delivered as of the date first above written.

*Mike Noble* (signature)
Mike Noble
4717 E Quartz Mountain Rd
Paradise Valley
AZ 85253

[Pledge Agreement Signature Page]

SCHEDULE 1<br>TO PLEDGE AGREEMENT

DESCRIPTION OF PLEDGED STOCK

1. 100,000 shares of common stock, par value $0.01 per share, of The Company.

Exhibit A to Pledge Agreement

TERM NOTE

$ [CITY, STATE]
[_____, 2007]

FOR VALUE RECEIVED, the undersigned, [Employee Name] (the "Employee"), hereby unconditionally promises to pay to the order of USF Holding Corp., a Delaware corporation (the "Company") at its offices, in lawful money of the United States of America, the principal amount of [____]($___), plus interest thereon. Interest shall accrue and be paid on the unpaid principal amount, which is from time to time outstanding, at the rate equal to 6.5% per annum until the principal amount is paid in full.

(a) The Employee agrees to pay the principal and interest as follows:

(1) Interest in like money at such office on the unpaid principal amount hereof from time to time outstanding at an interest rate equal to 6.5% per annum on the Maturity Date (as defined below) and, with respect to the amount of any optional or mandatory prepayments, on the date of any such optional or mandatory prepayment;

(2) Any and all remaining balance of the principal amount shall be paid (without prepayment penalty) on the earliest to occur of:

(i) no later than twenty (20) business days prior to the first occurrence of (x) the effective date on which the Employee is promoted to a position in the Company (or any successors or transferees as described above) or (y) any other event with respect to the Employee, which, in any such case if the Note were to remain outstanding on and after such date, would result in a violation of Section 402 of the Sarbanes-Oxley Act of 2002 (and any successor provision or legislation thereto), and for which no exemption is then applicable;

(ii) the Employee's termination of employment by the Company or any of its subsidiaries or the Employee for any reason;

(iii) the disposition of all or any part of the Purchased Stock by the Employee; and

(v) [May 16, 2008] (the "Maturity Date").

(b) Definitions.

The following shall constitute "Events of Default" under the terms of this Note:

(i) default in payment when due and payable, upon acceleration or otherwise, of principal of this Note;

(ii) default for three (3) days or more in the payment when due of interest on the Note;

(iii) any default in the observance or performance of any covenant, condition or other agreement contained in the Pledge Agreement;

(iv) the Pledge Agreement shall cease for any reason to be in full force and effect in any respect (other than pursuant to the terms thereof);

(v) (a) the Employee shall commence any case, proceeding or other action (I) under any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization or relief of debtors, seeking to have an order for relief entered with respect to the Employee, or seeking to adjudicate the Employee as bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, winding-up, liquidation, dissolution, composition or other relief with respect to the Employee or the debts of the Employee, or (II) seeking appointment of any receiver, interim receiver, manager, trustee, custodian, conservator or other similar official for the Employee or for all or any substantial part of the assets of the Employee, or the Employee shall make a general assignment for the benefit of the creditors of the Employee; or (b) there shall be commenced against the Employee any case, proceeding or other action of a nature referred to in clause (a) above that (I) results in the entry of an order for relief or any such adjudication or appointment or (II) remains undismissed, undischarged, unstayed or unbonded for a period of 30 days; or (c) there shall be commenced against the Employee any case, proceeding or other action seeking issuance of a warrant of attachment, execution, distraint or similar process against all or any substantial part of the assets of the Employee that results in the entry of an order for any such relief that shall not have been vacated, discharged, stayed or bonded pending appeal within 30 days from the entry thereof; or (d) the Employee shall take any action in furtherance of, or indicating consent to, approval of, or acquiescence in, any of the acts set forth in clause (a), (b), or (c) above; or (e) the Employee shall be generally unable to, or shall admit in writing the Employee's general inability to, pay the Employee's debts as they become due; or

(vi) one or more judgments or decrees shall be entered against the Employee involving in the aggregate at any time a liability of $25,000 or more, and all such judgments or decrees shall not have been vacated, discharged, stayed or bonded pending appeal within 30 days from the entry thereof.

"Default" means any event that is or with the passage of time or the giving of notice or both would be an Event of Default.

This Note is subject to optional prepayment in whole or in part at any time. Reference is hereby made to the Pledge Agreement for a description of the properties and assets in which a security interest has been granted.

Upon the occurrence of (x) an Event of Default specified in clause (v) of the definition of "Events of Default" in paragraph (b) above with respect to the Employee, all amounts then remaining unpaid on this Note shall become immediately due and payable by the Employee and (y) any one or more of the Events of Default (other than as specified in clause (v) of the definition of "Events of Default" in paragraph (b) above), all amounts then remaining unpaid on this Note may be declared to be, immediately due and payable by the Company, and upon such declaration shall become immediately due and payable by the Employee.

All parties now and hereafter liable with respect to this Note, whether maker, principal, surety, guarantor, endorser or otherwise, hereby waive presentment, demand, protest and all other notices of any kind. The Employee hereby authorizes the Company, or any attorney designated by the Company, or any clerk of any court (which grant or power shall be conclusively deemed coupled with an interest and irrevocable), to appear on their behalf in any court of record, to confess judgment against them in favor of

the Company without prior hearing, upon failure to pay this Note as and when due. Attorneys' fees due to the Company shall be deemed to be fifteen percent (15%) of the amount confessed solely for the purposes of fixing a sum certain for which judgment can be entered by confession, and the Company agrees that in enforcing any judgment by confession, the Company shall not demand, solely with respect to attorneys' fees incurred by the Company in connection with the Note after such judgment is rendered, any amounts in excess of the actual amount of attorneys' fees billed to the Company by its counsel. Such judgment shall be binding upon the Employee to the full extent of the amount due hereunder. The Employee hereby waives and releases any errors that may occur in any such action and consent to immediate execution upon said judgment. Further, such judgment, if confessed for less than the full amount of the Note payable to the Company hereunder, shall not be deemed or construed as a waiver or release by the Company of the Company' claims for such additional indebtedness or of the Company' rights to pursue judgment against the Employee for such additional indebtedness in a separate and independent action.

   Capitalized terms not otherwise defined herein shall have the meanings assigned to such terms in the Management Stockholder's Agreement dated as of [_____, 2007] between the Company and the Employee (as amended, supplemented or otherwise modified from time to time, the "Management Stockholder's Agreement").

   THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK.

_____
[Employee Name]