<u>Exhibit A to Pledge Agreement</u>

TERM NOTE

$55,000.00

Arizona
November 16, 2007

FOR VALUE RECEIVED, the undersigned, Mike Noble (the "Employee"), hereby unconditionally promises to pay to the order of USF Holding Corp., a Delaware corporation (the "Company") at its offices, in lawful money of the United States of America, the principal amount of Fifty Five Thousand Dollars ($55,000.00), plus interest thereon. Interest shall accrue and be paid on the unpaid principal amount, which is from time to time outstanding, at the rate equal to 6.5% per annum until the principal amount is paid in full.

(a) The Employee agrees to pay the principal and interest as follows:

(1) Interest in like money at such office on the unpaid principal amount hereof from time to time outstanding at an interest rate equal to 6.5% per annum on the Maturity Date (as defined below) and, with respect to the amount of any optional or mandatory prepayments, on the date of any such optional or mandatory prepayment;

(2) Any and all remaining balance of the principal amount shall be paid (without prepayment penalty) on the earliest to occur of:

(i) no later than twenty (20) business days prior to the first occurrence of (x) the effective date on which the Employee is promoted to a position in the Company (or any successors or transferees as described above) or (y) any other event with respect to the Employee, which, in any such case if the Note were to remain outstanding on and after such date, would result in a violation of Section 402 of the Sarbanes-Oxley Act of 2002 (and any successor provision or legislation thereto), and for which no exemption is then applicable;

(ii) the Employee's termination of employment by the Company or any of its subsidiaries or the Employee for any reason;

(iii) the disposition of all or any part of the Purchased Stock by the Employee; and

(v) May 16, 2008 (the "Maturity Date").

(b) Definitions.

The following shall constitute "Events of Default" under the terms of this Note:

(i) default in payment when due and payable, upon acceleration or otherwise, of principal of this Note;

(ii) default for three (3) days or more in the payment when due of interest on the Note;

(iii) any default in the observance or performance of any covenant, condition or other agreement contained in the Pledge Agreement;

(iv) the Pledge Agreement shall cease for any reason to be in full force and effect in any respect (other than pursuant to the terms thereof);

(v) (a) the Employee shall commence any case, proceeding or other action (I) under any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization or relief of debtors, seeking to have an order for relief entered with respect to the Employee, or seeking to adjudicate the Employee as bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, winding-up, liquidation, dissolution, composition or other relief with respect to the Employee or the debts of the Employee, or (II) seeking appointment of any receiver, interim receiver, manager, trustee, custodian, conservator or other similar official for the Employee or for all or any substantial part of the assets of the Employee, or the Employee shall make a general assignment for the benefit of the creditors of the Employee; or (b) there shall be commenced against the Employee any case, proceeding or other action of a nature referred to in clause (a) above that (I) results in the entry of an order for relief or any such adjudication or appointment or (II) remains undismissed, undischarged, unstayed or unbonded for a period of 30 days; or (c) there shall be commenced against the Employee any case, proceeding or other action seeking issuance of a warrant of attachment, execution, distraint or similar process against all or any substantial part of the assets of the Employee that results in the entry of an order for any such relief that shall not have been vacated, discharged, stayed or bonded pending appeal within 30 days from the entry thereof; or (d) the Employee shall take any action in furtherance of, or indicating consent to, approval of, or acquiescence in, any of the acts set forth in clause (a), (b), or (c) above; or (e) the Employee shall be generally unable to, or shall admit in writing the Employee's general inability to, pay the Employee's debts as they become due; or

(vi) one or more judgments or decrees shall be entered against the Employee involving in the aggregate at any time a liability of $25,000.00 or more, and all such judgments or decrees shall not have been vacated, discharged, stayed or bonded pending appeal within 30 days from the entry thereof.

"Default" means any event that is or with the passage of time or the giving of notice or both would be an Event of Default.

This Note is subject to optional prepayment in whole or in part at any time. Reference is hereby made to the Pledge Agreement for a description of the properties and assets in which a security interest has been granted.

Upon the occurrence of (x) an Event of Default specified in clause (v) of the definition of "Events of Default" in paragraph (b) above with respect to the Employee, all amounts then remaining unpaid on this Note shall become immediately due and payable by the Employee and (y) any one or more of the Events of Default (other than as specified in clause (v) of the definition of "Events of Default" in paragraph (b) above), all amounts then remaining unpaid on this Note may be declared to be, immediately due and payable by the Company, and upon such declaration shall become immediately due and payable by the Employee.

