MAY – 3 2013

MICHAEL K. JEANES, CLERK
V. VASQUEZ
DEPUTY CLERK

Philip J. Nathanson   Arizona State Bar #013624
THE NATHANSON LAW FIRM
8326 E. Hartford Dr. – Suite 101
Scottsdale, AZ 85255
(480) 419-2578
(480) 419-4136
philipj@nathansonlawfirm.com

*Attorney for Plaintiff*

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

PHILLIP G. ROSZAK,

Plaintiff,

v.

U.S. FOODSERVICE, INC. and USF HOLDING CORP.,

Defendants.

No. CV2013-052566

**PLAINTIFF'S COMPLAINT FOR WHISTLEBLOWER RETALIATION UNDER DELAWARE LAW, AND FOR OTHER RELIEF.**

Plaintiff, PHILLIP G. ROSZAK, submit this Complaint against Defendants U.S. FOODSERVICE, INC. and USF HOLDING CORP., and allege as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff PHILLIP G. ROSZAK ("Plaintiff or Roszak") is, and at all times relevant has been, a resident of Maricopa County, Arizona.

2. U.S. FOODSERVICE, INC. ("Defendant" or "US Foods") and USF HOLDING CORP. are Delaware corporations with their principal place of

business in Rosemont, Illinois. Defendant USF HOLDING CORP. is the parent corporation of U.S. FOODSERVICE, INC.

3. All acts of any individual Defendant alleged in the Complaint were performed on the acting Defendant's own behalf and on behalf of the affiliated corporation.

4. Defendants, and each of them, have caused an event to occur in Maricopa County, Arizona out of which Plaintiff's claim arose.

5. Jurisdiction and venue are proper in the Court.

## GENERAL ALLEGATIONS

6. Plaintiff was the Vice President of information Technology for Defendant U.S. FOODSERVICE, INC. Plaintiff worked in said Defendant's office located in Tempe, AZ, in Maricopa County, Arizona. The chain of authority was such that Plaintiff reported to Keith Rohland, Chief Information Officer, who himself reported to John Lederer, the CEO of Defendant U.S. FOODSERVICE, INC. Plaintiff managed a team that was responsible for the Defendant's internal back office applications (Finance, Human Resources, Legal). Plaintiff also had responsibility for telecommunications finances which includes a team responsible for the policy and management of company provided wireless devices (cell phones).

7. Mike Noble was the Senior Vice President of Shared Services, also working out of Defendant's office in Tempe, Arizona. Noble reported to Al Swanson, the Chief Financial Officer, who reported to John Lederer, the CEO. In this role Noble had responsibility for financial shared services for the entire

company which included accounts payable and the travel department which was also responsible for group meetings and travel and expense management.

8. Mike Makings was the owner of ICG (a software vendor that has done business with US Foods since 1995 in Phoenix, Arizona. ICG was primarily accountable to Plaintiff's team for their work and oversight; however, the vast majority of the work was done in support of Noble's area. Makings and Noble were and are very close personal friends. Makings and Plaintiff were friends.

9. Jennifer Steinke was the manager of corporate travel, also working in the Defendant's office located in Tempe, Arizona. Steinke reported to Shane Guilliams, who reported to Noble. Steinke was responsible for managing the travel policies and department as well as planning and coordinating corporate events.

10. John Lederer was and is the CEO of Defendant U.S. FOODSERVICE, INC., working out of the principal corporate office located in Rosemont, Illinois.

11. Colette May is the owner of Kindle Communications, located in Chicago, Illinois. Kindle Communications was providing marketing and communications services to US Foods' large corporate events such as the National Sales Conference and the Presidents Cup, a trip for top sales performers.

12. Juliette Pryor was and is the Chief Legal Counsel and Chief Compliance Officer of Defendant U.S. FOODSERVICE, INC., working in the principal corporate office located in Rosemont, Illinois. Pryor reported to Lederer, and was responsible for administering the annual ethics training classes

and the Code of Conduct. The Code of Conduct is a document that all employees have to complete, which document certifies that an employee was not doing anything unethical, including engaging in an inappropriate relationship with any principal of any vendor.

13. Dave Esler was Defendant's Chief Human Resources Officer, also working out of the principal office in Rosemont, Illinois, and also reporting to Lederer.

14. Lederer has been with US Foods since late 2010. At the Tempe, Arizona office there were 4 senior leaders: Steve Humphreys West Region President, Mike Noble, Paul Schwartz Sr. VP IT and Plaintiff. The last couple of years US Foods missed its key financial performance significantly enough that it had to drastically reduce almost nonexistent bonuses despite having record revenues and earnings for the company. In 2012 (for the 2011 year) despite all employees getting a small bonus, Lederer paid himself and his direct reports a large bonus. Lederer's out of control spending contributed significantly to the miss, and Plaintiff and the other leaders reasonably believed that Lederer's actions were harming the company financially, which was negatively impacting the Company, employee bonuses and the employees' morale.

15. Lederer brought in a consultant (Eugene Dynste) that he had previously used to examine all of the purchasing and spending for the organization, with the intent in dramatically reducing our indirect spending (the money a company spend for products and services procured that are not for resale.) As part

of this initiative that consultant put in place a procurement practice and policy that indicated all products and services had to go through a reverse auction. Yet Lederer nevertheless mandated that specific vendors and services be used without following this company policy or getting any competitive bids. When Steinke asked about why US Foods was using Kindle, she was told not to worry about it because Lederer wanted to use Kindle.

16. Around May of 2012 Noble, Plaintiff and others determined that Lederer had repeatedly contacted Colette May, the owner of Kindle Communications, in person and on the phone. Then Noble, Plaintiff and others determined that US Foods was doing a lot of business with Kindle communications. It turned out that Lederer had a personal and romantic relationship with May while US Foods was using and doing business with May's company, Kindle Comunications.

