**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| US FOODS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. NOBLE, et al., <br><br> Defendants. | Civil Action No. 1:13-cv-03640 |

**NOBLE'S MEMORANDUM IN SUPPORT OF DEFENDANT'S
RESPONSE TO PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY**

Plaintiff U.S. Food, Inc. ("US Foods" or "Plaintiff") had filed this action seeking an injunction against Defendant Michael J. Noble ("Noble" or "Defendant") prohibiting him from using or destroying certain documents (emails) that it claims he has, but has refused to turn over. Plaintiff claims there is an emergency sufficient to require expedited discovery. Plaintiff is not entitled to the discovery sought, on an expedited basis or otherwise, for the following reasons.

First, this Court lacks subject matter jurisdiction of the relief sought in this case, including the request for expedited discovery, because, as Noble will soon point out in a Rule 12(b)(2) motion to dismiss or stay for lack of jurisdiction, the parties are bound by a mandatory arbitration provision that covers all such matters and requires this Court to defer the discovery issues at hand to an arbitrator. That arbitration agreement is a provision of the parties' fully executed, valid and binding Confidential Separation

1

Agreement and Release (the "Settlement Agreement"), a copy of which is attached and incorporated as **Exhibit A** to this Response.  Noble will also show that under the conditions of this lawsuit, US Foods cannot meet the $75,000 diversity threshold because all relief, including interim relief, must come from an arbitrator and not this court.

Second, even if the Court had jurisdiction, US Foods has not offered any valid or compelling reason why the discovery orders it seeks must be obtained on an "emergency" basis, rather than in the normal course of the case.  The only reason for that "emergency" is to harass, intimidate and cause Noble, who is an Arizona resident, to incur attorney fees and costs because of a vendetta by US Foods CEO.

**I.     Background – The Parties' Dispute and Settlement**

Defendant Nobel was a highly paid US Foods's executive who was terminated in December 2012 for exposing an extramarital affair that the company's CEO, John Lederer ("Lederer"), was having with the owner of a US Foods vendor that supplied event planning services to the company[1].  Using a private investigator, Noble caught Lederer "red-handed" and apparently Lederer has since confessed to the transgression.

Noble got a lawyer and threatened to sue US Foods for wrongful discharge and whistleblowing.  US Foods asserted claims against Noble, too.  The parties negotiated and eventually executed the Settlement Agreement attached as Exhibit A to this Response.  US Foods has ignored that agreement, however, by filing this lawsuit, making

---

[1] These and the following facts are set forth and supported in a separate Response to US Foods's Demand for Arbitration with the American Arbitration Association, a copy of which is attached and incorporated as **Exhibit B** to this Response.

2

the same claims it made before the matter was settled and, inconsistently, the same claims it has asked AAA to arbitrate.

In both its Complaint filed with this Court and its Demand for Arbitration filed with AAA, US Foods calls Noble's discovery and threatened disclosure of Lederer's clandestine affair an illegal "conspiracy and a scheme to threaten and embarrass" Lederer and the company by "abusing, misusing and destroying … company property" and by breaching his fiduciary duties. (See Motion at 1-5). That is nonsense.

To the contrary, as US Foods well knows, Noble is the classic "whistle-blower" who suspected and potentially illegal or inappropriate misconduct – here, a CEO who was sleeping with the owner of a vendor who is able to sell services to the company at higher-than-market prices because of the relationship. When Noble obtained the proof, he anonymously reported it to the corporate compliance officer, and was promptly terminated for doing so.

"Blowing the whistle" on such shenanigans is not a crime or breach of duty, but is valued, protected and encouraged by the law. *See Smith v. Delaware State University*, 47 A.3d 472, 476 (Del. Supr. 2012) (Delaware Whistleblower Act "serves a valuable function by protecting employees who report violations of law for the benefit of the public" and, "[b]y protecting these employees, the statute encourages such reporting and promotes public health and safety"); *see also Murcott v. Best Western Intern., Inc.*, 198 Ariz. 349, 357, ¶¶ 39-42, 9 P.3d 1088, 1096 (App. 2000).[2]

---

[2] Delaware law is cited because the parties' Settlement Agreement provides that it applies to interpret its provisions. (Ex. A at 6, ¶20). Arizona law is also cited here because it is the state where the whistle-blowing at issue occurred.

