# Exhibit A



February 4, 2013

Michael J. Noble
4717 E Quartz Mountain Road
Paradise Valley, AZ 85253-3202

## CONFIDENTIAL SEPARATION AGREEMENT AND RELEASE

Dear Mr. Noble:

    This letter (hereinafter, the "Separation Agreement") confirms the terms related to the termination of your employment with US Foods, Inc. ("US Foods" or the "Company").

1. <u>Termination.</u> Your employment with the Company terminated effective December 11, 2012 (your "Termination Date"). Since your Termination Date, a dispute has arisen concerning the Company's obligation to repurchase stock and options in the Company held by you on your Termination Date and to pay severance and a bonus to you. Without admitting any liability or fault, the Company and you have agreed to the following terms to resolve these and all other disputes and claims between you and the Company.

2. <u>Settlement Payment.</u> In consideration of the promises and other good and valuable consideration set forth herein, if you sign and do not revoke this Separation Agreement, the Company agrees to pay you $175,000 (the "Settlement Payment").

    a. The parties agree that $100,000 of the payment represents the appreciation on the value of the 100,000 shares of Company stock purchased by you in 2007 and $75,000 of the payment is for the repurchase of that number of shares of vested stock options held by you as of the Termination Date determined by the Company to have a value of $75,000. All remaining vested stock options held by you as of the Termination Date shall expire and have no value.

    b. The Company agrees to repurchase your stock for a total of $600,000. $500,000 of that amount represents in the amount you initially paid for the stock. The $100,000 payment referenced above represents the appreciation in the value of the stock since you purchased it.

Page 1 of 8

    c. The Settlement Payment and stock purchase monies, totaling $675,000, will be mailed to your counsel within ten (10) days of the Effective Date of this Agreement.

3. <u>No Additional Benefits.</u> Your right to continue qualifying coverage at your own cost pursuant to COBRA (the Consolidated Omnibus Budget Reconciliation Act of 1986, as amended) shall be governed by applicable law and the terms of the Company's plans and programs as has or will be explained to you in separate correspondence. You agree that you are not and will not be entitled to any severance benefits under the Company's Severance Plans. You further agree that you are not entitled to any additional compensation under the Management Stockholder's Agreement, Sale Participation Agreement, or Stock Option Agreement that you signed on November 16, 2007 and that the Settlement Payment satisfies any and all of US Foods' obligations to pay you for stocks and options issued to you pursuant to those agreements or any other agreement. You further agree that any remaining stocks and options you previously held or owned have expired. You acknowledge that it is the Company's position that the Settlement Payment is a payment to which you are not otherwise entitled. You acknowledge that, except as expressly provided in this Separation Agreement, you will not receive any additional compensation or benefits, including salary, stock or equity rights or payments, bonus, or severance benefits from the Company.

4. <u>Claims Released.</u> It is also understood that, in exchange for your Separation Payment and other benefits set forth herein, you **release and waive** all claims, causes of action or the like, known or unknown, to the extent permitted by law, that you, your heirs, executors, administrators, and assigns have, had or may have in the future against the Company, and/or any of their respective owners, parents, predecessors, successors, affiliates, and/or subsidiaries, employee benefit plans, employee benefit plan administrators and/or fiduciaries, including each of their current or past directors, officers, agents and employees, and/or anyone else connected with any of the foregoing (collectively, "Released Parties"), with respect to all matters of your employment and separation from employment with the Company, including but not limited to, all allegations, claims, and violations related to severance, any reductions-in-force, notice of termination, the payment of your salary and benefits and all claims arising under the following, in each case as amended: the Age Discrimination in Employment Act of 1967, as amended by the Older Workers Benefit Protection Act of 1990; Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991; the Equal Pay Act of 1963; the Americans with Disabilities Act of 1990; the Family and Medical Leave Act of 1993; the Civil Rights Act of 1866; the Worker Adjustment and Retraining Notification Act; the Employee Retirement Income Security Act of 1974; any applicable Executive Order Programs; the Fair Labor Standards Act; section 806 of the Sarbanes-Oxley Act of 2002; the False Claims Act and all of the state or local counterparts, or any other federal, state or local statute, constitution or ordinance; or under any public policy, contract or tort, or under any common law, including without limitation for wrongful discharge; or arising under any practices or procedures of the Company; or any claim for breach of contract, infliction of emotional distress, defamation, or any claim for costs, fees or other expenses, including attorneys' fees and expenses, incurred in these matters.

5. <u>Pursuit of Released Claims and Scope of Release.</u> You agree and covenant not to file any suit, action, arbitration, or complaint against the Released Parties, and not to assist in any such action in any court, administrative or private proceeding with regard to any claim, demand, liability or obligation arising out of any alleged act or omission of US Foods, your employment with US Foods or your separation therefrom. You further represent that no claims, complaints, charges, arbitrations, or other proceedings are pending in any court, administrative agency or department, commission or other forum relating directly or indirectly to the conduct of US Foods or your employment with US Foods.

