**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

US FOODS, INC.,

Plaintiff,

v.

MICHAEL J. NOBLE, et al.,

Defendants.

Civil Action No. 1:13-cv-03640

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR EXPEDITED DISCOVERY**

US Foods' Motion for Expedited Discovery seeks an order that Defendants preserve evidence, have forensic images made of their computers, and produce in response to four discovery requests documents of US Foods in their possession, custody and control. US Foods established in its opening brief that, given the risk of further spoliation of relevant evidence and misuse of US Foods' confidential property and data, there is more than good cause for the limited expedited discovery it seeks. Defendants' opposition briefs do nothing but support the limited relief sought by US Foods. Defendants do not deny that they have US Foods' property in their possession, that they have a duty to return it, that they have a duty to preserve and not to spoliate, or that the property is relevant to this lawsuit.

Rather, Defendants raise several peripheral arguments in their oppositions that do not support the denial of US Foods' Motion. Noble argues that a settlement agreement requires US Foods to seek this relief in an arbitration proceeding in Chicago. That settlement agreement, even if valid, explicitly incorporates the very provisions on which US Foods relies in bringing this injunctive proceeding in federal court. Roszak, in turn, relies on a "first filed rule," claiming that this lawsuit is barred by a lawsuit that he filed in Arizona challenging his termination.

However, as established in US Foods' motion to compel arbitration, the claims in that lawsuit are subject to arbitration in New York.[1] Although Noble also argues that this Court lacks subject matter jurisdiction, the relief that US Foods seeks in this suit far exceeds the amount in controversy requirement for federal diversity jurisdiction.

Because Defendants have not offered any legitimate justification for denying or delaying the limited expedited discovery sought by US Foods, the Motion should be granted.

## I. US Foods' Request For Expedited Discovery Should Be Granted

Defendants seem to have lost sight of the fact that the only motion before the Court is one seeking limited expedited discovery. Defendants' oppositions expend little to no effort attempting to refute US Foods' need for the requested relief. Instead, Defendants unsuccessfully attempt to distract the Court by refashioning the issues before it, including Noble's baseless claim that he is a "classic whistleblower" (which he is not),[2] and referring to several as-yet-unfiled motions. Defendants also make demonstrably false allegations concerning US Foods and its CEO.[3]

---

[1] US Foods filed the AAA arbitration in New York on May 15, 2013. That arbitration is still in the initial stages. Defendant Noble has objected to the locale of the arbitration and the parties have not yet submitted their suggested list of arbitrators to the AAA for consideration.

[2] Noble was not a whistleblower. He was a desperate executive who, fearing for his job, stole company information to conduct secret surveillance on the CEO and sent an anonymous letter to the Company. See generally Compl. When US Foods did not respond to his liking, he sent a second anonymous letter threatening US Foods' leadership. Id. ¶ 44. These are not the actions of a legitimate whistleblower. Solis v. Consolidated Gun Ranges, 2011 WL 1215028, at **5, 7 (W.D. Wash. March 30, 2011) (purported "whistleblowing" email sent by plaintiff in "a calculated attempt to save his job" was not protected activity). Regardless of whether Noble was a whistleblower, he still spoliated evidence and has undisputed contractual and common law duties to return the US Foods' property and data that are the focus of the current Motion.

[3] For example, Noble describes the relationship between US Foods' CEO and the vendor executive in question as "extramarital." Noble Opp. at 2. Neither individual, however, is married. Further, in representing to this Court that "Noble caught Lederer 'red-handed' and apparently Lederer has since confessed to the transgression," id., Noble ignores several inconvenient truths: (1) US Foods' CEO disclosed the relationship to the Company well before it received the anonymous letters; (2) the Company

Defendants do not even attempt to refute US Foods' showing of good cause. Indeed, Defendants either admit to or leave wholly unanswered key facts establishing US Foods' good cause for the expedited relief sought. For example, neither Defendant denies that he had access to, and repeatedly used and disclosed, sensitive and confidential information belonging to US Foods. See Pl.'s Mem. in Support of Motion for Exp. Discovery ("Mem.") at 4, 7. Noble concedes that he permanently deleted Company emails from his personal computer. Noble Opp. at 4, 12. Noble does not deny that he continued to delete emails, at a minimum, through the date of his February 14 interview, even though he had received preservation notices and had contractual and common law duties to preserve and return documents.

