**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

US FOODS, INC.,

              Plaintiff,

v.

MICHAEL J. NOBLE, et al.,

              Defendants.

Civil Action No. 1:13-cv-03640

**DEFENDANT NOBLE'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS**
**FOR LACK OF JURISDICTION OR, IN THE ALTERNATIVE, MOTION TO**
**STAY ALL PROCEEDINGS IN THIS CASE**

Kraig J. Marton
David N. Farren
Jeffrey A. Silence
**JABURG & WILK, P.C.**
3200 N. Central Avenue, Suite 2000
Phoenix, AZ  85012
602-248-1000
kjm@jaburgwilk.com
dnf@jaburgwilk.com
jxs@jaburgwilk.com
Attorneys for Defendant
Michael J. Noble

1

### I.   The Court Should Dismiss this Case and Award Noble His Attorney Fees.

For all of its money, power and high-paid lawyers, Plaintiff US Food's Response to Defendant Noble's Motion to Dismiss makes it absolutely clear, if it wasn't before, that this lawsuit is *not* substantially justified and was *not* filed in good faith.  This lawsuit was filed:

- In violation of the parties' mandatory arbitration agreement that is found in both the parties' February 5, 2013, Confidential Separation Agreement and Release (the "Settlement Agreement") concerning such issues, which Noble contends is the controlling agreement, or in a prior 2007 Management Stockholder's Agreement (the "MSA"), which US Foods contends is the controlling agreement, but, regardless of which agreement controls, deprives this Court of subject matter jurisdiction to issue the requested injunction; and

- Without any basis to obtain the requested injunction – US Foods has failed to satisfy its burden to establish that Noble has done or threatens to do anything with its property that it suspects, without proof, that he still holds, or that it will suffer immediate and irreparable harm if the injunction it requests is not granted.

This case should never have been filed.  US Foods' tactic is to use its limitless resources to bully Noble and bury him in legal costs to satisfy its CEO's vendetta and avoid paying him the $675,000 it owes him, $500,000 of which is Noble's money he previously paid to US Foods to buy US Food stock. US Foods also wants to rely on the prior MSA because the Settlement Agreement's arbitration clause contains a standard fee-shifting provision that entitles the prevailing party to an award of attorney fees (see Settlement Agreement, Motion to Dismiss Ex. A, ¶20), while the MSA's arbitration clause, if it is applied, denies any such relief, stating that "each Party shall pay its own legal fees and expenses, unless otherwise determined by the arbitrator."  That means, in effect, that US Foods will try to make it as

2

costly as possible for Noble to arbitrate its claims with as many high-paid lawyers litigating as long and hard as they wish, without fear of paying Noble's legal fees if or when it loses.

This Court should not allow any of that, but should dismiss this case without further ado and see that Noble is provided with full and complete relief in the form of an award of the significant attorney fees he has already incurred in having to defend the case before this Court.

This Court has the power and authority to right the wrong. *See Hamer v. Lake County*, 819 F.2d 1362, 1370 (7th Cir. 1987) (courts have inherent authority to award attorney fees to a party forced to defend frivolous claims); *Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 506 (Del. 2005) (courts are authorized to award attorney fees "where losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons"). Noble asks this Court to do so.

## II. This Court Has No Subject Matter Jurisdiction to Adjudicate Matters Subject to Mandatory Arbitration.

If there were any doubt, the U.S. Supreme Court last week made it clear that the arbitrator, and not the Court, decides the scope of the arbitrator's jurisdiction and that arbitration agreements are to be "rigorously enforced." In *American Exp. Co. v. Italian Colors Restaurant*, 2013 WL 3064410 (U.S., filed June 20, 2013), the Court stated:

> [The text of the FAA] reflects the overarching principle that arbitration is a matter of contract. *See Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. ___ , ___, 130 S.Ct. 2772, 2776, 177 L.Ed.2d 403 (2010). And consistent with that text, courts must "rigorously enforce" arbitration agreements according to their terms, *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), including terms that "specify *with whom* [the parties] choose to arbitrate their disputes," *Stolt–Nielsen, supra,* at 683, 130 S.Ct. 1758, and "the rules under which that arbitration will be conducted," *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). (Emphasis by the Court.)

