# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| US FOODS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:13-cv-03640 |
| ) | |
| MICHAEL J. NOBLE, et al., ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT ROSZAK'S MOTION TO TRANSFER TO THE DISTRICT OF ARIZONA, PURSUANT TO 28 U.S.C. 1404(A), AND FOR <u>OTHER RELIEF</u>

Patricia Brown Holmes
Linda K. Stevens
**SCHIFF HARDIN LLP**
233 South Wacker Drive, Suite 6600
Chicago, IL 60606
Telephone: (312) 258-5500
Facsimile: (312) 258-5600
pholmes@schiffhardin.com

Connie N. Bertram
Daniel J. Davis
**PROSKAUER ROSE LLP**
*Admitted Pro Hac Vice*
1001 Pennsylvania Ave., N.W. Suite 400S
Washington, D.C. 20004
Telephone: (202) 416-6800
Facsimile: (202) 416-6899
cbertram@proskauer.com
ddavis@proskauer.com

*Counsel for Plaintiff*

I.   **INTRODUCTION**

Defendant Roszak's motion to dismiss or transfer is merely the latest maneuver in Defendants' six-month effort to avoid their duty to return US Foods' property and data. Since Defendants were terminated, US Foods has tried assiduously to obtain the property and data still in Defendants' possession. As described in previous briefs, rather than return the property, Defendants have dissembled and delayed and deleted a massive amount of electronic data. In addition, Defendants have stymied US Foods' efforts to get before an arbitrator who could force them to preserve and produce evidence about the property and data in their possession.

Familiar (and fed-up) with Defendants' delay tactics, US Foods filed this injunction action concurrently with their demand for arbitration in order to preserve, discover and recover the US Foods property and data retained by Defendants. Defendants simply cannot avoid the fact that there is an exigent need for the limited discovery and injunctive relief sought by US Foods in this case. Defendants do not deny that they have property and data of US Foods in their possession that they have refused to return. Moreover, US Foods has unequivocally demonstrated that Defendants spoliated extensive evidence. And, the damage caused by Defendants' past and any future spoliation cannot be cured. Roszak's spoliation efforts, for instance, resulted in the permanent deletion of over 20,000 documents and data files, leaving only a trail of ZZZZs in his wake. Not a single data bit of this evidence can be forensically recovered. Amazingly, Defendants have not denied or even attempted to explain their spoliation activity in their various filings with or appearances before this Court.[1]

---

[1] While spoliation can often – but not always – be detected by forensic tools, "catching" Defendants if they engage in future spoliation offers little comfort to US Foods, which would rather prevent the spoliation and use the evidence to determine the full breadth of Defendants' misuse of US Foods data. For example, a critical question is to whom have Defendants disseminated US Foods' files? Even a default judgment will do little to assist US Foods in tracking down and regaining its misappropriated files if Defendants can engage in further spoliation of whatever evidence may remain.

Defendants' conduct has not given US Foods any reason to believe that the pendency of litigation or arbitration will prevent them from destroying additional property of US Foods or other evidence. Roszak wiped his computer on the very same day that the Senior Vice President of the Company demanded its return and the General Counsel reiterated that demand, specifically instructing him to "turn it off" immediately. Noble continued to spoliate evidence even after he signed an agreement with US Foods requiring him to return all Company data with "all associated metadata intact." Since the filing of this lawsuit seeking injunctive relief and an arbitration, Defendants have done nothing to cure their failure to comply with their obligation to return US Foods' property and data. At the hearing last week, Roszak's counsel admitted that Roszak has property of US Foods in his possession, but that, other than the company laptop, he has not returned a single document to the Company.

Moreover, rather than produce the property they concede they have a duty to return, Defendants have fought US Foods at every turn, resisting its limited discovery requests and seeking a transfer and dismissal. After uncovering evidence of uploading and downloading of US Foods' data and massive spoliation and then facing six months of foot-dragging and procedural maneuvering, US Foods can only wonder what Defendants have to hide. US Foods legitimately fears that they again will permanently destroy critical property of US Foods or evidence before this Court rules on its Motion for Expedited Discovery. And the evidence at risk is more than documents and files. It is also the "metadata" and computer log information – all of which may reveal when and what documents Defendants took from US Foods and what they have been doing with those documents. ***Destruction of this evidence cannot be remedied later with sanctions.*** At a minimum, Defendants should be ordered immediately to image their computers and devices and return to US Foods its property and data.

