IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| U.S. FOODS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13 C 3640 |
| | ) | |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| MICHAEL J. NOBLE and PHILLIP G. ROSZAK, | ) ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

I.     Background & Procedural History

Plaintiff U.S. Foods ("USF") is a private food distribution company with annual revenues of approximately $20 billion; it is based in Rosemont, Illinois and has roughly 25,000 employees nationwide. Defendants Michael Noble and Phillip Roszak held long-time leadership positions in the company. Noble started with USF in 2005, and Roszak first worked for the company in 1998. Both were fired in December 2012, after it came out that they had been spying on the CEO (John Lederer) and sending anonymous threats to the company.

Lederer came to USF in 2010. According to USF, Lederer was dissatisfied with Noble's and Roszak's job performance; Noble and Roszak were aware of this and rightly became concerned about their job security. They likely would dispute that Lederer had reason to question their performance. But it is undisputed that they did not like Lederer and were unhappy about his arrival. Although the motivation for their conduct is disputed, there is no question that Roszak and Noble

(with the assistance of another USF employee, Jennifer Steinke) spent months monitoring Lederer's phone records and travel plans, going so far as to hire a private investigator to intercept him and track him while he was on vacation in San Francisco. Noble and Roszak attempted to explain this bizarre behavior as their effort to expose corporate corruption. USF determined that their conduct violated the company's Code of Conduct, among other things, and it fired them.

After his termination, Noble sent a demand letter to USF, claiming that his firing gave rise to a whistleblower retaliation claim. The parties negotiated a settlement agreement over a period of months. However, in the end, negotiations broke down and USF initiated an arbitration proceeding with an American Arbitration Association Employment Tribunal in New York against both Noble and Roszak.

At the same time, USF filed this lawsuit on May 15, 2013, naming as defendants Noble and Roszak and alleging breach of fiduciary duty and duty of loyalty (Count I) and separate breach of contract claims against defendants Michael Noble (Count II) and defendant Phillip Roszak (Count III); USF also alleged civil conspiracy (Count IV). Complaint [1]. In its complaint, USF acknowledged that agreements executed by defendants and USF during their employment (notably, Management Stockholders Agreements and Non-Solicitation and Non-Disclosure agreements) required arbitration of these claims, but allowed USF to seek injunctive or other relief to enforce the provisions of the Restrictive Covenant Agreements both Noble and Roszak also had signed during their employment.

Complaint [1], ¶¶70, 79.

On June 13, 2013, Noble moved to dismiss USF's complaint for lack of jurisdiction or, in the alternative, to stay all further proceedings pursuant to 9 U.S.C.A. § 3, because of the pending arbitration [28]. While that motion was pending, on July 1, 2013, Roszak moved to transfer the case to the District of Arizona [36]. Before any ruling on those motions, on July 8, 2014, the parties appeared for a status hearing and reported that the arbitrator had issued an award in favor of USF. Shortly thereafter, on July 24, 2014, the Court issued an Order denying as moot Noble's motion to dismiss for lack of jurisdiction and denying Roszak's motion to transfer the case to the District of Arizona [57]. The Court further directed that the case would "remain open to permit enforcement, modification or vacation of the arbitration award." *Id.*

Two months later, on September 25, 2014, USF filed a petition to confirm and enforce the arbitration award pursuant to the Federal Arbitration Act, 9 U.S.C. §9 [59]. Thereafter, Roszak filed a second motion to transfer (this time to the Southern District of New York) [61] and he also moved to vacate the arbitration award [62]. Noble then filed a motion joining in Roszak's transfer motion [64]. All of the pending motions have been briefed. The Court considers each below.

II. Discussion

Generally, "[i]f a party seeks to confirm an arbitration award within a year of its entry, the court must do so unless the award has been vacated or modified under sections 10 or 11 of the FAA." *Chelmowski v. AT&T Mobility LLC*, No. 14 C 7283,

2015 WL 231811, at *3 (N.D. Ill. Jan. 15, 2015)(citing 9 U.S.C. §9; *IDS Life Ins. Co. v. Royal Alliance Assocs.*, 266 F.3d 645, 650-51 (7th Cir. 2001)). Petitions to confirm an arbitration award pursuant to 9 U.S.C. § 9 are "usually routine or summary." *Hasbro, Inc. v. Catalyst USA, Inc.*, 367 F.3d 689, 691-92 (7th Cir. 2004) (citation omitted).