All parties now and hereafter liable with respect to this Note, whether maker, principal, surety, guarantor, endorser or otherwise, hereby waive presentment, demand, protest and all other notices of any kind. The Employee hereby authorizes the Company, or any attorney designated by the Company, or any clerk of any court (which grant or power shall be conclusively deemed coupled with an interest and irrevocable), to appear on their behalf in any court of record, to confess judgment against them in favor of

the Company without prior hearing, upon failure to pay this Note as and when due. Attorneys' fees due to the Company shall be deemed to be fifteen percent (15%) of the amount confessed solely for the purposes of fixing a sum certain for which judgment can be entered by confession, and the Company agrees that in enforcing any judgment by confession, the Company shall not demand, solely with respect to attorneys' fees incurred by the Company in connection with the Note after such judgment is rendered, any amounts in excess of the actual amount of attorneys' fees billed to the Company by its counsel. Such judgment shall be binding upon the Employee to the full extent of the amount due hereunder. The Employee hereby waives and releases any errors that may occur in any such action and consent to immediate execution upon said judgment. Further, such judgment, if confessed for less than the full amount of the Note payable to the Company hereunder, shall not be deemed or construed as a waiver or release by the Company of the Company' claims for such additional indebtedness or of the Company' rights to pursue judgment against the Employee for such additional indebtedness in a separate and independent action.

Capitalized terms not otherwise defined herein shall have the meanings assigned to such terms in the Management Stockholder's Agreement dated as of November 16, 2007 between the Company and the Employee (as amended, supplemented or otherwise modified from time to time, the "Management Stockholder's Agreement").

THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK.

_____
Mike Noble

SECTION 83(b) ELECTION FORM

11/16, 2007

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Internal Revenue Service Center
_____
_____

Re: Election Under §83(b) of the Internal Revenue Code

Dear Sir:

The undersigned hereby elects under Section 83(b) of the Internal Revenue Code to include in the taxpayer's gross income for the taxable year in which the property described below was transferred, the excess (if any), of the fair market value of such property at the time of its transfer, over the amount (if any) paid for such property. Pursuant to Treas. Reg. § 1.83-2(e) the following information is submitted:

1. Name of taxpayer: MICHAEL J. NOBLE

   Address of taxpayer: 4717 E. QUARTZ MOUNTAIN Rd
   PARADISE Valley AZ, 85253

   Taxpayer's Identification Number: 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

2. Property with respect to which the election is being made: 100,000 shares of common stock of USF Holding Corp. ("USF").

3. Date transferred: November 16, 2007.

4. Taxable year for which this election is being made: Calendar year 2007.

5. Nature of the restriction or restrictions to which the property is subject:

   While the shares described in Paragraph 2 are held by the undersigned, such shares shall be subject to restrictions on transfer and to the right of USF to repurchase such shares at an agreed upon price, which price may be lower than the fair market value of the shares upon certain types of terminations of the undersigned's employment with USF or any of its subsidiaries (including US Foodservice), which transfer restrictions and right of repurchase shall lapse upon certain events.

6. Fair market value of the property at the time of transfer: $5.00 per share.

7. Amount paid for the property: $5.00 per share.

8. A copy of this election has been furnished to David Eberhardt at U.S. Foodservice.

Very truly yours,

*Michael Noble*
(Signature of Taxpayer)



## Non-Solicitation and Non-Disclosure Agreement

WHEREAS, U.S. FOODSERVICE, INC., (the "**Company**" as defined in Section 2(a) herein) and Employee acknowledge and agree that it is in their mutual best interest to enter into a non-solicitation and non-disclosure agreement with the same terms and conditions as set forth herein; and

WHEREAS, Employee's employment by the Company, the ability to participate in the Company's 2007 Stock Incentive Plan for Key Employees of USF Holding Corp. and its Affiliates, or the ability to participate in other similar Company sponsored programs, is contingent upon Employee's execution of this Agreement.

NOW, THEREFORE, in consideration of employment with the Company, and for other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, Employee and the Company knowingly and voluntarily agree to be legally bound by the following terms.