17. Around late July or August of 2012 Noble and Plaintiff reported that situation to US Foods and its upper management.

18. Over the next couple of weeks there were signs that the company may have been looking into the situation since they were requesting information from Noble's team about invoices from Kindle Communications. Inquiries were made about the relationship with Kindle.

19. About six or seven weeks later, since nothing happened at the company, Noble, Plaintiff and others made a second report to US Foods of the Lederer, May and Kindle Communications situation.

20. This second disclosure of that situation aroused attention as additional requests for Kindle Communications invoices were made. Steinke was questioned multiple times, with the external lawyers questioning her about what she knew, did she do this, did she know anyone that would. She was also asked who she was sharing travel information with.

21. On December 10, 2012, Noble was asked to go to Chicago on December 11 to meet with the lawyers relative to an internal investigation. Noble attended the meeting and was terminated. Plaintiff was put on administrative leave and immediately relieved of all of his duties. Plaintiff was asked to immediately turn over his laptop and his cell phone. Plaintiff resigned and said he would not be going to Chicago to meet with the US Foods lawyers, who nevertheless informed Plaintiff that he was terminated.

22. On January 17th Plaintiff received a FedEx from US Foods indicating that they were considering Plaintiff's resignation a preemptive action to being terminated by the company and as such they were treating it as termination with cause. The Defendant thereafter claimed that Plaintiff was not eligible for any appreciation on his stock investment in US Foods. Defendant also indicated that it had until June 15th to return Plaintiff's initial $100,000 stock investment, which amount has not been returned to date.

23. Plaintiff reasonably believed, then and now, in good faith, that the situation between Lederer, May and Kindle Communications was contrary to Company policy and US Foods financial management standards.

## COUNT I – DELAWARE WHISTLEBLOWER STATUTE
## 19 DEL.C. § 1702(6)(b) AND 19 DEL.C. § 1703(4)

24. Plaintiff incorporates by this reference in this Count I paragraphs 1-23 above.

25. US Foods had an annual mandatory Ethics training session in which all employees were told that unethical behavior violated Company standards and needed to be reported if detected. US Foods administered an annual Code of Conduct that was mandatory for every employee to certify being in compliance with. That Code of Conduct was a Company financial management standard administered through an online system. Each employee was required to respond to approximately 30 or so questions about specific activities and/or relationships an employee had or might have. Specifically each employee was required to respond to questions in the Code of Conduct pertaining to vendors and any relationship the employee might have with a vendor, such as a family member being employed or on the board of any vendor. Any such relationship violated the Code of Conduct, which was and is financial management standard implemented by US Foods. Additionally, the procurement practice and policy set forth in paragraph 15 above, that indicated that all products and services had to go through a reverse auction, was also a financial management standard implemented by US Foods.

26. Defendant committed a "Violation" under 19 Del. C. § 1702(6)(b), in that Defendant's actions were and are contrary to its own company policies, which policies constitute financial management standards. Defendant acted therefore in a

manner that was "materially inconsistent with, and a serious deviation from, financial management or accounting standards implemented pursuant to a rule or regulation promulgated by the employer ... to protect any person from fraud, deceit, or misappropriation of ... private funds or assets under the control of the employer..." pursuant to 19 Del. C. § 1702(6)(b).

27. Defendant violated the Delaware Whistleblowers' Protection Act, 19 Del. C. § 1703(4), in that it discharged Plaintiff for reporting "verbally or in writing to the employer or to the employee's supervisor a violation, which the employee knows or reasonably believes has occurred or is about to occur..." The Delaware Whistleblowers' Protection Act applies to the foregoing because this involves the internal affairs of Delaware corporations.

28. As a direct and proximate result of the foregoing conduct in which defendant engaged, Plaintiff suffered the loss of his lucrative salary and other employment benefits. Punitive damages should also be assessed in this case to punish the defendant and to deter others from engaging in similar conduct.

WHEREFORE, Plaintiff, PHILLIP G. ROSZAK, requests damages and a judgment be entered against Defendants U.S. FOODSERVICE, INC. and USF HOLDING CORP., in an amount in excess of the jurisdictional minimum, together with punitive damages and costs.

**COUNT II – STOCK AGREEMENT**

1-28. Plaintiff incorporates by this reference in this Count II paragraphs 1-28 of Count I as and for paragraphs 1-28 of this Count II.

29. As a direct and proximate result of the foregoing conduct in which defendant engaged, Plaintiff has been deprived of his stock investment, which loss exceeds $100,000.

WHEREFORE, Plaintiff, PHILLIP G. ROSZAK, demands damages against Defendants U.S. FOODSERVICE, INC. and USF HOLDING CORP., in an amount in excess of his compensatory damages, which damages exceed the jurisdictional minimum amount, and in an amount sufficient to punish and deter defendants for punitive damages.

## COUNT III – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1-29. Plaintiff incorporates by this reference in this Count III paragraphs 1-29 of Count II as and for paragraphs 1-29 of this Count III.

WHEREFORE, Plaintiff, PHILLIP G. ROSZAK, demands damages against Defendants U.S. FOODSERVICE, INC. and USF HOLDING CORP., in an amount in excess of his compensatory damages, which damages exceed the jurisdictional minimum amount, and in an amount sufficient to punish and deter defendants for punitive damages.

Dated this 3rd day of May, 2013.

Philip J. Nathanson - AZ Bar #013624
THE NATHANSON LAW FIRM
8326 E. Hartford Dr., Suite 101
Scottsdale, AZ 85255
(480) 419-2578
(480) 419-4136 (FAX)
philipj@nathansonlawfirm.com