3

**A. The Parties Have Fully and Completely Settled Their Dispute.**

Noble protested his termination and demanded re-payment of his stock purchases and damages. The parties, through their counsel, negotiated and resolved their dispute on January 11, 2013, when Noble accepted the terms of US Foods' settlement offer. Their Settlement Agreement is attached as Exhibit A to this Response.

In the Settlement Agreement, Noble agreed to do three things: (1) He agreed that the private investigator he had hired, Quest Consultants ("Quest") give its file to US Foods (Ex. A at 5, ¶14); (2) He agreed to return any company property in his possession or control to US Foods (Id. at 3-4, ¶9); and (3) He agreed to be interviewed by US Foods's counsel about the matters leading up to his termination (Id. at 15, ¶15). He did all of those things, including flying to Chicago to be interviewed by US Foods's counsel. (A copy of his counsel's email sent to US Food's counsel confirming this is attached as Ex. D to his Response to US Food's Demand for Arbitration, Exhibit B hereto).

**B. US Foods's Refusal to Honor the Parties' Settlement.**

Despite agreeing to and signing the parties' Settlement Agreement, US Foods continues to refuse to pay the $675,000 settlement amount, $500,000 of which is money Noble paid for US Foods stock years ago. It has claimed that, among other things, Noble had not returned all of the company emails in his possession or control because, as he testified during his interview, he had wisely deleted those emails from his computer after they had been located, downloaded and saved on the "thumb drive" storage device he had given to US Foods. The emails had been returned, as promised, and had not been "lost" or "destroyed" but in order to ensure that no copy remained on his computer, Noble

4

deleted them from his computer after downloading and saving them on that storage devise. (A copy of his counsel's email sent to US Food's counsel explaining this and denying other allegations made by UF Foods with regard to Quest's document production is attached as Ex. E to his Response to US Food's Demand for Arbitration, Exhibit B hereto). US Foods clearly was looking for some excuse, regardless of merit, to breach the parties' Settlement Agreement.

Subsequent efforts to satisfy US Foods and secure its compliance with the parties' Settlement Agreement were stalled by the company's legal counsel. (A copy of his counsel's email sent to US Food's counsel confirming these efforts are attached as Exs. F, G, H, I and J to his Response to US Food's Demand for Arbitration, Exhibit B hereto).

Suddenly, in mid-discussion, without forewarning or any indication that US Foods truly believed that he had not given it everything electronic document he had in his possession or control, as represented and confirmed, Noble received this lawsuit and, inconsistently, AAA Demand for Arbitration. Both this lawsuit and the AAA arbitration demand ignore the parties' Settlement Agreement, as if it didn't exist. It does exist, however, and it is attached as Exhibit A to this Response.

### C. The Parties' Mandatory Arbitration Provision.

This lawsuit is a sneak attack, end-run around the parties' Settlement Agreement that ignores the agreement's mandatory arbitration provision, which states:

> The parties shall use good faith efforts to resolve any controversy or claim arising out of or related to this Agreement or the breach thereof. If, despite their good faith efforts, the parties are unable to resolve such controversy or claim, then such controversy or claim shall be resolved by arbitration in Chicago, Illinois, with one (1) arbitrator, in accordance with

5

the National Rules for resolution of Employment Disputes of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. .

(Exhibit A hereto at 6, ¶20). The issues raised by US Foods in its Complaint replicate the document production issues it raised in refusing to pay Noble the settlement funds he is entitled to be paid pursuant to the settlement Agreement. Such issues clearly are "any controversy or claim arising out of or related to [the] Agreement or the breach thereof" that must be arbitrated, rather than litigated, to resolution. US Foods itself concedes has so much by filing its AAA Demand for Arbitration.

II. **The Parties' Settlement Agreement Requires Arbitration of All Relief US Foods Has Requested in its Complaint, Including the Interim Relief Requested by its Motion for Expedited Discovery.**

The mandatory arbitration provision of the parties' Settlement Agreement compels this Court to deny both the injunctive relief sought by US Food's Complaint and its Motion for Expedited Discovery.