6. <u>Unreleased Claims.</u> You understand that this Agreement is a full and final release applying to all known and unknown or unanticipated injuries or damages of any kind arising from those matters released herein. You expressly and knowingly waive all rights you may have under any law that is intended to protect you from waiving unknown claims. You understand that this release and waiver does not waive or release your right to unemployment benefits or worker's compensation in accordance with applicable law, claims that arise based on acts or occurrences after the Effective Date, your right to enforce this Separation Agreement, vested retirement savings benefits, and your right to file a charge with the Equal Employment Opportunity Commission ("EEOC"). You are, however, waiving your right to recover money in connection with any such EEOC charge. You are also waiving your right to recover money in connection with a charge filed by any other individual or by the EEOC or other federal or state agency.

7. <u>Release of Claims Against Employee.</u> The Company releases you, as well as your heirs, executors, administrators, and assigns, from any and all claims, debts, rights, demands, judgments, obligations, causes of action, liabilities, costs and expenses, known or unknown, in law or in equity, arising out of or related to your employment with the Company. Notwithstanding anything to the contrary in the subsection above, the Company's release of Employee does not apply to nor prohibit any claims by the Company unknown to the General Counsel of the Company as of the Effective Date of this Agreement. The Parties' releases also do not prohibit claims by any Party to enforce the terms of this Agreement.

8. <u>Confidentiality.</u> You agree that, except as hereinafter provided, you will keep the negotiations leading to and the terms, conditions and existence of this Separation Agreement in strict confidence and shall not disclose them to anyone except: (a) to your attorney and bona fide tax and financial advisors (only if they agree in writing to be bound by and to comply with the provisions of this Agreement); (b) your spouse (only if she agrees in writing to be bound by and to comply with the provisions of this paragraph); or (c) pursuant to compulsory legal process or a court order. If there is any proceeding to enforce the terms of this Agreement, this Agreement shall be filed under seal, pursuant to the rules and provisions of the court in which the proceeding is filed. If you receive a subpoena or other request to produce this Agreement, or to provide or produce testimony or documents subject to this Paragraph, you will immediately notify in writing the General Counsel of US Foods.

9. <u>Return of Company Property.</u> You certify that you have returned to the Company all property, documents and data of the Company or relating to your work for the Company

("Company Data") in your possession, custody or control, including without limitation, all keys and access cards, badges, credit and telephone cards, telephones, pagers, all computers and computer related equipment (i.e. hardware, software, diskettes, electronic storage devices, etc), all passwords, access codes and other information necessary to access any computer, communications device or electronic database, and all books, files, documents and electronic data and media. Electronic data should be returned in native format, with all associated metadata intact. You agree, upon the Company's request, to permit a third-party IT technician retained by the Company to inspect all of your personal computers and electronic communications and storage devices to identify and recover any additional Company Data and to undertake the permanent deletion of any Company Data. Said technician will not transmit or disclose to the Company any data on your personal computers and devices that is not Company Data.

10. <u>Other Agreements.</u> You agree that you remain bound by all post-employment restrictions in your previous agreements with US Foods as found in:

- Sections 17 and 22 of the Management Stockholder's Agreement signed by you on November 16, 2007; and

- The provisions of the Non-Solicitation and Non-Disclosure Agreement signed by you on November 16, 2007 that are incorporated by reference into Section 22 of the Management Stockholder's Agreement.

11. <u>Non-Disparagement.</u> You agree not to make any disparaging remarks now, or at any time in the future, about the Released Parties. You further agree that you will not, directly or indirectly, follow, investigate, photograph, videotape, or stalk (in person or through electronic or other means) any of the Releasees. US Foods will instruct John Lederer, Juliette Pryor, Stuart Schuette, David Esler, Al Swanson and Michael Ranchino not to make any statements that disparage or defame you. If US Foods is contacted by your prospective employers, it will provide neutral reference information consistent with Company policy. Nothing in this Agreement shall prohibit you or the Company from providing accurate information to any court or governmental entity; or to any person or organization in response to legal process or otherwise as required by law. You agree that if you violate this provision you forfeit the Settlement Payment given to you as part of this Separation Agreement.

12. <u>Cooperation.</u> You agree to cooperate and assist the Company and the Released Parties in any court, agency, arbitration or other legal matters about which you have knowledge relevant to the matter. You acknowledge and agree that such assistance may include, but will not be limited to, providing complete and truthful background information regarding any matter on which you previously worked, aiding in the drafting of declarations and similar documents, executing declarations and similar documents, testifying or otherwise appearing at investigation interviews, depositions, arbitrations or court hearings and preparation for the above-described or similar activities as requested by the Company or required by legal process. The Company will use its best efforts to ensure that any assistance requested will be arranged so that it does not unreasonably interfere with your other employment or family commitments. The Company will reimburse you for the

reasonable expenses that you incur in complying with this cooperation obligation, as long as they are approved in writing in advance by the General Counsel. Nothing in this Paragraph is intended to cause you to make a false statement or testify untruthfully in any legal proceeding, and you agree not to do so.