Similarly, Roszak does not deny that he improperly retained and then permanently deleted US Foods' data using wiping software. See Roszak Opp. at 5. Roszak does not dispute that this spoliation activity occurred the very same day that US Foods demanded that he return his laptop and the very same evening that he received a letter instructing him to "turn it off (if it is turned on) immediately upon receipt of this letter and not use or alter it in any fashion." Mem. at 7. Roszak also does not dispute that he copied – and uploaded to cloud storage databases – Company documents from that laptop.

These concessions and admissions alone are sufficient to support US Foods' motion. Defendants' remaining legal and jurisdictional arguments do not change this result.

## A. The Expedited Relief Sought Is Well Within This Court's Discretion

Defendants argue that US Foods' request for expedited discovery is premature. Roszak Opp. at 1; see also Noble Opp. at 5 (characterizing US Foods' request as a "mid-discussion" "sneak attack"). Courts, however, have the authority to order discovery prior to a Rule 26(f)

---

concluded that no conflict of interest existed; and (3) the CEO was not involved in procurement decisions involving this vendor. Compl. ¶¶ 27-28.

conference. As Roszak concedes, Rule 26(d)(1)'s language allows for discovery "when authorized by . . . court order." Roszak Opp. at 1 (quoting Fed. R. Civ. P. 26(d)(1)). Because "[a] court has wide discretion in managing the discovery process," the lack of a Rule 26(f) conference does not prevent the Court from granting US Foods' Motion. Ibarra v. City of Chicago, 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011). This Court, therefore, clearly has the authority to grant US Foods' Motion.[4]

### B. US Foods Has Demonstrated Good Cause For The Expedited Discovery Requested

#### 1. Defendants' Spoliation Provides Good Cause for US Foods' Requests

Defendants do not dispute that the limited relief that US Foods seeks would impose a minimal burden on them. Defendants similarly do not dispute that the relief sought would largely require them to do what they should have already done – i.e., return Company documents and preserve relevant evidence. Given their admitted, ongoing spoliation activity, relevant evidence will likely be irretrievably lost before US Foods has the opportunity to obtain the discovery it seeks unless the Court orders the relief sought by US Foods. Thus, a strong and compelling purpose – the preservation of relevant evidence – supports expedited relief.

Noble asserts in his response that there is no "reasonable basis for US Foods to claim even the slightest danger that [he] has withheld anything or has retained access to 'company secrets' that could imperil the company's economic viability." Noble Opp. at 12. Noble ignores the fact that:

[4] Roszak mischaracterizes the relief US Foods seeks as a "mandatory preliminary injunction." Roszak Opp. at 3-4. In support of his argument, Roszak cites to a handful of cases ruling on parties' requests for preliminary injunctions. Id. None of those cases, however, supports his argument that the relief US Foods seeks must fulfill the preliminary injunction standard. Roszak simply cannot avoid the fact that the preliminary injunction standard has been rejected as the standard for obtaining expedited discovery. Ibarra, 816 F. Supp. 2d at 554.

- He admitted during his February 14 interview that he had searched for communications with the private investigator hired by Defendants and deleted them (Second Declaration of Connie N. Bertram ("2d Bertram Dec."), Ex. I ("Noble Interview") at 143:6-9);

- When asked about a particular communication during his interview, he responded that he deleted it and, when asked when, responded "I don't know . . . ***it could have been yesterday***" (Id. at 51:17-52:7) (emphasis added);

- Although he produced a small group of documents at his interview, he admitted that he collected them "randomly" by looking through "documents that I had laying around in piles that were in hard copy" at his home (Id. at 152:7-13);

- He similarly described his search for US Foods data as "random," including putting documents he had located that morning onto a thumb drive, and then "deleting all of them." (Id. at 152:5-153:1); and

- He admitted that his "random" search of his computer did not include a search of his email communications. Id. at 116:22-117:17.

Theses admissions are significant. At the time Noble made them, he had signed agreements requiring him to return Company documents upon termination and had received a preservation and document return demand from US Foods. In addition, just eight days before the interview, he had signed a settlement agreement requiring him to preserve and return Company documents and data. Mem. at 4-5.