2013 WL 3064410 at 4 (enforcing a contract waiver of class arbitration claims); *see also Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

3

Accordingly, all claims or controversies between the parties that are subject to mandatory arbitration – including claims for interim injunctive relief – must be arbitrated, rather than litigated, in order to rigorously enforce the terms of the parties' arbitration agreement in this case. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (affirming the district court's refusal to grant preliminary injunction as "inappropriate" where arbitration panel had authority to grant equivalent relief); *Greenpoint Technologies, Inc. v. Peridot Associated S.A.*, 2009 WL 674630, 3 (W.D. Wash. 2009) ("once a court determines that all disputes are subject to arbitration pursuant to a binding arbitration clause, it is improper for a district court to grant preliminary relief where provisional relief is available from an arbitral tribunal"); and numerous other cases cited on pp. 8-10 of Noble's motion.[1]

US Foods does not contest this point, but instead cites two cases from 1993 and 1998 in the Merrill Lynch trade secrets litigation which held that district courts are "not precluded" from issuing an injunction in an arbitration case. (See Response at 11). Those cases were criticized at the time, however – *see*, *e.g.*, *Peabody Coalsales Co. v. Tampa Elec. Co.*, 36 F.3d 46, 47 (8th Cir. 1994) – and they long predate the U.S. Supreme Court's more recent instructions that arbitration agreements be "rigorously enforced." This Court should not intrude upon the arbitration process that both US Foods and Noble agreed to, especially when, as discussed below, there is no "emergency" or good reason to do so.

## A. The Court Does Not Have Subject Matter Jurisdiction Regardless of Which Arbitration Agreement Controls.

Plaintiff's lawsuit asks this Court to intervene in a matter that very clearly is within a mandatory arbitration provision, regardless of whether the Court relies on the parties' Settlement Agreement or the

---

[1] There is no question that federal law and the AAA allow for such interim injunctive relief as an integral part of an arbitration. *See* AAA Rule 32, "Interim Measures" ("the arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court"); *Greenpoint Technologies, Inc. v. Peridot Associated S.A.*, *supra*, 2009 WL 674630, 3 ("no dispute that the Rules of the AAA provide that the arbitral tribunal 'may take whatever interim measures it deems necessary, including injunctive relief and measures for the protection or conversion of property'").

4

prior MSA.  Both arbitration provisions require that any issue or matter of dispute between the parties arising out of or related to the underlying agreement must be arbitrated rather than litigated in court. (See Settlement Agreement, Motion to Dismiss Ex. A, ¶20 – "any controversy or claim arising out of or related to this Agreement or the breach thereof . . . shall be resolved by arbitration"); and MSA, Motion to Dismiss Ex. D, ¶17(a) – "any controversy among the parties hereto arising out of, or relating to this Agreement . . . shall be finally, exclusively and conclusively settled by mandatory arbitration").

US Foods attempts to sneak around this issue by focusing its argument on its contention that the prior MSA, rather than the parties' Settlement Agreement, should be enforced with regard to where and how the parties must arbitrate their claims.  (See Response at 7-11).  Which agreement controls, however, is irrelevant to the core, underlying issue of whether this Court has or does not have subject matter jurisdiction to adjudicate US Food's injunction request.  Both the MSA and the Settlement Agreement mandate arbitration of any and all claims and controversies "arising out of or related to" either agreement.  It makes no difference whether the claim is that Noble violated the MSA by failing to maintain or disclosing and using US Foods' allegedly confidential emails or that he failed to satisfy a term – or, as US Foods calls it, a "condition precedent" – of the Settlement Agreement by doing so. Any and all such claims must be arbitrated under either agreement.

### B.   The Parties' Settlement Agreement Controls in Any Event.

The parties' 2013 Settlement Agreement controls their arbitration rights in any event.  The 2007 MSA was terminated when the Settlement Agreement was signed.  (See Settlement Agreement, Motion to Dismiss Ex. A, ¶17 – stating that the Agreement "supersedes any and all other prior agreements . . . ," subject to the limited exception discussed below).

US Foods nevertheless wants to apply the MSA, arguing that the Settlement Agreement "never took effect" because of Noble's failure to perform a "condition precedent" that he return the alleged

5

confidential emails at issue in this case. (Response at 7-9). This so-called "condition precedent," however, is nothing more than a contract term related to the agreement's "Effective Date" – that is, the date when the agreement becomes "effective" for purposes of US Foods' obligation to pay Noble $675,000 in settlement funds. (See Settlement Agreement, Motion to Dismiss Ex. A, ¶¶ 2(c) & 25). Things that should happen before the agreement to pay Noble becomes "effective" are promises, not "conditions precedent," which by applicable law must be clearly stated to be a conditions precedent in the agreement itself. *See Commonwealth Const. Co. v. Cornerstone Fellowship Baptist Church, Inc.*, 2006 WL 2567916, 21 (Del.Super. 2006) (stating that "a condition precedent is not a favorable result when interpreting a contract," but, "where the contract language is clear and unambiguous, the Court must give that language its plain meaning"). Nothing in the Settlement Agreement states, or even suggests, that Noble's return of US Food's alleged confidential emails is or was intended to be a condition precedent to the agreement's existence, rather than a promise that he do so prior to the Effective Date when US Foods became obligated to pay him the settlement funds.