- 3 -

Defendants' latest maneuver to avoid their obligation to return US Foods' property is Roszak's motion to transfer venue and to dismiss. Roszak falls woefully short of meeting his heavy burden of showing that the interests of justice and the convenience of witnesses and the parties justify moving this case to Arizona. Indeed, the interests of justice require that this case remain in this District. Roszak violated the arbitration clause in the 2007 stock agreement with US Foods by filing his breach of contract and whistleblower claims in Arizona. That same agreement specifically authorizes the lawsuit for injunctive relief that US Foods filed in this District. Transferring this case to Arizona would do violence to that agreement and reward Roszak's violation of the terms of the arbitration clause.

Other interests of justice factors favor denying the motion to transfer and dismiss. Roszak may not rely on the "first filed" rule because US Foods perfected its filing first and because Roszak delayed US Foods' filing by feigning an interest in settlement. Moreover, because Noble has not joined the motion to transfer, Roszak is asking this court to split the current proceeding, resulting in additional costs to the parties, delays in the proceedings, and burdens on the Court system and the parties. This District also currently offers a far more expeditious forum for the resolution of US Foods' injunction claims than the District of Arizona.

Roszak also fails to show that the convenience of witnesses or parties require transfer. Roszak, who reported to supervisors in Rosemont and worked for a Company based there, has extensive contact with this District; key events in US Foods' attempts to recover its property occurred in this District; and US Foods and almost all of its key witnesses are located in this District. For these reasons, this Court should (1) deny Roszak's motion to transfer and dismiss and (2) grant US Foods' Motion for Expedited Discovery.

## II.     FACTUAL BACKGROUND

### A.     Roszak's Employment With US Foods

Prior to his termination in December 2012, Roszak was Vice President of Financial and Support Office Systems for US Foods in Phoenix, Arizona. Pl.'s Mem. in Support of Mot. for Exp. Discovery (Dkt. No. 13) ("Exp. Disc. Mem.") at 6. In this position, he managed various back office IT systems and applications for US Foods. Id. On October 19, 2007, Roszak entered into a Management Stockholder's Agreement ("MSA") and a Non-Solicitation and Non-Disclosure Agreement ("NSNDA"). Id. The NSNDA was explicitly incorporated into the MSA. Id. Roszak breached his obligations under the NSNDA by taking and disclosing US Foods' confidential data and property and threatening the Company. Compl. ¶¶ 75-77.

Section 17(b) of the MSA contains an arbitration clause that requires the arbitration of all disputes between the parties. Pl.'s Reply in Support of Mot. for Expedited Discovery (Dkt. No. 26) ("Exp. Disc. Reply") at 9-10. Section 17(c) states that "notwithstanding [the arbitration provision] . . . the Company . . . shall be entitled to injunctive or other relief in order to enforce the covenant not to compete, covenant not to solicit and/or confidentiality covenants as set forth in Section 22(a) of this Agreement." Id. at 10. In addition, Section 22(b) of the MSA specifically allows US Foods, "[i]n the event of a breach or threatened breach of this Agreement," to "apply to any court of competent jurisdiction for specific performance and/or injunctive relief in order to enforce, or prevent any violations of, the provisions hereof."

### B.     US Foods' Attempts To Retrieve Its Property

Roszak was scheduled to appear in Rosemont, Illinois for an interview on December 11, 2012. Exp. Disc. Mem. at 7. Instead of attending the interview, he informed US Foods that he was resigning from his employment. Id. When the Executive Vice President of Human Resources demanded that Roszak immediately return his company-issued laptop, Roszak ignored

the request. Compl. ¶ 52. US Foods hand-delivered a letter to him that same day demanding that he preserve all relevant evidence and return all of the Company's property and data:

> You are no longer authorized to use your US Foods computer. You should turn it off (if it is turned on) immediately upon receipt of this letter and not use or alter it in any fashion. Because US Foods anticipates litigation concerning your employment with and your actions while employed by the Company, you have an obligation to preserve and not to destroy or spoil relevant evidence… You should physically return all US Foods property, documents and data, including your laptop computer and all US Foods documents forwarded to your personal email address to [person and location identified] no later than ***9:00 am tomorrow morning***.