Here, the petition seeking confirmation was filed on September 25, 2014, less than three months after the arbitrator issues his Final Decision and Award on July 6, 2014. And it is undisputed that the arbitration award has not been vacated or modified. But before turning to what should be a routine matter, the Court must first address the peripheral motions filed in this case.

   A.  <u>Roszak's and Noble's Motions to Transfer</u>

Section 9 of the Federal Arbitration Act provides that a motion to confirm an arbitration award should be filed in the district selected by the parties, and, if no selection is made, then "the court in and for the district within which such award is made." 9 U.S.C. § 9. In his transfer motion, Roszak argues that USF should have filed these proceedings in the Southern District of New York, where the arbitration went forward. Roszak argues that, under the plain language of the Federal Arbitration Act, any proceedings with regard to motions to confirm or vacate the award must be brought there.

In response, USF argues that Roszak has allowed this case to proceed here from its inception and impliedly consented to this Court handling the motions arising out of the arbitration proceeding. As USF points out, this case has, for

4

years, come up on status hearings with the express purpose of keeping this Court apprised as to the arbitration proceedings, and Roszak never once suggested that such motions should proceed in the Southern District of New York. USF argues that this action, the first filed, should proceed despite Roszak's and Noble's efforts to derail it. The argument certainly has some appeal; the years of status hearings would be a total waste of time and resources if defendants are right. But the Court finds USF has the better view, and the language of the parties' contracts establishes this Court as a proper forum.

While employed at USF, Noble and Roszak signed Management Stockholders Agreements ("MSAs"), which contained an arbitration provision requiring the parties to settle any disputes arising out of the MSA through mandatory arbitration:

> In the event of any controversy among the parties hereto arising out of, or relating to, this Agreement which cannot be settled amicably by the parties, such controversy shall be finally, exclusively and conclusively settled by mandatory arbitration conducted expeditiously in accordance with the American Arbitration Association rules by a single independent arbitrator. Such arbitration process shall take place in New York, New York. The decision of the arbitrator shall be final and binding upon all parties hereto and shall be rendered pursuant to a written decision, which contains a detailed recital of the arbitrator's reasoning, subject to enforcement of the arbitration award hereunder or for vacation or modification thereof as provided under the Federal Arbitration Act, Title 9 U.S. Code Chapter 1. **Judgment upon the award rendered may be entered in any court having jurisdiction thereof.**

Management Stockholder's Agreement, §17(b)(emphasis added)(attached as Exhibits A (Roszak) [59-2] and B (Noble) [59-3] to the Declaration of Connie N. Bertram in support of USF' Petition to Confirm and Enforce Arbitration Award).

The Stock Option Agreement between USH Holding Corp. and Roszak includes an identical provision. Stock Option Agreement, Section 5.8 [59-2] (Roszak) and [59-3] (Noble). As does the Subscription Agreement. Subscription Agreement, ¶10(b) [59-2] (Roszak) and [59-3] (Noble).

The MSAs and other agreements required the arbitration (which addressed defendants' firing, as well as USF's decision to reclaim the defendants' stock holdings), to go forward in New York, and it did. Consistent with the parties' agreements, confirmation of the award is proper in any court with jurisdiction and jurisdiction exists here under the Federal Arbitration Act and under 28 U.S.C. §1332. *See, e.g., Lander Co. v. MMP Investments, Inc.*, 107 F.3d 476, 480-81 (7th Cir. 1997)(the provision of the [Federal Arbitration] Act that confers jurisdiction on the federal courts to confirm arbitration awards authorizes confirmation only in the court specified in the arbitration agreement or in the district in which the arbitration proceeds). Although the Southern District of New York may also be an appropriate forum, the fact that this case has been actively pending here since 2013 tips the scales in favor of keeping the case here. Roszak's and Noble's motions seeking to transfer this action to New York are denied.

B. <u>Motions to Confirm/Vacate the Arbitration Award</u>

Specifically with respect to the arbitration award, USF asks the Court to confirm the arbitration award and Roszak seeks to vacate the award. Noble also seeks to vacate the award, but he filed his motion in the United States District Court for the Southern District of New York. In his motion, Roszak claims that he

6

proved his whistleblower claims and that USF failed to prove its claims. Noble, whose motion is not before the Court, similarly argues the merits of the award, arguing that it wrongly condones USF's mid-arbitration theft of his company stock interests. Neither motion seems to recognize that the posture of the case precludes the Court from delving into the merits of the parties' claims.