1. **Employee's Representations and Acknowledgments**.

    (a) **Consideration.** In consideration for Employee's agreement to enter into this Agreement and to be bound by its terms, Employee has received employment or continued employment, the ability to participate in the Company's 2007 Stock Incentive Plan for Key Employees of USF Holding Corp. and its Affiliates, the ability to participate in other similar Company sponsored programs, or other good and valuable consideration.

    (b) **Confidential Information and Goodwill.** Solely as a result of employment with the Company, Employee is given access to, becomes familiar with, and acquires knowledge of the Company, its Customers, employees, operations, pricing methods, delivery schedules, sources of supply, financial information, and other Confidential Information (as defined in Section 2 herein) of the Company and its Customers. Employee recognizes that Employee is, on behalf of the Company, a primary contact with the Company's Customers, and will develop close relationships with, gain special knowledge of, and promote and develop the loyalty of said Customers. The Company's Confidential Information, the goodwill of its Customers, and its relationship with its employees have been and will continue to be developed through the Company's investment of substantial time, effort and money. Employee recognizes that disclosure or use of Confidential Information for any purpose, including competition with the Company, would be greatly prejudicial and detrimental to the Company and would cause it to suffer immediate and irreparable injury. Employee further recognizes that Employee is in a position to unfairly convert the Company's business, customer accounts and goodwill for use by Employee and other Persons in competition with the Company, and that this would be greatly prejudicial and detrimental to the Company, and would cause it to suffer immediate and irreparable injury.

    (c) **No Other Agreement or Understanding.** Employee represents and warrants that Employee is not a party to any agreement or understanding which would impair Employee's ability to enter into this Agreement or otherwise preclude or restrict Employee's employment with the Company (except as set forth in writing in the Applicant's Non-Solicitation/Non-Competition Representation), and that Employee's execution and delivery of this Agreement and employment with the Company will not violate or constitute a default under any other agreement or understanding to which Employee is bound.

    (d) **Agreement Applicable to Other Positions.** If, after executing this Agreement, Employee: (i) is promoted to, assigned to or otherwise assumes one or more positions or functions other than or in addition to

Employee's position or functions at the time Employee signed this Agreement, regardless of title, or (ii) is transferred or assigned to or otherwise works for any affiliate, subsidiary or other division or business unit of the Company, the terms of this Agreement, including but not limited to Sections 4, 5, 6, 7, 8, 9 and 10 hereof, shall continue to apply with full force and effect.

(e) **Survival.** Employee acknowledges and understands that unless and until a subsequent written Agreement is signed by all parties to this Agreement that expressly supersedes this Agreement, this Agreement will continue in full force and effect during and after the termination of Employee's employment with the Company.

2. **Definitions.** For the purposes of this Agreement, the following terms shall have the following meanings and interpretations:

(a) **"Company"** means U.S. FOODSERVICE, INC., its parent company, USF Holding Corp., its subsidiaries, and any entity owned or controlled by USF Holding Corp., as well as any other businesses that have been acquired or established in the past, or any businesses that may be acquired or established after the execution of this Agreement, and any successor-in-interest thereto or assignee thereof.

(b) **"Business of the Company"** includes any services or products of the type sold, offered for sale, developed, commenced or planned to be sold by the Company at any time during Employee's employment. Currently, Business of the Company includes the food service business, and the sale and distribution of food and related products, equipment, goods and services to restaurants, schools, hospitals, and other institutions or establishments that serve food.

(c) **"Person(s)"** mean all individuals, partnerships, corporations, limited liability companies, firms, businesses, organizations and other entities.

(d) **"Customer(s)"** means all Person(s) that: (i) have purchased the Company's services or products; or (ii) have had any "contact" (as defined in Section 6(a) herein) with the Company for the purpose of the Company selling or the Person purchasing the Company's services or products, regardless of whether said Person has placed an order for such services or products; or (iii) are controlling or are controlled by any Person described in Subsection 2(d)(i) or (ii) above. These terms include group purchasing organizations and food service brokers. These terms also include prospective customers. These terms also include, but are not limited to, any individuals involved in making purchasing decisions at or for any Customer entities, even if the management, ownership, or name of such Customer entities has changed.