Both the Federal Arbitration Act, 9 U.S.C §1, *et seq*. (FAA) and the AAA rules regarding such matters require that the scope of arbitration – here, to be determined by the terms of the Settlement Agreement – is a matter to be determined, in the first instance, by the arbitrator. *See Moses H. Cone Memorial Hosp. v. Mercury Const.*, 460 U.S. 1, 25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) ("[the FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *Medtronic AVE Inc. v. Cordis Corp.*, 2004 WL 1557328, 3 (3rd Cir. 2004) (noting the "long line of cases that hold that arbitrability is ultimately a question for the arbitrator to resolve); *see also New Castle County v. U.S. Fire Ins. Co.*, 728

F.Supp. 318, 321 (D.Del. 1989) (the Supreme Court in *Moses* requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). See, also *Nitro-Lift v Howard*, __ U.S. __. 133 S.Ct. 500, 504 (2012) (holding that the arbitrator is to decide the scope of the arbitration: "it is for the arbitrator to decide in the first instance whether the covenants not to compete are valid").

This Court, therefore, lacks subject matter jurisdiction to determine such issues in the first instance. The arbitrator, rather than this Court, has the authority to grant or deny the injunctive relief US Foods has requested in its Complaint. Federal courts have considered this precise issue and determined that, when an arbitrator has jurisdiction to issue interim relief, a court should decline to do so.

In *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999), for example, the Ninth Circuit affirmed the District Court's refusal to grant injunctive relief related to a pending arbitration because, as here, the arbitrator had the authority to grant that relief: "Because the district court correctly concluded that all of Simula's claims were arbitrable and the ICC arbitral tribunal is authorized to grant the equivalent of an injunction *pendente lite*, it would have been inappropriate for the district court to grant preliminary injunctive relief." 175 F.3d at 726.

There is no question that an arbitrator hearing the dispute between Noble and US Foods could issue the same relief as this Court. The parties' Settlement expressly

7

invokes the AAA Employment Dispute Resolution Rules[3] and those rules make it clear that the arbitrator has the broadest possible authority.  See, AAA Employment Dispute Resolution Rules; Rule 32 called "Interim Measures" reads as follows:

> "On the request of any party, the arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court".

A similar AAA rule has been applied in a case closely on point, *Greenpoint Technoligies, Inc. v. Peridot Associated S.A.*, 2009 WL 674630 (W.D. Wash. 2009).  The Court there provided the following reasons why courts defer requests for immediate relief when the arbitrator can issue that same "interim" relief:

> [O]nce a court determines that all disputes are subject to arbitration pursuant to a binding arbitration clause, it is improper for a district court to grant preliminary relief where provisional relief is available from an arbitral tribunal. See *Simula, Inc. v. Autolive, Inc*., 175 F.3d 716, 726 (9th Cir.1999) (emphasis added).  District courts within the Ninth Circuit have consistently followed this holding. See, e.g., *DHL Info. Servs., Inc. v. Infinite Software Corp*., 502 F.Supp.2d 1082, 1083 (C.D.Cal.2007) (applying *Simula* to refrain from carving out interim relief issues from the arbitrator); *Ever-Gotesco Res. and Holding, Inc. v. PriceSmart, Inc*., 192 F.Supp.2d 1040, 1044 (S.D.Cal.2002) (holding that *Simula* requires an arbitral tribunal to grant provisional relief where the parties submit to arbitration); *China Nat'l Metal Prods. Import/Export Co. v. Apex Digital, Inc.,* 155 F.Supp.2d 1174, 1182 (C.D.Cal. 2001) (reversing magistrate judge's issuance of a writ and finding that "*Simula* dictates that the court must respect [an arbitration] agreement and refrain from awarding provisional relief when the parties have provided for another means to obtain such relief").

> In the instant case, there can be no dispute that the arbitration clause governs "[a]ny dispute arising out of or in connection with this Agreement," and that

---

[3] The AAA's "Employment Arbitration Rules and Medication Procedures are online and found here: http://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004362&revision=latestreleased  (last visited June 4, 2013).  ppliede

> such disputes will be "settled under the Rules of the [AAA]." (Dkt. # 13, Ex. A at 29, ¶ 18.3). There is equally no dispute that the Rules of the AAA provide that the arbitral tribunal "may take whatever interim measures it deems necessary, including injunctive relief and measures for the protection or conversion of property." Article 21 of the AAA's International Arbitration Rules. Thus, this case fits squarely within the principles established by *Simula*. No interim relief should be awarded by a court because the parties have clearly agreed to settle their disputes in arbitration, and the arbitration rules provide an avenue for interim relief.