13. <u>Disgorgement</u>. You agree and understand that if you materially breach Paragraphs 8, 9, 10, 11 or 12, the Company may recover from you the Settlement Payment as liquidated damages, as well as its reasonable attorneys' fees and costs and any other damages or remedies allowed by law.

14. <u>Quest Consultants.</u> You will authorize and direct Quest Consultants International, Ltd. ("Quest") to provide all information related to the project for which you hired Quest including, but not limited to, all communications with you, all surveillance reports, all video and audio recordings, all pictures, and all supporting documentation and work product and all US Foods documents and data. US Foods agrees to reimburse Quest for the reasonable copying costs that it incurs in producing the information required by this Paragraph. This Agreement will not be effective until Quest complies with your directive and produces all documents and data subject to this Paragraph.

15. <u>Interview.</u> You agree that you will be interviewed by US Foods and/or its designated counsel in Chicago, Illinois, but not in Rosemont. US Foods will pay for your reasonable food, travel, and lodging expenses for traveling to and attending the interview. The interview will cover the following topics: the anonymous letters to US Foods postmarked September 20, 2012 and November 9, 2012; your participation in the preparation and sending of those letters; the allegations contained in the letters; the surveillance referenced in that letter and otherwise performed by Quest or by or at the request of you or any other current or former employee of US Foods; the retention and payment of Quest; the topics addressed in the December 12, 2012 letter from Juliette Pryor to you and the December 18, 2012 letter from your counsel, Kraig J. Marton, to Juliette Pryor of US Foods; and any allegations by you regarding US Foods' pricing on its contracts with or purchases by the federal government, including whether US Foods instructs its vendors to increase the amount of their invoices to amounts greater than actual true prices paid to the vendor, whether such invoices are then submitted to the US government or other governmental entities, and any and all subjects related to the above topics. The interview may be recorded and/or transcribed at the Company's discretion. Your counsel may be present at the interview. You understand that you have an obligation to provide truthful, complete, responsive and accurate statements in response to counsel's questions. You will also provide information to either support or rescind your implied allegations related to US Foods' pricing practices under its government contracts. The Settlement Payment will not be made until you have complied with this Paragraph by appearing for the interview and by completely and truthfully answering questions about the above topics for such time as required by the person conducting the interview, but not more than eight (8) hours. US Foods will have the option of requiring you to sign a sworn statement summarizing all or a portion of your statements during the interview.

16. <u>Entire Agreement.</u> This Separation Agreement contains the entire understanding between you and the Company regarding the subject matters set forth herein, and supersedes any and all other prior agreements, understandings, discussions, and negotiations whether written or oral between you and the Company, except the Other Agreements referenced in Paragraph 10. This Separation Agreement cannot be changed except in a writing signed by you and an authorized representative of the Company. You acknowledge that neither the Company nor any representative of the Company has made any representation or promise to you other than as set forth herein.

17. <u>Construction</u>. Each party and its counsel have reviewed this Separation Agreement and have been provided the opportunity to review this Separation Agreement and accordingly, the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Separation Agreement. Instead, the language of all parts of this Separation Agreement shall be construed as a whole, and according to their fair meaning, and not strictly for or against either party.

18. <u>Severability.</u> If any provision in this Separation Agreement is found to be unenforceable, all other provisions will remain fully enforceable. The covenants set forth in this Separation Agreement shall be considered and construed as separate and independent covenants. Should any part or provision of any provision of this Separation Agreement be held invalid, void or unenforceable in any court of competent jurisdiction, such invalidity, voidness or unenforceability shall not render invalid, void or unenforceable any other part or provision of this Separation Agreement.

19. <u>Interpretation.</u> This Agreement shall be construed as a whole according to its fair meaning. It shall not be construed strictly for or against you or the Company. Unless the context indicates otherwise, the singular or plural number shall be deemed to include the other. Captions are intended solely for convenience of reference and shall not be used in the interpretation of this Agreement.

20. <u>Choice of Law/Dispute Resolution.</u> The terms of this Agreement shall be interpreted under the laws of the State of Delaware. The parties shall use good faith efforts to resolve any controversy or claim arising out of, or relating to this Agreement or the breach thereof. If, despite their good faith efforts, the parties are unable to resolve such controversy or claim, then such controversy or claim shall be resolved by arbitration in Chicago, Illinois, with one (1) arbitrator, in accordance with the National Rules for Resolution of Employment Disputes of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The arbitrator shall have the discretion to award reasonable attorneys' fees, costs and expenses, including fees and costs of the arbitrator and the arbitration, to the prevailing party.

21. <u>Non-Admission of Liability.</u> This Separation Agreement does not constitute an admission of any liability or wrongdoing on the part of any party, and each party expressly denies same.