Noble protests that he (1) deleted documents only after he located, downloaded and saved them to a thumb drive and (2) swore under oath that he gave US Foods everything he could find. Noble Opp. at 4-5, 12; see also 2d Bertram Dec., Ex. J. Noble, however, cannot claim that his deletions were consistent with his contractual obligations under his agreements with US Foods.[5] His admissions also demonstrate that he did not conduct a thorough search of his documents and electronic communications. The simple fact is that his certifications – both in the settlement

---

[5] Defendants also violated US Foods' Acceptable Use Policy. 2d Bertram Dec., Ex. K. That policy states that "[a]ll electronic communications systems and all communications and information transmitted by, received from, or stored in these systems are the property of US Foods." Id. Defendants violated that policy by taking and destroying US Foods' property that was generated by, transmitted by and located on those systems.

agreement and at his February 14 interview – that he had returned all Company documents and data were demonstrably false.

Similarly, Roszak declares that "Plaintiff has no basis for asserting that Roszak will not preserve evidence in compliance with federal law." Roszak Opp. at 5. This statement asks the Court to ignore the fact that ***he already has done so***. He intentionally used data wiping software to delete permanently nearly 20,000 files from his company computer in violation of his contractual obligations and the Company's preservation notice. Mem. at 8. Roszak similarly does not explain why he accessed the Dropbox file hosting service or why he attached storage devices to his computer capable of transferring files to an external device prior to his termination. See id.

US Foods has demonstrated that Defendants spoliated evidence. That spoliation alone justifies the expedited discovery that US Foods seeks.

**2. US Foods' Requests Are Narrowly Tailored To Protect The Judicial Process And US Foods' Property**

Even without Defendants' admitted spoliation, US Foods has nonetheless demonstrated ample "good cause" for its requests for expedited discovery. See Ibarra, 816 F. Supp. 2d at 554. The preservation order and forensic imaging sought by US Foods are hardly extraordinary. Because a party has a duty to preserve relevant evidence, courts regularly order parties not to spoliate or tamper with potentially relevant evidence. See Mem. at 11; Mintel Int'l Group, Ltd. v. Neergheen, 2008 WL 2782818, at *7 (N.D. Ill. July 16, 2008). Moreover, denying this Motion would cause US Foods significant prejudice, including exposing it to the risk of additional misuse of its confidential information and spoliation of evidence. IDS Fin. Servs., Inc. v. Smithson, 843 F. Supp. 415, 418 (N.D. Ill. 1994).

Similarly, Defendants cannot argue that they will be unduly burdened by US Foods' discovery requests because that discovery is limited to four targeted requests seeking documents and data in Defendants' possession that belong to US Foods. Ibarra, 816 F. Supp. 2d at 554. Defendants do not, and cannot, challenge US Foods' right to the property and data sought through those requests. Moreover, the discovery requests are undoubtedly relevant to the claims asserted in this lawsuit. As US Foods explained in its opening brief, each produced document would potentially be evidence of Defendants' failure to comply with their common law and contractual duties. See Mem. at 3-9.

Because US Foods' requests impose a minimal burden on Defendants, and because those requests serve the compelling purposes of preserving evidence and ensuring the production of US Foods' property and data, good cause exists for US Foods' requested expedited discovery.

**3. US Foods Timely And Consistently Attempted To Obtain The Return Of Its Property**

Noble argues that US Foods' request for expedited discovery should be denied because it did not seek this Court's intervention until all other attempts to obtain the return of its property proved unsuccessful. Specifically, Noble asserts that there is no "emergency" because US Foods moved for expedited relief six months after Noble was terminated. Noble Opp. at 11-12.

Noble's argument fails on at least two fronts. First, US Foods must only show "good cause" for the relief it seeks, not that an "emergency" exists. Mem. at 9. As described above, US Foods' evidence more than satisfies the good cause standard. Second, the evidence demonstrates that, starting on the very day of Defendants' respective terminations, US Foods made consistent and persistent efforts to obtain all US Foods property in Defendants' possession, custody and control. Mem. at 4-5, 7-8. In arguing that US Foods delayed seeking relief, Noble misrepresents the timeline of US Foods' demands and the parties' negotiations and discussions.