In a similar case involving performance of a settlement agreement, the Fourth Circuit Court of Appeals explained the difference between a condition precedent and a promise this way:

> [D]efendants contend that when they failed to pay $425,000 into escrow, the condition precedent for the settlement agreement's effective date failed, and therefore the settlement itself was "canceled and terminated."
>
> This argument fails for lack of a fundamental understanding of the settlement agreement's operation. The duty to pay $425,000 into escrow was a promise by the defendants, not a condition precedent to their performance under the settlement agreement. *See Harllee v. Harllee,* 151 N.C.App. 40, 565 S.E.2d 678, 682 (2002) (discussing distinction between promise and condition precedent). Indeed, the defendants' promise to pay $425,000 was the *only* consideration given by them for the plaintiffs promise to drop the class action and release the defendants. When the defendants failed to pay, they breached their promise, giving rise to a claim for damages, which the district court correctly ascertained to be $425,000 plus interest.

6

*Huttenstine v. Mast*, 2009 WL 1743693, 1 (4th Cir. 2009). Even if Noble breached his obligation to return some emails somehow delays the Effective Date of the agreement, it does not prevent the agreement from existing at all.

Hedging its bets, US Foods also argues that, even if the Settlement Agreement does control, its "carves out" a reference to Sections 17 and 22 of the MSA and that Section 17 somehow gives it the express right to seek an injunction in this Court. (See Response at 9-11).

As Noble has already explained, however, Sections 17 and 22 of the MSA must be read in the context of ¶10 of the Settlement Agreement that references them. It states: "You [Noble] agree that you remain bound by all post-employment *restrictions* in . . . Sections 17 and 22 of the [MSA]." (Settlement Agreement, Motion to Dismiss Ex. A, ¶10) (emphasis added). Thus, in plain and unambiguous language, it refers to only the "restrictions" in Sections 17 and 22 of the MSA, not the sections themselves. The procedural elements of Sections 17 – that, for example, the parties must arbitrate in New York and bear their own attorney fees – are not substantive "restrictions" found in that section.[2]

Moreover, and even if ¶10 of the Settlement Agreement did reference the non-substantive elements of Section 17 of the MSA, there is *nothing* in that section that gives US Foods the right to file this action in this Court. Section 17(c) states that, in the event of an arbitration, US Foods "shall be entitled to injunctive or other relief" in that context. (See MSA, Motion to Dismiss Ex. D, ¶17(c)). It does not say anything about going to court and, as noted, such relief is fully available in arbitration. *See* AAA Rule 32 and cases cited above. US Foods' claim that it does is transparently false.

---

[2] US Foods chides this analysis by arguing that, because Section 17 has no substantive restrictions, referring to it would make the reference a "nullity." (See Response at 10). Section 17, however, contains the obvious substantive restriction that the parties must arbitrate their claims and controversies. The procedural aspects of where or how that is to be done, on the other hand, are not "restrictions" on anything and, as such, are not referenced or incorporated by the plain language of ¶10 of the Settlement Agreement.

7

But again, this Court lacks subject matter jurisdiction in this case because both the Settlement Agreement and the MSA mandate arbitration of all claims and controversies between the parties. It will be for an arbitrator, not this Court, to decide which agreement controls, and where and how the arbitration will proceed. *See Medtronic AVE Inc. v. Cordis Corp.*, 2004 WL 1557328, 3 (3rd Cir. 2004) (noting the "long line of cases that hold that arbitrability is ultimately a question for the arbitrator to resolve").

### C. The Broad Relief US Foods Requests Unquestionably Usurps the Arbitrators' Role to Decide the Issues.

If this Court has any doubt at all about its lack of subject matter jurisdiction in this case, it need only look at the broad relief US Food has requested in its Complaint. The Complaint asks for far more than maintaining the status quo, as US Foods falsely claims in its Response to Noble's motion. It asks for judgment and an order: (1) enjoining Noble and others from disclosing or utilizing its unidentified property and alleged confidential and proprietary information; (2) directing Noble and others to return any such property to US Foods; and (3) permitting US Foods to inspect Nobles personal computers, thumb and back-up drives, cell phones, etc. to look for any such property. (Complaint at pp. 19-20).