Exp. Disc. Mem. at 7 (emphasis in original). Roszak returned the computer the next day. Id. at 7-8. A forensic inspection of that US Foods laptop revealed that, on the same day he received the preservation notice from US Foods, Roszak used a program called CCleaner permanently to erase approximately 20,000 files stored on the computer. Id. at 8. The computer was used to upload US Foods documents and data to a file hosting service called Dropbox. Id. Furthermore, devices that can transfer files, including an iPad, were attached repeatedly to the computer. Roszak does not deny that he undertook this data wiping activity or downloading or uploading. Moreover, neither he nor his counsel has attempted to offer any explanation for it. Id.[2]

US Foods made multiple attempts over the next several months to secure the return of its property and data from Roszak. The General Counsel of US Foods sent Roszak a letter on January 17, 2013 seeking to schedule a time to meet to, among other things, coordinate the return of its property. Exp. Disc. Mem. at 8. Roszak did not respond to the letter or to follow-up calls from the General Counsel. Id. On April 8, 2013, outside counsel for US Foods sent a letter to Roszak, again requesting a meeting to coordinate the return of US Foods' data and to interview

---

[2] Likewise, Defendant Noble concedes that he permanently deleted Company emails from his personal computer, even after receiving US Foods' litigation hold notice and agreeing to return all Company property. See Exp. Disc. Mem. at 4-5, 7-8; Exp. Disc. Reply at 3.

him in connection with the Company's investigation. Id. Roszak exchanged emails with US Foods' counsel, promising that he would be in contact after he returned from vacation. Id. Rather than meet with US Foods, Roszak filed a lawsuit on May 3, 2013 against US Foods in Arizona in violation of the MSA's mandatory arbitration clause. Roszak v. U.S. Foodservice, Inc., No. 2:13-cv- 01009 (D. Ariz.) (Judge Susan Bolton). Def. Roszak's Mot. to Transfer to the District of Arizona, Pursuant to 28 U.S.C. 1404(A), and for Other Relief (Dkt. No. 36) ("Mem."), Ex. 1. To date, other than the wiped laptop described above, he has not returned any US Foods documents or data in his possession. Exp. Disc. Mem. at 8.

In his Arizona lawsuit, Roszak asserts claims against US Foods for breach of the MSA, breach of the covenant of good faith and fair dealing, and retaliatory discharge. Mem., Ex. 1. Roszak never served that lawsuit on US Foods. US Foods removed the lawsuit to federal court on May 15, 2013. Id., Ex. 2. That same day it filed the instant action seeking Defendants' return of its property and a Demand for Arbitration with the AAA. Due to objections by Defendants, the commencement of the arbitration has been stalled. On June 5, 2013, Noble objected to the locale of the arbitration. After the AAA administrator rejected that objection, the parties submitted their ranking of arbitrators. Then, on July 1, 2013, Roszak filed untimely objections to the arbitration. AAA selected an arbitrator—William Kandel—on Friday, July 12.

**III.  ARGUMENT**

    **A.  Legal Standard**

To justify a transfer of this action to Arizona, Roszak "has the burden of showing that the transferee forum is clearly more convenient." Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1293 (7th Cir. 1989) (internal citation omitted). Transfer is not appropriate "if it merely transforms an inconvenience for one party into an inconvenience for another party." Schwarz v. National Van Lines, Inc., 317 F. Supp. 2d 829, 835 (N.D. Ill. 2004). Instead, Roszak

must demonstrate that the transfer will serve the interests of justice, the convenience of the parties, and the convenience of the witnesses. Id. at 833. None of these factors supports transferring this case to Arizona.

### B. The Interests of Justice Require Denial Of Roszak's Motion

Roszak first argues that he filed a lawsuit against US Foods in Arizona before US Foods filed the instant lawsuit. Mem. at 1-2. The Seventh Circuit, however, "does not rigidly adhere to a 'first to file' rule." Schwarz, 317 F. Supp. 2d at 833 (internal citations omitted). Indeed, "[s]econd-filed actions may proceed where favored by the interests of justice." Id.