"It is well established that courts must grant an arbitration panel's decision great deference." *Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 434 F. Supp. 2d 554, 559 (N.D. Ill. 2006). "A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Id.* In resolving this motion, the Court does not consider "whether the arbitrators' award was correct or even reasonable, since 'neither error nor clear error nor even gross error is a ground for vacating an award[;] if the district judge is satisfied that the arbitrators resolved the entire dispute and can figure out what that resolution is, he must confirm the award.'" *Environmental Barrier Co., LLC v. Slurry Systems, Inc.*, 540 F.3d 598, 607 (7th Cir. 2008)(quoting *IDS Life Ins. Co. v. Royal Alliance Assocs., Inc.*, 266 F.3d 645, 650 (7th Cir. 2001)). The Court may vacate the decision only if it clearly reflects a "manifest disregard of the law." *Cremin*, 434 F.Supp.2d at 559. "In the Seventh Circuit, 'an arbitral decision is in manifest disregard of the law only when the arbitrator's award actually orders the parties to violate the law.'" *Cremin*, 434 F.Supp.2d at 564 (quoting *Butler Mfg. Co. v. United Steelworkers of Am.*, 336 F.3d 629, 636 (7th Cir. 2003)). That is not the case here.

Arbitrator William L. Kandel issued an "Interim Award" on June 30, 2014 resolving the merits of the parties' claims, defenses and counterclaims. *See* Arbitrator William L. Kandel's Reasoned Interim Decision and Award (Case No. 13-20-1300-1022, June 30, 2014)(attached as Exhibit D to Bertram's Declaration) [59-3], pp. 90-161). He explained that the only reason the award was designated "interim" rather than "final" was because the parties' motions for sanctions and fees had yet to be decided. The Interim Award was – in all other respects – final.

Kandel conducted an eight-day evidentiary hearing in November and December of 2013 and January 2014, and heard testimony from thirteen witnesses, including the key players (defendants Noble and Roszak, plus Juliette Pryor, USF's general counsel and Code of Conduct compliance officer; John Lederer, USF's CEO; Dave Esler, USF's head of HR; and Jennifer Steinke, USF's in-house events planner who helped Roszak and Noble spy on Lederer and then cover their tracks). Kandel also heard testimony from Christopher Racich, an expert in computer forensics; Al Swanson, defendant Noble's direct supervisor; Shane Guilliams, Steinke's immediate supervisor; Dirk Locascio, another USF executive; Edward Liddy, USF Board Chairman; and several other witnesses. He then issued a 71-page decision, framing the dispute as follows:

> This case involves an anonymous attempt by Noble and Roszak, executives themselves and ostensible whistleblowers, to expose USF's recently-installed CEO for his affair with a company vendor; and USF's terminating "for cause" the employment of Noble and Roszak under the MSA and NSNDA. Their disputed focus not only on the agreements and USF's Code of Conduct; they also implicate federal statutes and the laws of several states. The Parties were well represented by counsel who advocated their positions skillfully and

8

> passionately, including their voluminous (approximately 300 pages) and effective post-hearing submissions. Central to resolving all the claims, defenses, and counterclaims is a search for reasonableness in the actions of each Party under intense circumstances.

Interim Award, p. 2 [59-3], p. 91.

Considering the evidence and arguments before him, Kandel found that USF sustained its burden of proving that it terminated Noble's and Roszak's employment "for cause" pursuant to the MSA and NSNDA and that Noble and Roszak failed to prove their counterclaims and affirmative defenses. More specifically, Kandel found USF's claims (that Noble and Roszak appropriated USF resources to track the CEO's whereabouts and monitor his phone communications in an attempt to establish an illicit and destructive connection with a vendor so that they could get him tossed out) to be credible. And he found Noble and Roszak's counterclaims and defenses (that they were corporate whistleblowers, who were fired for trying to expose corporate corruption) to be not credible.

Arbitrator Kandel developed his own findings and conclusions, though he expressly relied more heavily on USF's version than on the proposal put forth by Noble and Roszak. Kandel determined that:

- Noble and Roszak, both fired on December 11, 2012, served in senior management roles at USF prior to termination; both were based in Phoenix, Arizona. *Id.*, Findings of Fact and Conclusions of Law, ¶¶3-4.

- The agreements governing the parties' dispute comprise the MSA and the NSNDA, the latter being incorporated by reference into the former through MSA section 22(a) and that Noble and Roszak both signed

9

- these agreements for valuable consideration. *Id.*, ¶5.

- Noble and Roszak, like all USF employees, were bound by USF's Code of Conduct including its provisions concerning the protection of proprietary information, an employee's expected cooperation with investigations and compliance with the company's anti-retaliation policy; the Code of Conduct clearly states that failing to follow the standards therein could subject an employee to disciplinary action up to and including termination of employment. *Id.*, ¶¶8-15.