(e) **"Confidential Information"**

(1) "Confidential Information" means all trade secrets and all other confidential and proprietary information of the Company, including, but not limited to: Customer identities, including but not limited to the names, job titles and telephone numbers of the principal contact(s) of each Customer; Customer lists or other documents containing identity information; Customer documents, routes, books, files, purchases and accounts; route lists of sales employees; pricing, margins, sales allowances, discounts and pricing policies; invoices; marketing and product information; order guides or histories; sales data for any employee, product, Customer or territory; sales and delivery schedules; credit terms, policies and information, including payment records; information on Customer preferences; promotional programs; financial information of the Company or its Customers; the terms and formats of the Company's contracts and agreements with Customers, vendors and suppliers; information pertaining to the Company's methods of operation, processes, strategies and techniques, including strategies for identifying and satisfying the needs of specific Customers and types of Customers; information relating to employees of the Company, including but not limited to their identities, home and business telephone, mobile and pager numbers, and addresses, Customers served by other employees, and performance of employees.

(2) The definition of "Confidential Information" is intended to have the broadest meaning as permitted by law and extends beyond the definition of "trade secrets" as set forth in the Uniform Trade Secrets Act.

3. **Preservation of At Will Employment Relationship.** Employee agrees that no provision in this Agreement shall be construed to create an express or implied employment contract or a promise of employment for any specific period of time. Employee further acknowledges and agrees that Employee's employment with the Company is "at will" (unless Employee entered into a written employment contract expressly providing that his/her employment is not at will and signed by an officer of U.S. Foodservice, Inc. who is authorized to do so) and can be terminated at any time by the Company or Employee, with or without reason, with or without notice, and with or without cause.

4. **Non-Disclosure of Confidential Information.** At no time, either during or after the termination of employment, shall Employee directly or indirectly obtain, disclose, reveal or use for Employee or any Person, or aid others in obtaining, disclosing, revealing or using any Confidential Information of the Company, other than as may be required in the performance of duties for and as authorized by the Company. All Confidential Information is and shall remain the sole property of the Company. Without limiting the foregoing, it is expressly understood and agreed that the Employee shall not, at any time during or after the termination of employment with the Company, directly or indirectly utilize any Confidential Information to attempt to persuade or solicit any Customer of the Company to cease to do business or to reduce the amount of business which any Customer of the Company has customarily done or contemplates doing with the Company or to initiate or expand its business with a competitor of the Company. It shall be a violation of this provision to obtain or use Confidential Information obtained from other current or former Company employees, except as set forth in this Section 4. The Company understands that under the current laws of certain states, restrictions on the use or disclosure of confidential information must be of a finite duration. Accordingly, the parties agree that should the law of such a state be applied to this Agreement, the restrictions on the use or disclosure of Confidential Information that is not a trade secret (the restriction on the use or disclosure of which shall be unlimited by time) shall apply only for a period of three (3) years from the termination of Employee's employment with the Company, which period Employee acknowledges to be reasonable under the circumstances at the time of execution of the Agreement.

5. **Return of Company Property and Confidential Information.** All records, files, customer order guides, pricelists, photo/videographic materials, software, keys, equipment, credit cards or other tangible material, and all other documents, including but not limited to Confidential Information, relating to the Business of the Company (collectively "**Property**") that Employee receives, acquires, produces or has access to during employment (irrespective, in all cases, of the medium in which any information is stored), are the exclusive property of the Company. Upon the termination of Employee's employment, Employee shall return to the Company all Property of the Company and all copies thereof in Employee's possession or control (regardless of how such Property or Confidential Information is obtained or maintained).

6. **Non-Solicitation of Customers.** During Employee's employment with the Company and for the one (1) year period following the termination thereof (the "Restricted Period"), Employee shall not (as an employee, agent, servant, owner, partner, consultant, independent contractor, representative, stockholder or in any other capacity) directly or indirectly, for Employee or any other Person (other than the Company), with respect to the Business of the Company, solicit, market, service, sell to or contact, or attempt to solicit, market, service, sell to or contact, any Customer of the Company with whom Employee had any "contact" (as defined in Section 6(a) herein) or about whom Employee used or received or saw or created or had access to any Confidential Information at any time during the eighteen (18) month period prior to the termination of Employee's employment. This prohibition applies whether or not the Customer is currently buying from the Company at the time of Employee's termination of employment, and whether or not the management or ownership of the Customer changes during the restriction period.