2009 WL 674630 at 3; *see also DHL Info. Servs. (Americas), Inc. v. Infinite Software Corp.*, 502 F. Supp. 2d 1082, 1083 (C.D. Cal. 2007) ("This case concerns whether a request for a preliminary injunction should be reviewed by this Court or in arbitration. The Court defers to arbitration because the parties have agreed that arbitration is appropriate for resolving disputes in this matter, including disputes about preliminary injunctive relief.").

The issue is not even close. US Food's requests for equitable, interim relief in this case, in a matter that is clearly subject to mandatory arbitration, are requests that can and should be made to and resolved by an AAA arbitrator. They do not belong here.

The same judicial restraint and deference applies to all aspects of US Food's Motion for Expedited Discovery. *See Kristian v. Comcast Corp.*, 446 F.3d 25, 42-43 (1st Cir. 2006) (discovery matters are procedural in nature and therefore are matters for an arbitrator to resolve); *see also Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979) ("It would waste judicial resources and be burdensome upon the parties if the district court in a case such as this were mandated to permit discovery, to

take evidence and determine the merits of the case at the same time as the arbitrator is going through a substantially parallel process").

The expedited discovery US Foods requests is discovery of the same issues that are required to be arbitrated by the parties' Settlement Agreement and, as such, are an integral part of "any controversy or claim arising out of or related to [the] Agreement or the breach thereof" that are required to be arbitrated by the agreement. (See Exhibit A hereto at 6, ¶20).

There is a second and independent reason why this Court lacks jurisdiction. This Court lacks subject-matter jurisdiction because the amount in controversy is zero. The amount in controversy is zero because this Court has no jurisdiction to issue any relief. Instead, the parties must arbitrate their disputes. Because the parties are required to arbitrate their claims, including their claims for injunctive relief, there is no amount in controversy, at least with respect to this Court.

Even if the amount in controversy is not zero, Plaintiff has not satisfied its burden of providing "proof to a reasonable probability" that the amount of controversy exceeds $75,000. *Anthony v. Sec. Pac. Fin. Servs., Inc.,* 75 F.3d 311 (7th Cir. 1996) (holding that when a defendant disputes the amount in controversy, Plaintiff must support its assertion with "proof to a reasonable probability") (citing cases). Plaintiff seeks no money from Noble in its complaint and this Court can award no monetary relief so the $75,000 threshold cannot be met. See, *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 610 (7th Cir. 1997) where the Seventh Circuit found that the class-action plaintiffs failed to satisfy their burden of proving that the value of the injunction to each

10

of them exceeded $75,000 because they made "[n]o effort to quantify this value or array of values in even the roughest terms." 123 F.3d at 610. Plaintiff's complaint, which states that the value of the injunction is "significant," likewise made no effort to quantify the value of the injunction, even if it could seek an injunction here (it can't).

Accordingly, U.S. Foods has failed to satisfy its burden of proof that this Court has jurisdiction.

### III. US Foods Has Not Demonstrated Its Need For Expedited Discovery on an "Emergency" Basis in Any Event.

Even if this Court had subject matter jurisdiction of the matter, US Foods has failed to demonstrate any valid reason why it would be entitled to the expedited relief it requests on an alleged "emergency" basis. It claims to be afraid of some unspecified electronic documents that will be lost or destroyed by Noble if an injunction and other relief is not immediately issued. But this is a made up red-herring, as the Court can see from the parties' negotiation of such matters in connection with their Settlement Agreement. (See Exhibit B hereto and Exs. D-J thereto).

Quite simply, US Foods claims there is an emergency when there isn't one. For example, and as disclosed in Exs. D-J, the parties took almost two months after Noble was terminated to reach a settlement, yet US Foods did not seek emergency relief (or any judicial relief) during that time. The parties then reached a settlement and signed the Settlement Agreement February 4, 2013, but it took US Foods until March 6 to even ask for Noble's computer to be examined, as Noble had had agreed. US Food's new counsel then delayed and delayed, and made unreasonable demands into Noble's privacy, and

11

was clearly not in a hurry to see what was on Noble's computer, either. Then, within days of the filing of this suit, there is suddenly an emergency over an employee who left the company's employment over six months ago. None of this deserves to be called an emergency of any kind.