For example, Noble falsely claims that the first time US Foods invoked its right to an IT inspection was on March 6, a month after the settlement agreement was signed. See Noble Opp. at 11. In fact, US Foods invoked that right on February 14, two days after the expiration of Noble's right to revoke the agreement. See Noble Interview at 155:19-156-4; see also Bertram Dec., Ex. D ("Settlement Agreement") ¶ 23 (allowing Noble a seven-day revocation period).

Likewise, Noble's argument overlooks the clear import of US Foods' extensive attempts cooperatively to resolve the parties' disputes prior to initiating this lawsuit. US Foods engaged in substantial negotiations because it immediately, and consistently, emphasized the critical importance of the return of its documents and data. And, despite Noble's representations to the contrary, US Foods was not the source of any delays in the attempts to resolve the dispute. US Foods invoked its right to inspect Noble's computers and devices immediately after the parties signed the agreement. Mem. at 5. US Foods then sent a proposed IT review agreement, which Noble rejected. When counsel for Noble and US Foods spoke on April 5, they agreed to a traditional computer forensics review protocol. 2d Bertram Dec., Ex. M.

When US Foods sent Noble a draft one week later, Noble backtracked, claiming that he needed additional protections because he did not "trust" US Foods. Id. Noble, however, did not send a revised protocol until May 2, almost three weeks later. Id., see also Noble Opp. at Ex. I. After giving Noble one last and final opportunity to present a reasonable protocol consistent with the settlement agreement, US Foods declared him in breach of the settlement agreement. Mem. at 5. US Foods filed this lawsuit less than a week later. Although the benefit of 20/20 hindsight now suggests that US Foods should not have trusted Defendants' assurances and promises, it would be inequitable to punish US Foods, and effectively reward Defendants, for their bald exploitation of US Foods' good faith efforts to obtain its property through negotiation and cooperation.

## II. <u>This Court Has Jurisdiction To Award The Relief US Foods Seeks</u>

US Foods has brought a limited motion seeking minimal, expedited discovery and an order from this Court that Defendants not spoliate evidence. Rather than opposing US Foods' motion on the merits, Noble launches an attack on this Court's jurisdiction. Noble Opp. at 5-11. Noble argues that this Court lacks jurisdiction because the limited relief US Foods seeks can only be issued through AAA arbitration pursuant to the parties' settlement agreement. Id. at 7. In addition, Noble asserts that this Court "lacks subject-matter jurisdiction because the amount in controversy is zero." Id. at 10. Noble's arguments are premature and wrong.

### A. <u>This Court Has Authority To Grant The Equitable Relief US Foods Seeks</u>

Noble argues that the settlement agreement signed in February 2013 is "fully executed, valid, and binding." Noble Opp. at 1. Based on the arbitration provision in that agreement, Noble argues that this Court lacks subject matter jurisdiction and that only an arbitrator can order injunctive relief. Noble's contention is wrong for two reasons. First, even assuming the settlement agreement is valid, under the plain language of that agreement and Seventh Circuit precedent, this Court has authority to order the relief US Foods seeks. Second, because of Noble's failure to comply with conditions precedent to and material breaches of the agreement, the settlement agreement never took effect.

Under the plain terms of the settlement agreement, this Court can award US Foods the relief that it requests through this Motion. Both Noble and Roszak entered into Non-Solicitation and Non-Disclosure Agreements ("NSNDAs") and Management Stockholder's Agreements ("MSAs") while employed at US Foods. See Mem. at 3-4, 6-7. Sections 4 and 5 of the NSNDAs require Defendants not to disclose or misuse US Foods' confidential and proprietary information and data and to return US Foods' property upon termination. Section 22 of the MSAs incorporates these provisions of the NSNDAs into the MSAs. Section 17(b) of the MSAs

contains an arbitration provision that requires the arbitration of all disputes between the parties. Under Section 17(c), however, both Defendants agreed that "notwithstanding [the arbitration provision] . . . the Company . . . shall be entitled to injunctive or other relief in order to enforce the covenant not to compete, covenant not to solicit and/or confidentiality covenants as set forth in Section 22(a) of this Agreement." MSA § 17(c). Noble's settlement agreement explicitly provided that Noble agreed to "remain bound by" Sections 17 and 22 of the MSA and the NSNDAs. Settlement Agreement ¶ 10.