Directing Noble to hand over whatever it suspects he has and permitting US Foods to inspect his personal electronic devises goes way beyond maintaining the status quo. This is without question the kind of affirmative relief that an arbitrator, rather than this Court, must decide in accordance with the parties' arbitration agreement. The appropriate remedy is to dismiss US Foods' Complaint for lack of jurisdiction. *See*, *e.g.*, *Sherr v. Dell, Inc.*, 2006 WL 2109436, 2 (S.D.N.Y. 2006) (dismissing the case where all claims in response to motion to stay and to compel arbitration where all claims were within the scope of the parties' arbitration agreement); *see also Lewis Tree Serv., Inc. v. Lucent Technologies, Inc.*, 239 F.Supp.2d 332, 340 (S.D.N.Y. 2002) (explaining that dismissal is appropriate where "no useful purpose will be served by granting a stay"); *see also Kawasaki Heavy Industries, Ltd. v. Bombardier*

8

*Recreational Products, Inc.*, 660 F.3d 988, 998 (7ᵗʰ Cir. 2011) (noting that "an appropriate motion to dismiss (or an argument against jurisdiction, as the case may be) stymies a plaintiff's attempt at judicial relief and is consistent with the intent to arbitrate, especially when that motion includes an argument that the case belongs in arbitration").

### III.  This Court Has No Diversity Subject Matter Jurisdiction.

Arbitration aside, US Foods has failed to establish this Court's diversity subject matter jurisdiction in this case.  28 U.S.C. §1332(a) requires that "the matter in controversy exceeds the sum or value of $75,000."  In an injunction proceeding, that amount is measured by "what plaintiff stands to gain, or what it would cost the defendant to meet the plaintiff's demand."  *Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799-800 (7th Cir. 2003).  It is US Foods' burden alone to prove "to a reasonable probability" that the amount of controversy in this case exceeds $75,000.  *Anthony v. Sec. Pac. Fin. Servs., Inc.,* 75 F.3d 311 (7th Cir. 1996).  US Foods does not disagree, but fails in its attempt to meet its burden of proof.  (See Response at 11-12).

As Noble states in his motion, the actual value of the injunction sought in this case is in fact *zero*.  US Foods has sued to prevent Noble from maintaining or using allegedly confidential emails that he has sworn under oath he does not have, that he has sworn under oath he downloaded onto a storage devise and gave to US Foods, and that he has sworn under oath he deleted from his own computer after giving them to US Foods.  Noble does not have the emails and, even if he did, has not used them or threatened to use them at any time after the parties' settled the dispute. US Foods has offered no evidence to the contrary.

Instead of evidence, US Foods offers conjecture and pure speculation that Noble is lying and is secretly lying in wait to destroy its business by disclosing its secrets to the world.  (See Response at 11-13).   Despite all of its rumblings about what "access" Noble previously had to its alleged confidential

9

information while he was employed and its feigned dissatisfaction with the allegedly confidential emails he retrieved and gave back in his sworn post-Settlement Agreement interview testimony, US Foods does not describe the emails at issue or say what they contain that is secret or potentially destructive. They offer no proof whatsoever – save for an inadmissible affidavit by a US Foods employee who has no personal knowledge of anything – that Noble either has any such secrets or intends to use them. Such conjecture and speculation are insufficient as a matter of law to support the requisite jurisdictional amount. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1273 (11th Cir. 2000) (amount may not be based on claims that "are so uncertain that the court cannot reasonably determine whether the amount of money placed in controversy . . . exceeds [the requisite amount in controversy]"). The value of the injunction US Foods requests is, again, *zero*.

Nor does US Foods' claim that its injunction is worth the $675,000 settlement amount it has refused to pay him meet the mark. That claim is at odds with its claim that the Settlement Agreement does not exist, and the $675,000 settlement amount has nothing to do with the value of any injunction that could be issued in this case in any event. Again, the value of the requested injunction is *zero*.