#### 1. Roszak's Arizona Suit Is Illegitimate *Ab Initio*

Roszak's Arizona complaint is void *ab initio* because the claims he raises are subject to mandatory arbitration under the MSA and should be dismissed pending arbitration.[3]

Roszak agreed that any controversy "arising out of, or relating to" Roszak's MSA or NSNDA would be subject to arbitration. Supra at 4. Each of Roszak's claims—for breach of contract, breach of the covenant of good faith and fair dealing, and a claim under the Delaware Whistleblower's Protection Act—arise out of and relate to his obligations under the MSA and NSNDA. Exp. Disc. Reply at 15. Roszak has essentially conceded that two of his three claims in Arizona are subject to arbitration. See Mem., Ex. 5 at 16. Because Roszak's claims were improperly brought in Arizona, transferring this proceeding to Arizona is not appropriate.

The MSA authorizes US Foods to seek injunctive relief for violations of the MSA and NSNDA in a court of "competent jurisdiction." MSA §§ 17(c), 22(b). Because only US Foods' suit comports with the terms of the MSA, US Foods' choice of forum – not Roszak's – should be respected. Vandeveld v. Christoph, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995).

---

[3] US Foods has filed and fully briefed a motion to compel arbitration on this ground in the District of Arizona. Mem., Ex. 3. It is US Foods' understanding that, as a consequence of that Court's voluminous criminal docket, that motion will not likely be resolved for many months.

### 2. Roszak Is Not Entitled To Any Benefit Of The First-Filed Rule

Roszak is not entitled to the first-filed rule for two additional reasons. First, US Foods was the first party to perfect the filing of its action. Although Roszak filed his complaint in Arizona state court on May 3, 2013, he never *served* that complaint on US Foods. US Foods filed its complaint in this Court on May 15 (the same day it removed the un-served Arizona complaint to federal court) and served Roszak on May 23, 2013. Because US Foods was the first party to perfect its filing, this case should have priority when evaluating venue. See S&H Uniform Corp. v. V-Tex, Inc., 2003 WL 22439644, at *1 (S.D.N.Y. Oct. 24, 2003) (declining to apply the "first to file" rule because the defendant filed and perfected its own complaint first).

In addition, Roszak's actions prior to filing the Arizona complaint preclude him from relying on the first to file rule. As described above, Roszak filed suit while the parties were in the process of scheduling a meeting to discuss the resolution of US Foods' claims against him. Supra at 5-6. Roszak should not be permitted to benefit from preemptively filing suit. See Samsung Electronics Co., Ltd. v. Rambus, Inc., 386 F. Supp. 2d 708, 723-24 (E.D. Va. 2005) (denying motion to transfer in part based on preemptive filing during settlement discussions); Muller v. Walt Disney Productions, 822 F. Supp. 1033, 1039 (S.D.N.Y. 1993) (denying first-to-file rule where defendant strung along plaintiff under false hope of settlement only to file first).

### 3. Other Interests of Justice Factors Strongly Favor Denying Removal

The "interests of justice" analysis also evaluates "the efficient functioning of the court," Schwarz, 317 F. Supp. 2d at 837, such as "ensuring speedy trials, [and] trying related litigation together. . . ." Vandeveld, 877 F. Supp. at 1169. These factors weigh strongly in favor of keeping the case in this District.

First, Defendant Noble has not joined Roszak's Motion to Transfer. Therefore, granting Roszak's motion would split US Foods' claims into two parallel proceedings requiring similar

- 8 -

evidence and proof. Requiring the parties to litigate the same claims in two jurisdictions would burden the court system and impose unnecessary additional burdens and costs. Cf. Divine/Whittman-Hart, Inc. v. King, 2002 WL 1611585, at *9 (N.D. Ill. July 22, 2002) ("Keeping all of the defendants together in one trial is greatly preferred, presumably by all parties, and definitely by the court system.").

Second, the parties will likely obtain a faster resolution of this action in this District. Between this District and the District of Arizona, the median time between filing and resolution, for any case resolved before the pretrial conference, was more than two months faster in this District. Declaration of Connie N. Bertram, Ex. A at 2-3. Likewise, the median interval between filing and resolution, during or after pretrial, was more than six months shorter in this District than in Arizona. Id. This factor militates against transferring this action to Arizona. See Vandeveld, 877 F. Supp. at 1169.