- USF's Code of Conduct provided multiple channels for relators of possible Code violations, that USF vested primary enforcement responsibility with its General Counsel (Juliette Pryor) and that the Code neither required nor permitted the kind of "self-help" engaged in by Roszak and Noble. *Id.*, ¶¶19-21.

- The actions taken by Noble and Roszak were such egregious violations of the Code of Conduct that they warranted termination for cause; their explanation that they were motivated in any way by a desire to protect USF was not credible – on the contrary, their actions endangered the company and its stockholders. Indeed, Noble and Roszak's monitoring of Lederer amounted to "an accumulation of Code [of Conduct] violations adding up to stalking or harassment but not whistleblowing within USF." *Id.*, ¶175.

- None of the numerous federal and state whistleblower protection

statutes in which the defendants tried to cloak themselves reached USF's failure to have Kindle reverse-auction bid for assignments – for that was their supposed initial motivation to go after Lederer, that he was unfairly (and to the company's detriment) favoring his girlfriend's vendor; none of which turned out to be true or in any way supported in any evidence. *Id.*, ¶176.

- In the end, the defendants' conduct was about pursuing personal vendettas, not whistleblowing. *Id.,* ¶184. To the extent the defendants may ever have been entitled to the protections of any whistleblower statute – federal or state, Illinois, Arizona or Delaware – their unreasonable conduct would take them out from under those anti-retaliation protections. *Id.*, ¶186.

Arbitrator Kandel also made findings about the promissory fraud claim raised by Noble. After USF terminated Noble, he sent a demand letter alleging that his firing gave rise to a whistleblower claim; Noble and USF negotiated a settlement of that claim. Kandel determined that the agreement was, by its terms, supposed to become effective after five occurrences happened. *Id.*, ¶¶138, 139. Those occurrences were: (1) full execution by the Parties, (2) expiration of a 7-day revocation period, (3) certification of the return of all company property, (4) complete production of Quest records and data (Quest was the private investigation firm Noble hired to track Lederer and May in San Francisco), and (5) completion of Noble's interview by USF. *Id.*, ¶139. Upon execution, Noble was to received

11

$675,000.  *Id.,* ¶147.  But according to Kandel, although items (1) and (2) occurred, the requirements of item (3) were not met.  *Id.*, ¶¶140-144.  Nor did Noble provide complete production of Quest records and his interview, though it occurred, was not conducted in good faith and cannot be deemed to have satisfied occurrence (5).  *Id.*, ¶¶145-146.  In fact, Kandel determined, Noble's refusal to return company property caused negotiations to break down and led to the initiation of the arbitration proceeding.  *Id.*, ¶¶144, 148.  Significantly, Kandel considered and rejected Noble's claim that USF "lured him into the Settlement Agreement with the promise of $675,000, but never intended to consummate it and instead used that pretext to pick his brain about the Lederer plan" – what Kandel describes as Noble's promissory fraud claim.  *Id.,* ¶149.  In the end, despite Noble's allegations and arguments, Kandel determined that USF had valid business reasons for wanting get a prompt and complete picture of who had what company information (including proprietary company information and private information about the company's CEO), and that USF's decision "to end what appeared to be a futile voluntary process with Noble, in favor of litigation and arbitration, does not imply a bad faith scuttling of the Settlement Agreement." *Id.*, ¶151.

With respect to the USF stock positions held by Noble and Roszak (both purchased significant stock through the MSAs – Noble for $500,000 and Roszak for $100,000 and a "for cause" termination triggered USF's option under the MSA to "clawback" proceeds from employees' stock sales), Kandel determined that USF's actions under the MSA and NSNDA did not amount to conversion or a violation of

12

any state or federal securities fraud or deceptive practice statute. *Id.*, ¶¶154-55, 199.

Arbitrator Kandel later issued an award on the one remaining issue: sanctions; he denied each and every motion for sanctions. *See* Arbitrator William L. Kandel's Reasoned Final Award on Sanctions issued July 6, 2014 [59-3], pp. 80-88 (attached as Exhibit C to Bertram's Declaration). In that Final Award, he expressly states that the Interim Award dated June 30, 2014 is now, along with the Reasoned Final Award on Sanctions, the "FINAL AWARD OF THE ARBITRATOR." Final Reasoned Final Award on Sanctions, Conclusions, ¶2 [59-3], p. 87 (emphasis in original).