(a) For the purposes of this Agreement, "contact" with a Customer during Employee's employment or during the Restricted Period includes, but is not limited to: (i) sales to a Customer; (ii) solicitations of, meetings with, or visits to a Customer for the purpose of selling it any food or related products of the type sold by the Company, whether or not these resulted in sales; (iii) participation in the supervision or management of any of the accounts of a Customer, or in the setting of prices or credit terms or margins for or with respect to a Customer, or in developing strategies or decisions affecting a Customer; or (iv) using or receiving or seeing or creating or having access to any Confidential Information of or relating to a Customer.

(b) The prohibition against indirectly soliciting, marketing, servicing, selling to or contacting, or attempting to solicit, market, service, sell to or contact any Customer as set forth in Section 6 above means that Employee shall not, with respect to the Business of the Company: provide information to any Person (other than the Company) regarding any such Customer; introduce any Person (other than the Company) to any such Customer; advise, suggest to or encourage any such Customer that it should do business with any Person (other than the Company); "switch" or "swap" sales, solicitation, or service responsibility for any Customer with any employee of any Person competitive with or engaged in the Business of the Company; participate in the supervision or management of any of the accounts of any such Customer; participate in the supervision or management of any employee of any Person, where such employee has Contact with or plans to have Contact any such Customer; participate in the setting of prices, credit terms or margins for any such Customer; participate in the strategies and decisions affecting any such Customer; receive any personal benefit (present or future) in the event a Customer should do any business with any Person (other than the Company); or in any way, state or imply to any such Customer that doing business with any Person (other than the Company) during the Restricted Period will inure to Employee's present or future benefit.

7. **Non-Solicitation of Company Employees.** During Employee's employment and for the one (1) year period following the termination thereof, Employee will not, directly or indirectly, on behalf of Employee or for any other Person (other than the Company), entice, induce, cause, encourage or solicit, or attempt to hire, entice, induce, cause, encourage or solicit any employee of the Company (i) to leave the Company's employ; or (ii) to become employed by any Person competitive with or engaged in the Business of the Company.

8. **Non-Impairment of Common Law.** Nothing in this Agreement shall abrogate or reduce any duties or obligations Employee has to the Company under statutory or common law, including but not limited to fiduciary duties, the duty of undivided loyalty to the Company, and the duty not to engage in tortious interference with the Company's actual or prospective business relationships.

9. **Reasonable and Necessary; Severability; Enforceability; Non-Waiver.** It is the parties' intention that this Agreement shall be enforceable to the fullest extent allowed by law. The parties have entered into this Agreement in the belief that its provisions, and in particular the provisions of Sections 4, 5, 6, 7, 8, 9 and 10 are valid, reasonable, enforceable and necessary to protect the Company's Confidential Information, goodwill, and business interests. If any one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to time, duration, scope, activity or subject, it shall be construed by limiting and reducing it so as to be enforceable to the fullest extent permitted under then-applicable law. Further, if any one or more of the provisions contained in this Agreement shall, under existing or hereafter enunciated law, be held to be invalid, illegal or unenforceable, such invalidity, illegality or unenforceability shall not affect any other provisions of this Agreement. The Company's failure to act upon any breach of this Agreement or waiver of any breach of this Agreement shall not constitute, nor shall it be construed as, a waiver of any preceding or succeeding breach, and no waiver by the Company of any right hereunder shall be construed as a waiver of any other right.

10. **Waiver of Jury Trial.** Any action, lawsuit, demand, claim or counterclaim shall be resolved by a judge alone, and both parties hereby expressly waive and forever disclaim the right to a trial before a civil jury.

11. **Termination of Employment.** Employee understands and agrees that the obligations and restrictions imposed under this Agreement shall apply regardless of whether the termination of Employee's employment is voluntary or involuntary or is with or without cause, reason or notice.

12. **Withholding of Monies Due.** To the extent permitted by law, Employee authorizes the Company to deduct from any wages or other amounts due Employee, including remuneration, compensation, bonus, commission, and/or fringe benefit provided in return for services provided by Employee, including from the final paycheck or any other payment due Employee upon termination, all monetary obligations of any type (including but not limited to the value of any Company Property and any debts or obligations to the Company) that are owed by Employee to the Company.