Nor is there any reasonable basis for US Foods to claim even the slightest danger that Noble has withheld anything or has retained access to "company secrets" that could imperil the company's economic viability. He has sworn under oath that he gave everything he could find to US Foods and deleted it off his computer. He subjected himself to a half-day interview where he was questioned about his actions and what he had and did not have – that interview was in February, which further demonstrates the lack of an emergency.

Courts "evaluate a motion for expedited discovery on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances. . . In applying the 'reasonableness' standard, factors a Court may consider include '(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'" *Ibarra v. City of Chicago*, 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011) (emphasis added) (citing cases); s*ee also Arista Records v. Does 1–19,* 551 F.Supp.2d 1, 6–9 (D.C.D.C. 2008) (applying "good cause" standing in determining whether to grant motion for expedited discovery).

Plaintiff's purpose in filing this mid-discussion, tactical and completely unjustified lawsuit is obviously not to preserve corporate secrets that might imperil its economic viability. Its purpose is to harass, intimidate and cause Noble to expend attorney fees and resources out of spite because of what he found out about its CEO. That improper purpose alone is sufficient to deny the expedited relief requested under the third factor identified by this Court in *Ibarra*. *See* 816 F. Supp. 2d at 554. Other factors, such as the absence of any pending preliminary injunction and the burden sought to be imposed upon Noble to comply with such expedited discovery, also weigh heavily in favor of denying such relief. *Id.*

U.S. Foods did not confer with Noble's counsel in good faith before filing its lawsuit and Motion for Expedited Discovery. This consideration also weighs in favor of denying such relief. *See*, *e.g.*, Fed.R.Civ.P 37(d)(1)(B) (attorneys must certify that they have in good faith conferred or attempted to confer with opposing counsel before filing a motion for discovery sanctions). US Food's motion accurately certifies that telephonic notice was given to Noble's counsel by US Food's attorney Bertram *at 4:00 p.m. on the same day it filed its lawsuit and motion*. (See Motion at 1-2). A last-minute, perfunctory telephone call, however, falls short of any real effort to confer in good faith before initiating this litigation and moving immediately to expedite discovery.

## CONCLUSION

This Court lacks subject matter jurisdiction of the relief sought in this case, including the request for expedited discovery, because all such issues are subject to mandatory arbitration pursuant to the parties' Settlement Agreement. And, even if the

13

Court had jurisdiction, US Foods has not offered any valid or compelling reason why the discovery orders it seeks must be obtained on an "emergency" basis, rather than in the normal course of the case. The motion should be denied, and all such matters should be referred to arbitration.

This Court should also grant Noble full reimbursement of his reasonable attorney fees incurred in having to appear and defend himself in this action. (See Exhibit A hereto at 6, ¶20 – "the arbitrator shall have discretion to award reasonable attorneys' fees, costs, and expenses" to the prevailing party"). The agreement dos not state that the *court* may award fees because, by agreeing to arbitrate any dispute, the parties never contemplated that this dispute would be litigated in court. This Court may award fees in these circumstances. Alternatively, the laws of Delaware, which apply, authorize courts to award attorney fees "where losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 506 (Del. 2005). US Foods has clearly acted in bad faith and demonstrated wanton disregard of the mandatory arbitration provision of the parties' Settlement Agreement. Noble is entitled to recover his fees and costs upon either basis.

June 5, 2013

                                         /s Jeffrey A. Silence
Kraig J. Marton
David Farren
Jeffrey A. Silence
**JABURG & WILK, P.C.**
3200 N. Central Avenue, Suite 2000
Phoenix, AZ  85012
602-248-1000
kjm@jaburgwilk.com

14

dnf@jaburgwilk.com
jxs@jaburgwilk.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on June 5, 2013, he caused a true and correct copy of this Response Motion to be served by electronic mail and hand delivery on the following:

Patricia Brown Holmes
Linda K. Stevens
SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 6600
Chicago, IL 60606
pholmes@schiffhardin.com

Connie N. Bertram
Daniel J. Davis
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., N.W. Suite 400S
Washington, D.C. 20004
cbertram@proskauer.com
ddavis@proskauer.com

Philip J. Nathanson
The Nathanson Law Firm
8326 E. Hartford Dr., Suite 101
Scottsdale, AZ 85255

The Nathanson Law Firm
120 N. LaSalle St. #1040
Chicago, IL 60602
philipj@nathansonlawfirm.com

_____/s__Jeffrey A. Silence_____

16829-2\KJM\DNF\1087799.1