The arbitration provision in the MSAs controls the resolution of the disputes in this lawsuit and the pending arbitration. In this lawsuit and the AAA proceeding filed in New York, US Foods asserts breach of contract claims for violations of section 22 of the MSA and sections 4 and 5 of the NSNDA – ***not*** the settlement agreement. Thus, even if the settlement agreement were in effect, the arbitration provision in Section 17 of the MSAs controls the resolution of the claims asserted in this case. Because injunctive relief is expressly carved out from the parties' agreement to arbitrate disputes, US Foods is "entitled" to seek injunctive relief from this Court.

Noble expends more than three pages discussing boilerplate law to the effect that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Noble Opp. at 6-9. Noble's discussion misses the mark. Although the issues underlying this litigation are subject to arbitration pursuant to the arbitration provision in the MSAs, the limited injunctive relief sought in this lawsuit is within the carve out to that provision. 2d Bertram Decl., Ex. L. Moreover, even if that provision did not include a carve out for injunctive relief or the arbitration provision in the settlement agreement somehow applied, under binding Seventh Circuit precedent, this Court would have the authority to award the equitable relief US Foods seeks. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano, 999 F.2d 211, 214 (7th Cir. 1993) ("district courts are not precluded from issuing preliminary injunctive relief pending

arbitration"); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cross, 1998 WL 122780, at *3 (N.D. Ill. Mar. 13, 1998) (issuing TRO to "preserve the status quo" until arbitration).

Moreover, despite Noble's protestations to the contrary, the settlement agreement never went into effect. As explained in US Foods' opening brief, before the settlement agreement became effective, Noble was required to certify that he had returned all Company data to US Foods, including, where applicable, data "in native format, with all associated metadata intact." Mem. at 5. In addition, Noble was required "upon the Company's request, to permit a third-party IT technician retained by the Company to inspect all of [his] personal computers and electronic communications and storage devices to identity and recover any additional Company Data and to undertake the permanent deletion of any Company Data." Id. Noble did not satisfy these conditions precedent to the Effective Date because he never returned to the Company all documents and data of the Company and refused to agree to a reasonable protocol for the inspection of his personal computers and devices. Settlement Agreement ¶ 25.[6] In addition, after he entered into the agreement, Noble materially breached the agreement by, among other things, intentionally destroying Company documents. Mem. at 5. Noble admits as much in his Opposition. See Noble Opp. at 4 (explaining that Noble deleted emails from his computer). As such, the settlement agreement, including its arbitration clause, never took effect.

### B. This Court Has Subject Matter Jurisdiction Because The Amount In Controversy Is Met

In his Opposition, Noble blithely claims that "this Court lacks subject matter jurisdiction because the amount in controversy is zero." Noble Opp. at 10. Noble's contention is inaccurate

[6] In his June 5, 2013 submission to the American Arbitration Association, Noble argues that his obligations under the settlement agreement were not conditions precedent to the validity and enforceability of the settlement agreement. Noble Opp., Ex. B at 4-5. A condition precedent is "a condition in which performance by one party is required before the other party is obligated to perform." Miller's Blasting Serv., Inc. v. Texas AGA, Inc., 292 Fed. Appx. 492, 495 (7th Cir. 2008). Paragraph 25 of the agreement is precisely such a condition precedent. It identifies Noble's obligations ***prior*** to the Effective Date of the agreement.

and misleading. Viewed from either parties' perspective, the amount in controversy in this case exceeds the $75,000 statutory minimum. See 28 U.S.C. § 1332.

It is well-settled that a plaintiff seeking only equitable relief can meet the amount in controversy requirement for federal jurisdiction. "[T]he amount in controversy is to be measured for subject-matter jurisdiction purposes by the value of the right that the plaintiff seeks to enforce or to protect against the defendant's conduct or the value of the object that is the subject matter of the action." Wright & Miller, 14AA Fed. Prac. & Proc. Civ. § 3708 at 752 (2011). In those circumstances, the "court must not only undertake to evaluate intangible rights as opposed to objects commonly found in the marketplace, but it must decide what rights are involved in the controversy and from whose viewpoint their value is to be measured." McCarty v. Amoco Pipeline Co., 595 F.2d 389, 392 (7th Cir. 1979).