### IV. Plaintiff is Not Entitled to the Requested Injunctive Relief.

Perhaps the bottom line here flows from the same reason why this Court lacks of subject matter jurisdiction – that the claim US Foods makes in this case is worth nothing. To obtain an injunction, US Foods must show: "1) a reasonable likelihood of success on the merits of the underlying claim; 2) no adequate remedy at law; and 3) irreparable harm if the injunction is not granted." *Lucini Italia Company v. Grappolini*, 288 F.3d 1035, 1038 (7th Cir. 2002), *citing Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, (7th Cir. 2001). Here, especially, where US Foods has requested affirmative relief that goes beyond maintaining the status quo, it must show that, "on balance, the four [preliminary injunction] factors *weigh heavily and compellingly* in [its] favor." *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1099

10

(10th Cir. 1991); *see also W.A. Mack, Inc. v. General Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958) (noting that preliminary injunctive relief is inappropriate if it gives to a plaintiff "the actual advantage which would be obtained in a final decree"). US Foods has not come anywhere close to meeting its burden to establish any of these required elements.

First, US Foods has not established that it has a reasonable likelihood of success on the merits of its underlying claim. Again, it does not describe the alleged company secrets that Noble supposedly has or offer any evidence that he has them. It does not dispute his sworn testimony that Noble has *none* of their property. Again, conjecture and speculation are insufficient as a matter of law to support an injunction request. *See Capeheart v. Terrell*, 695 F.3d 681, 684 (7th Cir. 2012) (courts will not issue an injunction if they "conclude that the possibility of injury is too remote" or if the movant fails to show that it is "immediately in danger of sustaining some direct injury" that is "'real and immediate,' not 'conjectural' or 'hypothetical'"), *quoting City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *see also PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1267-69 (7th Cir. 1995) (noting that a party seeking an injunction under the Illinois Trade Secrets Act must prove both the existence of a trade secret and the misappropriation, and, in the case of a merely threatened misappropriation, that the "defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets"). US Foods' injunction request fails upon this basis.

Second, US Foods has not established that it has no adequate remedy at law. In this case, US Foods' adequate legal remedy is to arbitrate, rather than litigate, their claims. *See Kowalski v. Chicago Tribune Co.*, 854 F.2d 168, 171 (7th Cir. 1988) (refusing equitable relief in deference to the parties' legal remedies available in arbitration). US Foods' injunction request fails upon this basis as well.

Third, Plaintiff has not established that irreparable harm will result if the injunction is not granted. For the same reasons why it has not established a reasonable likelihood of success on the

11

merits of its claim, US Foods has not established any immediate or irreparable harm that could possibly result from Noble having any of its emails or evidence that he might use them. The complete lack of any such evidence falls short of proving the kind of "'real and immediate,' and not 'conjectural' or 'hypothetical'" harm required to obtain an injunction. *Capeheart v. Terrell*, 695 F.3d at 684. US Foods' injunction request fails upon this basis as well.

This case should be dismissed for lack of both jurisdiction and merit, and, for the reasons set forth in the opening section of this Reply, Noble should be reimbursed for every penny of the attorney fees he has incurred in defense of this ill-advised and frivolous action.

## CONCLUSION

The Court should not allow US Foods to bully or outspend Noble in a matter that so clearly must be arbitrated with the intent to reduce, rather than, increase the costs of resolving such disputes. Noble asks the Court to find that US Foods' lawsuit filed in the face of mandatory arbitration provision(s) is frivolous, in bad faith, vexatious, wanton and/or oppressive and to award him his attorney fees as recompense for having to litigate such issues in this Court.

For all of the foregoing reasons, Noble requests that the Court dismiss this case and enter an award of his attorney fees and costs incurred herein.

July 1, 2013                    Respectfully submitted,

/s/ Kraig J. Marton
Kraig J. Marton
Jeffrey A. Silence
**JABURG & WILK, P.C.**
3200 N. Central Avenue, Suite 2000
Phoenix, AZ 85012
602-248-1000
kjm@jaburgwilk.com
dnf@jaburgwilk.com
jxs@jaburgwilk.com

12

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on July 1, 2013, he caused a true and correct copy of this Motion to be served by electronic mail and US Mail on July 1, 2013 on the following:

Patricia Brown Holmes
Linda K. Stevens
SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 6600
Chicago, IL 60606
pholmes@schiffhardin.com

Connie N. Bertram
Daniel J. Davis
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., N.W. Suite 400S
Washington, D.C. 20004
cbertram@proskauer.com
ddavis@proskauer.com

Philip J. Nathanson
The Nathanson Law Firm
8326 E. Hartford Dr., Suite 101
Scottsdale, AZ 85255

The Nathanson Law Firm
120 N. LaSalle St. #1040
Chicago, IL 60602
philipj@nathansonlawfirm.com


_____/s Kimberly Rogers_____

13