### C. Roszak Has Not Met His Burden Of Showing That Other Factors Support Removal

Roszak also bears the burden of showing that the following factors support transfer: (1) the location of the material events; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; and (4) the convenience of the parties. Schwarz, 317 F. Supp. 2d at 835. Roszak offers only two paragraphs of explanation why these factors justify transfer. Mem. at 9. Roszak's explanation is wholly insufficient and betrays a fundamental misunderstanding about the claims US Foods has brought in this Court.

#### 1. Roszak's Motion Should Be Denied Because The Material Events Underlying This Action Occurred In The Northern District Of Illinois

The material events underlying this litigation occurred in the Northern District of Illinois. Roszak claims that the "events that occurred in this case occurred in Phoenix . . . office of US

Foods in which Roszak was employed." Mem. at 2. But Roszak misstates the events that are relevant to the claims in this lawsuit.

The instant lawsuit and Roszak's lawsuit in Arizona are entirely distinct proceedings seeking very different relief and involving different sets of facts. Contrary to Roszak's assertions, this case is not about his termination following a scheme to discredit the Company's CEO. This case is about Roszak's refusal to return and continued retention of Company property in violation of his contractual, statutory and common law duties. See Compl. ¶¶ 31-40, 76, 77. Almost every event relevant to those claims occurred in, or was directed at, the Northern District of Illinois. See PharMerica Corp. v. Advanced Healthcare Solutions, LLC, 2010 WL 1417460, at *5 (N.D. Ill. Apr. 5, 2010) (denying a motion to transfer to the District of Arizona because, even though certain activities took place in Arizona, "the alleged tortious interference with contract" underlying the litigation involved a customer in Illinois).

Although Roszak lives in Arizona, he reported to and received his direction and supervision from a company based in Rosemont, Illinois. His MSA and NSNDA were signed by US Foods' former General Counsel in Maryland and have been administered and enforced by US Foods' current General Counsel in Rosemont. The US Foods executives who demanded the return of Company property and data and communicated with him after his termination worked in Rosemont, and those demands were made from Rosemont. The forensic review of Roszak's computer occurred in Chicago, Illinois. In addition, the documents and data that Roszak improperly procured and misused and that US Foods seeks in this lawsuit belong to US Foods, a Company based in this District. Because the claims asserted in this lawsuit are closely tied to and will impact a Company in this District, this case should not be transferred to Arizona.

### 2. Roszak Has Failed To Demonstrate That The Convenience Of The Witnesses Weighs In Favor Of Transfer

Roszak has also failed to demonstrate that the convenience of the witnesses weighs in favor of transfer. "The party seeking transfer must clearly specify the key witnesses to be called and make a general statement of their testimony." Vandeveld, 877 F. Supp. at 1167-68; see also Heller Fin. Inc., 883 F.2d at 1293-94 (denying a motion to transfer, in part, because the defendant "supplied nothing in the way of affidavits, depositions, stipulations, or any other type of document containing facts tending to establish who (specifically) it planned to call or the materiality of that testimony"). The Court must then "look to the nature and quality of the witnesses' testimony with respect to the issues of the case." Schwarz, 317 F. Supp. 2d at 836. Furthermore, the Court "may not transfer a case for the convenience of one party's witnesses at the expense of the other party's witnesses." PharMerica Corp., 2010 WL 1417460, at *5.

Significantly, Roszak does not name a single potential witness in his motion, let alone "make a general statement of their testimony." Vandeveld, 877 F. Supp. at 1168. Roszak's bald assertion that transfer is appropriate because "many of the other witnesses" worked in Arizona (Mem. at 9) does not allow the Court to ascertain "the nature and quality of the witnesses' testimony with respect to the issues of the case." Schwarz, 317 F. Supp. 2d at 836. To the extent Roszak names any individuals at all, every one of them (with the exception of Roszak, himself) is located in this District. Mem. at 4 ("John Lederer . . . work[ed] out of the principal corporate office in Rosemont, Illinois;" "Collete May is . . . located in Chicago, Illinois;" "Juliette Pryor . . . work[ed] in the principal corporate office located in Rosemont, Illinois").