In his Interim Reasoned Decision, which ultimately (with the sanctions decision) became the Final Decision, Kandel detailed the testimony of each witness and explained why he found each to be credible or not; he detailed the parties' theories, claims and defenses and explained, using specific evidence, why each was supported or not. The decision is, as its name suggests, reasoned. Arbitrator Kandel granted USF's claim for breach of contract against Noble and Roszak, including USF's repurchase of their stock and retention of proceeds; he dismissed with prejudice all other claims and counterclaims. *Id.*, Conclusions, ¶¶1-2. Additionally, he enjoined Noble and Roszak from disclosing or using for any purpose any USF property and confidential information within their possession, custody or control and directed them immediately to return to USF any such property or confidential information. *Id.*, ¶¶3-4.

Having reviewed the decision in depth, it is clear that it does not require any party to violate the law. Kandel clearly and thoroughly resolved the entire dispute between these parties, providing a detailed account of the evidence and testimony that leaves no room for doubt or confusion. There is no basis to vacate the award, and Roszak's motion to vacate [62] is denied.

C.   Roszak's Motion to Stay

Finally, the Court considers Roszak's motion to stay confirmation of the arbitration award pending the outcome of a decision by the Ninth Circuit Court of Appeals in case No. 13-17160 [81]. In that appeal, *Roszak v. U.S. Foodservice Inc.*, Case 13-17160 (9th Cir.), Roszak challenges the Arizona District Court judge's decision dismissing his whistleblower claims and finding that two of his claims were subject to arbitration [Ninth Circuit Docket Entry 15-1].

In *Environmental Barrier Co., LLC v. Slurry Systems, Inc.*, 540 F.3d 598 (7th Cir. 2008), the defendant willingly went along with arbitration until the arbitrator issued his decision in favor of the other side; the defendant then sought to vacate the award, arguing that the issue was never arbitrable to begin with. *Id.* at 606. Noting that "the right to a judicial determination of arbitrability is, like many rights, one that can be waived," the Seventh Circuit held that a party who voluntarily submits an issue to arbitration cannot later argue that the arbitrator had no authority to resolve it." *Id.* at 606-07.

Roszak proceeded with the arbitration, despite the pendency of the Ninth Circuit appeal. Roszak filed the appeal on October 25, 2013. The arbitration

14

hearing took place beginning the next month, in November 2013. Additionally, Arbitrator Kandel gave no indication in his decision that Roszak expressed any hesitancy about participating in the proceedings; in fact, he specifically noted in his decision that the parties "availed themselves fully of the opportunity to examine, cross-examine, and introduce documentary evidences. Each Party submitted not only written post-hearing arguments but also proposed findings of fact and conclusions of law." Reasoned Interim Decision and Award [59-3], p. 91.

Roszak also proceeded to brief the various motions in this Court despite the pendency of the Ninth Circuit appeal, requesting the stay only after all of the motions were fully briefed. This is perhaps explained by the fact that the question of arbitrability is a small part of the appeal currently pending before the Ninth Circuit, which deals predominantly with substantive questions concerning the Delaware Whistleblowers' Protection Statute. Additionally, nothing has happened in that case since October 6, 2014, when USF advised the Ninth Circuit of Arbitrator Kandel's decision. *Roszak v. U.S. Foodservice Inc.*, Case 13-17160 (9th Cir.) [27-1]. Arbitrator Kandel determined in a well-reasoned decision that the scheme perpetrated by Roszak and Noble was not about whistleblowing, but about revenge. The Arizona District Court similarly determined that Roszak's activity was not protected by the whistleblower statute. The Court has no reason to doubt that the Ninth Circuit will agree that there was no protected whistleblowing activity here. Accordingly, the Court declines to stay its ruling.

D.  USF's Petition to Confirm the Award

Having cleared away the clutter, the Court turns at last to USF's petition to confirm Arbitrator Kandel's award. As explained above, petitions to confirm an arbitration award are generally granted if the petition is filed within a year of the award being entered and if the award has not been vacated or modified. USF sought to confirm the arbitration award within a year of its entry, and the award has not been vacated or modified. Accordingly, USF's petition to confirm the award [59], [60], is granted.

III. Conclusion

For the reasons explained above, the Court denies Roszak's motion to transfer the case to the United States District Court for the Southern District of New York [61]; denies Roszak's motion to vacate the arbitration award [62]; denies Noble's motion to dismiss [64]; denies Roszak's motion to stay [81]; and grants USF's petition to confirm and enforce the arbitration award [59], [60].

Dated: August 27, 2015

ENTERED:

John Robert Blakey
United States District Judge