13. **Notification.** With respect to each Person engaged in the Business of the Company for whom Employee provides services, whether or not in exchange for compensation in any capacity during his/her employment with the Company and for a one (1) year period following the termination of Employee's employment with the Company, Employee shall provide the Company with the following: the name, address, telephone number, and principal contact of the Person; a description of the business of and services rendered by said Person; and the nature of services to be provided by Employee on behalf of said Person. Employee shall provide any such Person with a copy of this Agreement. Employee consents to the Company's right, at any time, to notify such Person of this Agreement, as well as any alleged violations thereof.

14. **Non-Disparagement.** During and after employment with the Company, Employee shall not divulge, disclose or communicate to others, in any manner whatsoever, information or statements that disparage or are intended to disparage the Company or its business reputation.

15. **Remedies for Breach.** Employee agrees that any breach of this Agreement by Employee will cause the Company to suffer immediate and irreparable injury, for which there is no adequate remedy at law. In the event of a breach or threatened breach of any of the terms of this Agreement, the Company shall be entitled to seek and obtain enforcement of this Agreement in a court of competent jurisdiction by means of a decree of specific performance, an injunction without posting a bond or the requirement of any other guarantee, and any other form of equitable relief. Employee consents to the entry of such an order. This provision is in addition to and does not replace any other remedies the Company may have at law or in equity, including the right to receive monetary damages. Employee shall reimburse the Company for all reasonable attorneys' fees and costs incurred by the Company in enforcing this Agreement.

16. **Other Agreements.** This Agreement supersedes all prior oral understandings, oral representations, and oral agreements ever made relating to non-solicitation of customers, non-solicitation of employees, and non-disclosure of confidential information. In the event Employee executed other written agreements relating to this subject matter with the Company, and/or in the event Employee enters into other written agreements from time to time that contain provisions similar to the provisions contained herein, all such provisions shall be interpreted to provide the Company with cumulative rights and remedies and the benefits and protections provided to the Company under each such agreement shall be given full force and effect. No amendment, waiver or revocation of this Agreement shall be effective unless set forth in writing expressly stating the amendment, waiver or revocation and signed by an authorized officer of the Company.

17. **Acknowledgement of Understanding.** Employee acknowledges that Employee: has read this Agreement in its entirety and understands all of its terms and conditions; is entering into this Agreement voluntarily, without coercion from any source; and agrees to abide by all of the terms and conditions of this Agreement.

18. **Successors and Assigns.** Employee expressly agrees that this Agreement, including the rights and obligations hereunder (including all rights of enforcement), may be transferred and/or assigned by the Company without the further consent of Employee (a) from the Company to any of its present or future subsidiaries, affiliates, divisions or business units, (b) from any present or future Company subsidiary, affiliate, division or business unit to another, and (c) from the Company or any present or future Company subsidiary, affiliate, division or business unit to any Person or Persons that acquire(s) all or substantially all of the stock or assets of the Company or any present or future Company subsidiary, affiliate, division or business unit that employs Employee at the time of such acquisition, and Employee shall continue to owe the transferee entity all obligations described in this Agreement. In the event of a transfer of this Agreement or change in the entity by which Employee is employed, "Confidential Information" shall include such information both of the Company and of such successor or transferee entity, and "Customer" shall include customers of the Company and of any successors or assigns.

19. **Section Headings.** The headings of sections contained in this Agreement are inserted only as a matter of convenience and for reference and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision hereof.

Employee, intending to be legally bound, hereby signs this Agreement whereupon this Agreement enters into full force and effect.

_____
Employee Signature, L.S. (under seal)

11/16/07
Date

MICHAEL J. NOBLE
Employee Name Printed

U.S. FOODSERVICE, INC.

By: _____
Signature, L.S. (under seal)

_____
Date

_____
Printed Name

_____
Title

DOCS 23560           6           9-2007

Employee, intending to be legally bound, hereby signs this Agreement whereupon this Agreement enters into full force and effect.

_____
Employee Signature, L.S. (under seal)

_____
Date

_____
Employee Name Printed

U.S. FOODSERVICE, INC.

By: _____
Signature, L.S. (under seal)

Date  11-16-07

Printed Name  **David B. Eberhardt**

Title  Executive Vice President, General Counsel & Secretary