In the Seventh Circuit, courts apply the "either viewpoint rule" to determine the amount in controversy. Id. at 395. That is, the Court looks "to the object sought to be accomplished by the plaintiffs' complaint; the test for determining the amount in controversy is the pecuniary result to ***either party*** which the judgment would directly produce." Id. at 393 (emphasis added). If Defendants challenge federal jurisdiction over US Foods' Complaint, US Foods will be able to present evidence establishing that the amount in controversy has been met, regardless of whether the Court focuses on the pecuniary impact on US Foods or Defendants.[7]

Noble's own arguments demonstrate that the amount in controversy requirement is met. Noble claims that he is entitled to $675,000 under the settlement agreement, arguing that "US Foods continues to refuse to pay the $675,000 settlement amount. . . ." Noble Opp. at 4. The $675,000 Noble claims he is owed, primarily from the value of his stock holdings, more than

[7] US Foods will present such evidence if Noble files the promised motion to remand or if the Court so requests.

satisfies the jurisdictional minimum. See Gould v. Artisoft, Inc., 1 F.3d 544, 547 (7th Cir. 1993) ("If the [plaintiff] can establish to a reasonable probability that the value of the stock in a private transaction would exceed the jurisdictional amount, [the amount in controversy] requirement is satisfied.") (internal citation omitted).

When viewed from US Foods' perspective, the amount in controversy is also clearly met. US Foods is the second largest food distributor in the country. It has expended substantial resources building a loyal customer base, developing its products and developing and maintaining strong relationships with customers, vendors, contractors and various members of industry. See Indian Territory Oil & Gas Co. v. Indian Territory Illuminating Oil Co., 95 F.2d 711, 713 (10th Cir. 1938) (recognizing that "business reputation or good will is an intangible asset" that can be taken into consideration in ascertaining the amount in controversy). US Foods also undertakes extensive efforts to maintain the confidentiality of its proprietary procurement, pricing, products, sales, marketing, distribution and other business plans, strategies and results. US Foods is seeking injunctive relief from this Court to prevent further disclosure and misuse of such information by Defendants and to maintain its good will and market position.

While employed by US Foods, Noble and Roszak had access to some of US Foods' most sensitive and confidential information, including accounting and financial information, pricing plans and strategies, and competitive analyses. They shared that information with third-parties without authorization and used it to advance their scheme. Noble and Roszak have refused, despite repeated demands, to comply with their obligations under their MSAs and NSNDAs to return all of the confidential and proprietary data and other US Foods property in their possession, custody and control. US Foods has uncovered Defendants' scheme regarding surveillance of its CEO, but it is unsure whether there is a broader scheme in place by the Defendants. Given their blatant and willful disclosure and misuse of US Foods confidential data

during their employment, there is a real and substantiated risk that, if injunctive relief is denied in this case, Noble and/or Roszak will use or disclose this information, causing US Foods economic and reputational harm well in excess of $75,000.

Moreover, to date, US Foods has expended hundreds of thousands of dollars investigating the malfeasance of Defendants Noble and Roszak. That investigation has been severely hampered by Defendants false statements, refusal to cooperate, spoliation of data and refusal to return Company data. At this point, US Foods has, through its own investigative efforts, confirmed Defendants misuse of confidential data, surveillance of the CEO and threatening, anonymous letters. However, because the Company still does not know whether this conduct was part of a broader scheme involving additional employees or forms of malfeasance, its investigation is ongoing. If it is denied injunctive relief sought in this proceeding, US Foods will be forced to attempt to obtain the property in Noble and Roszak's possession through other, more expensive and time-consuming means, such as interviews of and subpoenas to third parties. US Foods estimates that the cost of those additional investigative efforts would exceed $75,000.

### C. US Foods' Claims Are Properly Brought In This Court

Roszak's unsubstantiated argument that US Foods' claims should have been brought in Arizona should be rejected. Roszak Opp. at 2-3.