Roszak's failure to address this issue in his memorandum is telling. With the exception of Roszak and Noble, almost each and every witness with knowledge of the events relevant to this lawsuit resides and works in this District. This case involves only the illicit removal and

- 11 -

refusal to return Company property and data. The US Foods executives who demanded the return of Roszak's computer and Company property, who supervised the investigation of their removal, disclosure and misuse of Company property, who made the decision to terminate Roszak, and who have knowledge of the Company property improperly retained by Roszak since his termination all reside and work in this District. Thus, Roszak failed to demonstrate that the convenience of the witnesses weighs in favor of transfer to Arizona. See PharMerica, 2010 WL 1417460, at *5 (finding that "a transfer to Arizona is not warranted, because it would only inconvenience [the plaintiff's] witnesses and disturb its choice of forum in order to improve convenience for the Defendants").

### 3. Roszak's Motion Should Be Denied Because The Sources Of Proof Are Located In The Northern District Of Illinois

Roszak does not identify a single piece of evidence that is not in or accessible in the Northern District of Illinois. To be sure, the vast amount of documentary evidence in this case is already in this District. As Roszak admits, the two (previously anonymous) letters Noble and he authored were sent from and to this District. In addition, the documents created during US Foods' comprehensive investigation of Roszak's actions are at US Foods' principal place of business in Rosemont, Illinois. Those documents substantiate Roszak's spoliation, removal and retention of extensive Company property. Moreover, all of the confidential data to which Roszak had access while he was working in Arizona is accessible through databases in Rosemont. This factor clearly weighs against transfer, as Roszak apparently concedes.

### 4. Roszak Has Failed To Demonstrate That The Convenience Of The Parties Weighs In Favor Of Transfer

Roszak complains that he "should not be compelled to litigate this dispute in Chicago, Illinois for the sole convenience of his former employer." Mem. at 9. However, "the mere inconvenience of having to travel to Chicago to litigate [does] not require the district court to

transfer the case, and its refusal does not amount to depriving [Roszak] of a meaningful day in court." Heller Fin. Inc., 883 F.2d at 1293. Roszak sought and received employment from an Illinois company and found it sufficiently convenient to travel to Illinois, as needed, for that employment. Moreover, any inconvenience to Roszak cannot outweigh the "substantial weight" given to US Foods' choice to litigate in its home forum and the fact that almost all of the witnesses and evidence is located there. This factor does not favor transfer.

### D. Roszak's Motion To Dismiss Should Be Denied

In his Motion to Transfer Venue, Roszak also purports to move to dismiss US Foods' claims by joining Defendant Noble's argument that this Court lacks diversity subject matter jurisdiction over US Foods' claims because the amount in controversy is not met. Mem. at 2-3. US Foods has already fully addressed Noble's argument and respectfully incorporates the entirety of its opposition to Defendant Noble's Motion to Dismiss. Pl.'s Opp. to Def. Noble's Mot. to Dismiss for Lack of Jurisdiction or, in the alternative, Mot. to Stay (Dkt. No. 34).

### E. The Parties' Carve-Out For Injunctive Proceedings Allows US Foods' Requested Expedited Relief

At a hearing on July 10, the Court expressed hesitation to rule on US Foods' Motion for Expedited Discovery until an arbitrator has addressed the scope of the arbitration provision. Such an approach is unnecessary and not in accordance with the terms of the parties' agreement.

It is well-settled in this Circuit that a district court has the authority to address contractual claims and issues that are expressly exempted or carved out from an arbitration clause. As the Seventh Circuit recognized in American United Logistics, Inc. v. Catellus Development Corp., 319 F.3d 921, 929 (7th Cir. 2003), "[a]lthough the Federal Arbitration Act favors resolution of disputes through arbitration, its provisions are not to be construed so broadly as to include claims that were never intended for arbitration." See also Advanced Aerofoil Technologies, Inc. v.

Todaro, 2011 WL 6009616, at *9 (N.D. Ill. Nov. 30, 2011) (Dow, J.) (recognizing that arbitration carve out provision allows parties to seek injunctive relief).

Sections 22(b) and 17(c) of the MSA explicitly allow US Foods to bring suit for injunctive relief in a court notwithstanding the arbitration right. See supra at 4. This express carve-out for injunctive proceedings allows this Court to move forward without awaiting any ruling from an arbitrator. In Major, Lindsey & Africa, LLC v. Mahn, 2010 WL 3959609, at *4 (S.D.N.Y. Sep. 7, 2010), for example, the court rejected the precise approach proposed by this Court in a situation involving the same type of arbitration carve-out. The arbitration clause in that case also had a carve-out for injunctive relief related to breaches of the plaintiff's post-employment duties to maintain the confidentiality of information and to return of company property upon termination. The court noted that, even though "the claims in [the injunctive proceeding] are substantially duplicative of various claims for money damages that are subject to arbitration," the arbitration agreement between the parties "specifically contemplates that damages claims relating to the same subject matter will have to be arbitrated." Id. As such, the court declined to stay the lawsuit pending completion of the parties' related arbitration. Id.