Roszak filed a lawsuit, captioned Roszak v. U.S. Foodservice, Inc. et al., No. 2:13-cv-01009 (D. Ariz.) (Judge Susan Bolton), in state court in Arizona on May 3, 2013. In that lawsuit, Roszak asserts claims against US Foods for breach of the MSA, breach of the covenant of good faith and fair dealing, and retaliatory discharge. Roszak has not served that lawsuit on US Foods. US Foods removed the lawsuit to federal court on May 15, 2013. On the very same day, it filed a motion to compel arbitration of the claims asserted in it. 2d Bertram Decl., Ex. N

("Motion to Compel"). Roszak has not yet filed an opposition to that motion. That lawsuit has absolutely no bearing on the jurisdiction of this Court.

First, Roszak's lawsuit never should have been brought because the claims asserted in it are subject to mandatory arbitration under the MSA. Each of the claims in Roszak's complaint is based on and directly relate to his obligations under the MSA and the incorporated NSNDA. Motion to Compel at 7-8. Because Roszak's complaint is improper *ab initio*, US Foods is not bound by Roszak's choice of forum. See Local Union No. 11, AFL-CIO v. G. P. Thompson Electric, Inc., 363 F.2d 181, 185 (9th Cir. 1966) (noting that in bypassing arbitration and asserting counterclaims that are arbitrable, the desired intent and purpose of the arbitration agreement would be effectively frustrated).

Second, even if the arbitration agreement did not preclude Roszak's filing, US Foods' choice of forum should be given preference because it was the first party to perfect its filing. Roszak filed his complaint in Arizona state court on May 3, 2013, but never served that complaint on US Foods. US Foods filed its complaint in this Court on May 15 and served Defendants on May 23. Because US Foods was the first party to perfect its filing, this case should have the priority when evaluating venue. See S&H Uniform Corp. v. V-Tex, Inc., 2003 WL 22439644, at *1 (S.D.N.Y. Oct. 24, 2003). Roszak offers no compelling reason to upset US Foods' choice of forum.[8]

The Motion for Expedited Discovery should therefore be granted.

[8] Roszak's actions prior to filing the Arizona complaint should also preclude the Illinois action from being transferred to Arizona. As described in its opening brief, Roszak filed suit while the parties were in the process of scheduling a meeting to discuss the resolution of its claims against him. Mem. at 8. Roszak should not be permitted in these circumstances to benefit from preemptively filing suit. See Samsung Electronics Co. Ltd. v. Rambus, Inc., 386 F. Supp. 2d 708, 723-24 (E.D. Va. 2005) (denying motion to transfer in part based on party's preemptive filing during settlement discussions); Muller v. Walt Disney Productions, 822 F. Supp. 1033, 1039 (S.D.N.Y. 1993) (applying exception to first-to-file rule where defendant strung along plaintiff under false hope of settlement only to file first).

Dated: June 11, 2013

Respectfully submitted,

/s/ Linda K. Stevens

Patricia Brown Holmes
Linda K. Stevens
**SCHIFF HARDIN LLP**
233 South Wacker Drive, Suite 6600
Chicago, IL 60606
Telephone: (312) 258-5500
Facsimile: (312) 258-5600
pholmes@schiffhardin.com

Connie N. Bertram
Daniel J. Davis
**PROSKAUER ROSE LLP**
*Admitted Pro Hac Vice*
1001 Pennsylvania Ave., N.W. Suite 400S
Washington, D.C. 20004
Telephone: (202) 416-6800
Facsimile: (202) 416-6899
cbertram@proskauer.com
ddavis@proskauer.com

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on June 11, 2013, she caused the foregoing document, including attachments, to be electronically filed with the Clerk of the Court for the U.S. District Court, Northern District of Illinois, using the electronic case filing system of the Court, which will send a notice of electronic filing to the following attorneys of record:

Kraig J. Marton
David N. Farren
Jeffrey A. Silence
Jaburg & Wilk P.C.
3200 N. Central Ave., 20th Floor
Phoenix, AZ 85012
kjm@jaburgwilk.com
dnf@jaburgwilk.com
jxs@jaburgwilk.com

*Counsel for Defendant Michael J. Noble*

Philip J. Nathanson
The Nathanson Law Firm
8326 E. Hartford Dr., Suite 101
Scottsdale, AZ 85255
philipj@nathansonlawfirm.com

*Counsel for Defendant Phillip G. Roszak*

/s/ Linda K. Stevens