This Court need not await any ruling by the arbitrator before ruling on US Foods' Motion for Expedited Discovery and otherwise proceeding with the injunction claims in this case. Sections 22(b) and 17(c) of the MSA explicitly authorize US Foods to bring suit for injunctive relief in court for violations of the MSA and NSNDA. See supra at 4. As in Major, Lindsey & Africa, this express carve-out for injunctive proceedings authorizes this Court to move forward with this injunction proceeding without awaiting any ruling or other authorization from an arbitrator. The fact that the claims in the arbitration proceeding for money damages may be somewhat duplicative of the injunction claims in this case and "discovery in this action may

prove useful in connection with the arbitration, which is subject to its own special discovery rules, is of no moment." Major, Lindsey & Africa, 2010 WL 3959609, at *4.

US Foods has explained the exigency of the need to obtain an order to preserve evidence and return US Foods' property. At this point, US Foods is simply seeking imaging of the computers and devices of Noble and Roszak and the return of its property. The need for this relief is well-established. And although forensics tools can often detect a party's spoliation, it cannot provide the other party – or the Court – with whatever information was destroyed, including the metadata associated with it. And in this case, much of the value of that information lies in its ability to tell US Foods what Defendants have been doing with US Foods property and to whom they may have disseminated it. Preserving that information is critically important if US Foods is to have any hope of determining how Defendants have used its property.

Defendants concede that they still – six long months after their terminations – have property of US Foods in their possession. They do not dispute that they have a duty to return it. They do not dispute – nor can they – that they have already engaged in spoliation. Although US Foods appreciates that sanctions are available if they fail to retain this property, they have no confidence given Defendants' spoliation and other conduct prior to and following the filing of this lawsuit that it will be preserved. And, if it is not preserved, it is likely that, as with Roszak's company-issued laptop, it will never been recovered. Consequently, the limited discovery relief sought through US Foods' motion should be granted.

## IV.   CONCLUSION

Roszak's Motion to Transfer is without merit and should be denied. To the extent Roszak has validly joined Noble's Motion to Dismiss that, too, should be denied.

- 16 -

        Respectfully submitted,

        <u>/s/ Connie N. Bertram</u>
        Patricia Brown Holmes
        Linda K. Stevens
        **SCHIFF HARDIN LLP**
        233 South Wacker Drive, Suite 6600
        Chicago, IL 60606
        Telephone: (312) 258-5500
        Facsimile: (312) 258-5600
        pholmes@schiffhardin.com

        Connie N. Bertram
        Daniel J. Davis
        **PROSKAUER ROSE LLP**
        *Admitted Pro Hac Vice*
        1001 Pennsylvania Ave., N.W. Suite 400S
        Washington, D.C. 20004
        Telephone: (202) 416-6800
        Facsimile: (202) 416-6899
        cbertram@proskauer.com
        ddavis@proskauer.com

July 15, 2013

## **CERTIFICATE OF SERVICE**

      The undersigned attorney hereby certifies that on July 15, 2013, she caused the foregoing document, including attachments, to be electronically filed with the Clerk of the Court for the U.S. District Court, Northern District of Illinois, using the electronic case filing system of the Court, which will send a notice of electronic filing to the following attorneys of record:

Kraig J. Marton
David N. Farren
Jeffrey A. Silence
Jaburg & Wilk P.C.
3200 N. Central Ave., 20th Floor
Phoenix, AZ 85012
kjm@jaburgwilk.com
dnf@jaburgwilk.com
jxs@jaburgwilk.com

*Counsel for Defendant Michael J. Noble*

Philip J. Nathanson
The Nathanson Law Firm
8326 E. Hartford Dr., Suite 101
Scottsdale, AZ 85255
philipj@nathansonlawfirm.com

*Counsel for Defendant Phillip G. Roszak*

                                                /s/ Connie N. Bertram